No. 25-1916

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

CITY OF CHICAGO,

*Plaintiff-Appellee,*

v.

BP P.L.C., ET AL.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:24-cv-02496 – Hon. Franklin U. Valderrama

---

## APPELLANTS' OPENING BRIEF

---

Thomas G. Hungar
Lochlan F. Shelfer
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, D.C. 20036
Telephone: (202) 887-3784
thungar@gibsondunn.com
lshelfer@gibsondunn.com

Theodore J. Boutrous, Jr.
William E. Thomson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
tboutrous@gibsondunn.com
wthomson@gibsondunn.com

Joshua D. Dick
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
jdick@gibsondunn.com

*Attorneys for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc*
*[Additional counsel listed on signature page]*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Scharf Banks Marmor LLC, Sullivan & Cromwell LLP, Arnold & Porter Kaye Scholer LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Stephanie A. Scharf    Date: 06/03/2025

Attorney's Printed Name: Stephanie Scharf

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☐

Address: 30 West Hubbard Street, Suite 500

    Chicago, IL 60654

Phone Number: (312) 726-6000    Fax Number:

E-Mail Address: sscharf@scharfbanks.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i):  BP p.l.c. has no parent companies.  The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.  The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii):  BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c.  No publicly-traded company owns more than 10% of BP p.l.c. stock.

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Scharf Banks Marmor LLC, Sullivan & Cromwell LLP, Arnold & Porter Kaye Scholer LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ George D. Sax    Date: 06/03/2025

Attorney's Printed Name:  George Sax

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☐

Address:  30 West Hubbard Street, Suite 500

    Chicago, IL 60654

Phone Number: (312) 726-6000    Fax Number:

E-Mail Address: gsax@scharfbanks.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i):  BP p.l.c. has no parent companies.  The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.  The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii):  BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c.  No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As

Clear Form

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 American Petroleum Institute

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 McGuireWoods LLP

(3)     If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

     American Petroleum Institute has no parent corporation.

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     No publicly held company has a 10% or greater ownerhsip in API.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 n/a

Attorney's Signature: /s/ Brian D. Schmalzbach                    Date: 6/3/2025

Attorney's Printed Name:  Brian D. Schmalzbach

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [✓]     No [ ]

Address:  800 East Canal Street, Richmond, VA 23219

Phone Number: (804) 775-4746                    Fax Number:  (804) 698-2304

E-Mail Address: bschmalzbach@mcguirewoods.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Scharf Banks Marmor LLC, Sullivan & Cromwell LLP, Arnold & Porter Kaye Scholer LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Amanda Flug Davidoff    Date: June 6, 2025

Attorney's Printed Name:  Amanda Flug Davidoff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [ ]  No [✓]

Address:  1700 New York Avenue NW, Suite 700

    Washington, D.C. 20006

Phone Number: 202-956-7500    Fax Number:  202-956-6993

E-Mail Address: davidoffa@sullcrom.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i):  BP p.l.c. has no parent companies.  The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.  The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii):  BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c.  No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Scharf Banks Marmor LLC, Sullivan & Cromwell LLP, Arnold & Porter Kaye Scholer LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Richard C. Pepperman II      Date: June 6, 2025

Attorney's Printed Name: Richard C. Pepperman II

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 125 Broad Street

New York, New York 10004-2489

Phone Number: 212-558-3493        Fax Number: 212-291-9113

E-Mail Address: peppermanr@sullcrom.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i):  BP p.l.c. has no parent companies.  The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.  The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii):  BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c.  No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

ConocoPhillips; ConocoPhillips Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Massey & Gail LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

Please see attached addendum.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held corporation owns 10% or more in ConocoPhillips stock.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Suyash Agrawal     Date: June 10, 2025

Attorney's Printed Name: Suyash Agrawal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 50 E. Washington Street, Suite 400

Chicago, IL 60602

Phone Number: (312) 283-1590     Fax Number: (312) 379-0467

E-Mail Address: sagrawal@masseygail.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): ConocoPhillips does not have a parent corporation.  ConocoPhillips Company is wholly owned by ConocoPhillips.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Phillips 66 Company and Phillips 66

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Sean M. Berkowitz      Date: June 13, 2025

Attorney's Printed Name:  Sean M. Berkowitz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  330 North Wabash Avenue, Suite 2800

         Chicago, IL 60611

Phone Number:  (312) 876-7700      Fax Number:  (312) 933-9767

E-Mail Address:  Sean.Berkowitz@lw.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): Phillips 66 has no parent companies.  The parent company of Phillips 66 Company is Phillips 66.

(3)(ii): The Vanguard Group owns 10% or more of Phillips 66 stock.  Phillips 66 Company is wholly owned by Phillips 66.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Phillips 66 Company and Phillips 66

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Please see attached addendum.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Nicole C. Valco      Date: June 13, 2025

Attorney's Printed Name: Nicole C. Valco

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 505 Montgomery Street, Suite 2000

San Francisco, CA 94111

Phone Number: (415) 391-0600      Fax Number: (415) 395-8095

E-Mail Address: nicole.valco@lw.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): Phillips 66 has no parent companies.  The parent company of Phillips 66 Company is Phillips 66.

(3)(ii): The Vanguard Group owns 10% or more of Phillips 66 stock.  Phillips 66 Company is wholly owned by Phillips 66.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Phillips 66 Company and Phillips 66

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3)   If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

Please see attached addendum.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Katherine Ann Rouse                Date: June 13, 2025

Attorney's Printed Name: Katherine Ann Rouse

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 505 Montgomery Street, Suite 2000

San Francisco, CA 94111

Phone Number: (415) 391-0600                Fax Number: (415) 395-8095

E-Mail Address: katherine.rouse@lw.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): Phillips 66 has no parent companies.  The parent company of Phillips 66 Company is Phillips 66.

(3)(ii): The Vanguard Group owns 10% or more of Phillips 66 stock.  Phillips 66 Company is wholly owned by Phillips 66.

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Exxon Mobil Corporation; ExxonMobil Oil Corporation

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Paul, Weiss, Rifkind, Wharton & Garrison LLP; Johnson & Bell, Ltd.

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

     Please see attached addendum.

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     Please see attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Kannon K. Shanmugam          Date: 6/17/2025

Attorney's Printed Name:  Kannon K. Shanmugam

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [✓]     No [ ]

Address:  2001 K Street, N.W.

 Washington, DC 20006

Phone Number:  (202) 223-7325          Fax Number:  (202) 204-7397

E-Mail Address: kshanmugam@paulweiss.com

rev. 12/19 AK

ADDENDUM

(3)(i): Exxon Mobil Corporation has no parent corporation. ExxonMobil Oil Corporation's parent corporation is Mobil Corporation, and Mobil Corporation's parent corporation is Exxon Mobil Corporation.

(3)(ii): No publicly held company owns ten percent or more of Exxon Mobil Corporation's outstanding stock.  ExxonMobil Oil Corporation's parent company, Mobil Corporation, is wholly owned by Exxon Mobil Corporation, a publicly traded company.

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Exxon Mobil Corporation; ExxonMobil Oil Corporation

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Paul, Weiss, Rifkind, Wharton & Garrison LLP; Johnson & Bell, Ltd.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Please see attached addendum.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Daniel J. Toal    Date: 6/17/2025

Attorney's Printed Name:  Daniel J. Toal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  1285 Avenue of the Americas

New York, New York 10019

Phone Number:  (212) 737-3869    Fax Number:  (212) 492-0869

E-Mail Address: dtoal@paulweiss.com

rev. 12/19 AK

ADDENDUM

(3)(i): Exxon Mobil Corporation has no parent corporation. ExxonMobil Oil Corporation's parent corporation is Mobil Corporation, and Mobil Corporation's parent corporation is Exxon Mobil Corporation.

(3)(ii): No publicly held company owns ten percent or more of Exxon Mobil Corporation's outstanding stock.  ExxonMobil Oil Corporation's parent company, Mobil Corporation, is wholly owned by Exxon Mobil Corporation, a publicly traded company.

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Exxon Mobil Corporation; ExxonMobil Oil Corporation

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Paul, Weiss, Rifkind, Wharton & Garrison LLP; Johnson & Bell, Ltd.

(3)   If the party, amicus or intervenor is a corporation:

i)       Identify all its parent corporations, if any; and

Please see attached addendum.

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ William T. Marks                    Date: 6/17/2025

Attorney's Printed Name:   William T. Marks

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address:   2001 K Street, N.W.

Washington, DC 20006

Phone Number:  (202) 223-7314                    Fax Number:  (202) 330-5974

E-Mail Address: wmarks@paulweiss.com

rev. 12/19 AK

## ADDENDUM

(3)(i): Exxon Mobil Corporation has no parent corporation. ExxonMobil Oil Corporation's parent corporation is Mobil Corporation, and Mobil Corporation's parent corporation is Exxon Mobil Corporation.

(3)(ii): No publicly held company owns ten percent or more of Exxon Mobil Corporation's outstanding stock.  ExxonMobil Oil Corporation's parent company, Mobil Corporation, is wholly owned by Exxon Mobil Corporation, a publicly traded company.

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Shell plc, Shell USA, Inc., and Shell Oil Products Company LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

K&L Gates LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Not applicable

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Not applicable

Attorney's Signature: s/Kenn Brotman    Date: June 17, 2025

Attorney's Printed Name: Kenn Brotman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: K&L Gates, LLP, 70 W. Madison, Suite 3100, Chicago, IL 60602

Phone Number: 312-807-4277    Fax Number:

E-Mail Address: kenn.brotman@klgates.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): Shell Oil Products Company LLC's member is Shell USA, Inc., which is a wholly owned subsidiary of Shell Petroleum Inc., which is a wholly owned subsidiary of Shell Group Holding Limited, which is a wholly owned subsidiary of Shell plc, a public limited company incorporated under the laws of England and Wales.  Shell plc does not have any parent corporations.

(3)(ii): As of June 17, 2025, Shell plc has not been notified by any publicly traded company that it owns 10 percent or more of Shell plc's issued share capital.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Shell plc, Shell USA, Inc., and Shell Oil Products Company LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

K&L Gates LLP

(3)     If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

Please see attached addendum.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Not applicable

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Not applicable

Attorney's Signature: s/Nicole C. Mueller                          Date: June 17, 2025

Attorney's Printed Name:  Nicole C. Mueller

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✓]   No [ ]

Address:  K&L Gates, LLP, 70 W. Madison, Suite 3100, Chicago, IL 60602

Phone Number: 312-807-4341                          Fax Number:

E-Mail Address: nicole.mueller@klgates.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): Shell Oil Products Company LLC's member is Shell USA, Inc., which is a wholly owned subsidiary of Shell Petroleum Inc., which is a wholly owned subsidiary of Shell Group Holding Limited, which is a wholly owned subsidiary of Shell plc, a public limited company incorporated under the laws of England and Wales.  Shell plc does not have any parent corporations.

(3)(ii): As of June 17, 2025, Shell plc has not been notified by any publicly traded company that it owns 10 percent or more of Shell plc's issued share capital.

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Exxon Mobil Corporation and ExxonMobil Oil Corporation

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Johnson & Bell, Ltd.; Paul, Weiss, Rifkind, Wharton & Garrison LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and
Please see attached addendum.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ David F. Fanning          Date: 6/18/2025

Attorney's Printed Name: David F. Fanning

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: 33 W. Monroe Street, Suite 2700

Chicago, Illinois 60603

Phone Number: (312) 984-0289          Fax Number: (312) 372-9818

E-Mail Address: fanningd@jbltd.com

rev. 12/19 AK

## ADDENDUM

(3)(i): Exxon Mobil Corporation has no parent corporation.  ExxonMobil Oil Corporation's parent corporation is Mobil Corporation, and Mobil Corporation's parent corporation is Exxon Mobil Corporation.

(3)(ii): No publicly held company owns ten percent or more of Exxon Mobil Corporation's outstanding stock.  ExxonMobil Corporation's parent company, Mobil Corporation, is wholly owned by Exxon Mobil Corporation, a publicly traded company.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐       **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Riley Safer Holmes & Cancila LLP; Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP;

 Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

     Please see attached addendum.

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Patricia Brown Holmes            Date:  6/18/2025

Attorney's Printed Name:  Patricia Brown Holmes

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address:   Riley Safer Holmes & Cancila LLP

     1 S. Dearborn St., Ste. 2200, Chicago, IL 60603

Phone Number:  312-471-8745            Fax Number:  312-471-8701

E-Mail Address: pholmes@rshc-law.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP;

Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ronald S. Safer    Date: 6/18/2025

Attorney's Printed Name:  Ronald S. Safer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address:  Riley Safer Holmes & Cancila LLP

1 S. Dearborn St., Ste. 2200, Chicago, IL 60603

Phone Number: 312-471-8736    Fax Number:  312-471-8701

E-Mail Address: rsafer@rshc-law.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):** Chevron Corporation has no parent corporation. Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):** No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Chevron Corporation; Chevron U.S.A. Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

 Stern, Kilcullen & Rufolo, LLC

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

    Please see attached addendum.

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    Please see attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Theodore J. Boutrous, Jr.                Date:  6/18/2025

Attorney's Printed Name:   Theodore J. Boutrous, Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes  ☑   No  ☐

Address:   Gibson, Dunn & Crutcher LLP

   333 S. Grand Ave., Los Angeles, CA 90071-3197

Phone Number:  213-229-7000                Fax Number:  213-229-7520

E-Mail Address:  tboutrous@gibsondunn.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

    Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Thomas G. Hungar    Date: 6/18/2025

Attorney's Printed Name: Thomas G. Hungar

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address: Gibson, Dunn & Crutcher LLP

    1700 M Street, N.W., Washington, D.C. 20036

Phone Number: 202-955-8500    Fax Number: 202-467-0539

E-Mail Address: thungar@gibsondunn.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

    Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Joshua D. Dick    Date: 6/18/2025

Attorney's Printed Name:  Joshua D. Dick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Gibson, Dunn & Crutcher LLP

    One Embarcadero Center, Suite 2600, San Francisco, CA 94111

Phone Number: 415-393-8200    Fax Number:  415-374-8451

E-Mail Address: jdick@gibsondunn.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   ☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chevron Corporation; Chevron U.S.A., Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

Stern, Kilcullen & Rufolo, LLC

(3)   If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

Please see attached addendum.

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Lochlan F. Shelfer          Date: 6/18/2025

Attorney's Printed Name: Lochlan F. Shelfer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      Yes ☐      No ☑

Address: Gibson, Dunn & Crutcher LLP

1700 M Street, N.W., Washington, D.C. 20036

Phone Number: 202-887-3641          Fax Number: 202-831-6016

E-Mail Address: Lshelfer@gibsondunn.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP;

Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

        Please see attached addendum.

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Lauren Jaffe        Date: 6/18/2025

Attorney's Printed Name: Lauren Jaffe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Riley Safer Holmes & Cancila LLP

        1 S. Dearborn St., Ste. 2200, Chicago, IL 60603

Phone Number: 312-471-8726        Fax Number: 312-471-8701

E-Mail Address: LJaffe@rshc-law.com

rev. 12/19 AK

## <u>ADDENDUM</u>

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Exxon Mobil Corporation and ExxonMobil Oil Corporation

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Johnson & Bell, Ltd.; Paul, Weiss, Rifkind, Wharton & Garrison LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ H. Patrick Morris     Date: 6/18/2025

Attorney's Printed Name: H. Patrick Morris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✔]   No [ ]

Address: 33 W. Monroe Street, Suite 2700

Chicago, Illinois 60603

Phone Number: (312) 984-0244     Fax Number: (312) 372-9818

E-Mail Address: morrisp@jbltd.com

rev. 12/19 AK

**ADDENDUM**

(3)(i):  Exxon Mobil Corporation has no parent corporation.  ExxonMobil Oil Corporation's parent corporation is Mobil Corporation, and Mobil Corporation's parent corporation is Exxon Mobil Corporation.

(3)(ii):  No publicly held company owns ten percent or more of Exxon Mobil Corporation's outstanding stock.  ExxonMobil Corporation's parent company, Mobil Corporation, is wholly owned by Exxon Mobil Corporation, a publicly traded company.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP L.C., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chevron Corporation; Chevron U.S.A., Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila LLP; Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP;

Stern, Kilcullen & Rufolo, LLC

(3)     If the party, amicus or intervenor is a corporation:

i)        Identify all its parent corporations, if any; and

Please see attached addendum.

ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Christopher L. Schaeffer          Date:  July 7, 2025

Attorney's Printed Name:   Christopher L. Schaeffer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐   No ☑

Address:   Riley Safer Holmes & Cancila LLP

1 S. Dearborn St., Ste 2200, Chicago, IL 60603

Phone Number:  312-471-8700                          Fax Number:  312-471-8701

E-Mail Address:  cschaeffer@rsch-law.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Arnold & Porter Kaye Scholer LLP, Sullivan & Cromwell LLP, Scharf Banks Marmor LLC

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

        Please see the attached addendum.

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see the attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: s/ Diana E. Reiter     Date: July 7, 2025

Attorney's Printed Name:  Diana E. Reiter

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [ ]  No [✓]

Address:  250 West 55th Street

  New York, NY 10019

Phone Number: 212-836-8000     Fax Number: 212-836-8689

E-Mail Address: Diana.Reiter@arnoldporter.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): BP p.l.c. has no parent companies. The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c. The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii): BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c. No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Arnold & Porter Kaye Scholer LLP, Sullivan & Cromwell LLP, Scharf Banks Marmor LLC

(3)   If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Please see the attached addendum.

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see the attached addendum.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ John D. Lombardo          Date: July 7, 2025

Attorney's Printed Name: John D. Lombardo

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: 777 South Figueroa Street, 44th Floor

Los Angeles, CA 90017

Phone Number: 213-243-4000          Fax Number: 213-243-4199

E-Mail Address: John.Lombardo@arnoldporter.com

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): BP p.l.c. has no parent companies. The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c. The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii): BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c. No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v BP p.l.c. et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    BP p.l.c., BP America Inc., and BP Products North America Inc.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Arnold & Porter Kaye Scholer LLP, Sullivan & Cromwell LLP, Scharf Banks Marmor LLC

(3)      If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and
        Please see the attached addendum.

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
        Please see the attached addendum.

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    N/A

Attorney's Signature: s/ Jonathan W. Hughes          Date: July 7, 2025

Attorney's Printed Name: Jonathan W. Hughes

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: Three Embarcadero Center, 10th Floor

    San Francisco, CA 94111

Phone Number: 415-471-3100          Fax Number: 415-471-3400

E-Mail Address: Jonathan.Hughes@arnoldporter.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): BP p.l.c. has no parent companies. The parent companies of BP America Inc. are BP America Ltd., BP Holdings North America Ltd., and BP p.l.c. The parent companies of BP Products North America Inc. are The Standard Oil Company, BP Company North America Inc., BP Corporation North America Inc., BP America Inc., BP America Ltd., BP Holdings North America Ltd., and BP p.l.c.

(3)(ii): BP America Inc. and BP Products North America Inc. are wholly-owned indirect subsidiaries of BP p.l.c. No publicly-traded company owns more than 10% of BP p.l.c. stock.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et. al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Petroleum Institute

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuireWoods LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

American Petroleum Institute has no parent corporation

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held company has a 10% or greater ownership in API.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Patrick P. Clyder      Date: 7/7/25

Attorney's Printed Name: Patrick P. Clyder

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 77 West Wacker Drive, Suite 4100

Chicago, IL 60601

Phone Number: (312) 750-8668      Fax Number: (312) 558-4382

E-Mail Address: pclyder@mcguirewoods.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

ConocoPhillips; ConocoPhillips Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Massey & Gail LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held corporation owns 10% or more in ConocoPhillips stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Matthew T. Martens      Date: July 7, 2025

Attorney's Printed Name: Matthew T. Martens

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 2100 Pennsylvania Avenue, N.W.

Washington, D.C. 20037

Phone Number: (202) 663-6000      Fax Number:

E-Mail Address: matthew.martens@wilmerhale.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): ConocoPhillips does not have a parent corporation.  ConocoPhillips Company is wholly owned by ConocoPhillips.

Case: 25-1916      Document: 56      Filed: 07/07/2025      Pages: 180

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    ConocoPhillips; ConocoPhillips Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Massey & Gail LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held corporation owns 10% or more in ConocoPhillips stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Hallie B. Levin    Date: July 7, 2025

Attorney's Printed Name: Hallie B. Levin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address: 7 World Trade Center, 250 Greenwich Street

New York, NY 10007

Phone Number: (212) 230-8800    Fax Number:

E-Mail Address: hallie.levin@wilmerhale.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): ConocoPhillips does not have a parent corporation.  ConocoPhillips Company is wholly owned by ConocoPhillips.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

    Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Please see attached addendum.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Herbert J. Stern    Date: 7/7/2025

Attorney's Printed Name:  Herbert J. Stern

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address:  Stern Kilcullen & Rufolo, LLC

    325 Columbia Turnpike, suite 110, Florham Park, NJ 07932

Phone Number: 973-535-1900    Fax Number:  973-535-9664

E-Mail Address:  hstern@sgklaw.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

 Please see attached addendum.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Joel M. Silverstein    Date: 7/7/2025

Attorney's Printed Name:  Joel M. Silverstein

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address:  Stern, Kilcullen & Rufolo, LLC

 325 Columbia Turnpike, Suite 110, Florham Park, NJ 07932-0992

Phone Number: 973-535-1900    Fax Number:  973-535-9664

E-Mail Address: jsilverstein@sgklaw.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Chevron Corporation; Chevron U.S.A., Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

Stern, Kilcullen & Rufolo, LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Please see attached addendum.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Please see attached addendum.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Erica W. Harris    Date: 7/8/2025

Attorney's Printed Name: Erica W. Harris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: Susman Godfrey LLP

1000 Louisiana Street, Suite 5100, Houston, TX 77002

Phone Number: 713-651-9366    Fax Number: 713-654-6666

E-Mail Address: eharris@susmangodfrey.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):** Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):** No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

□       **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
         Chevron Corporation; Chevron U.S.A., Inc.


(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
         Gibson, Dunn & Crutcher LLP; Susman Godfrey LLP; Riley Safer Holmes & Cancila LLP

         Stern, Kilcullen & Rufolo, LLC

(3)     If the party, amicus or intervenor is a corporation:

        i)        Identify all its parent corporations, if any; and

                 Please see attached addendum.

        ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

                 Please see attached addendum.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

         N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

         N/A

Attorney's Signature: /s/ William E. Thomson          Date: 7/8/2025

Attorney's Printed Name:  William E. Thomson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes □    No ☑

Address:  Gibson, Dunn & Crutcher LLP

         333 S. Grand Ave., Los Angeles, CA 90071-3197

Phone Number: 213-229-7891          Fax Number:  213-229-7520

E-Mail Address: wthomson@gibsondunn.com

rev. 12/19 AK

## ADDENDUM

**(3)(i):**  Chevron Corporation has no parent corporation.  Chevron U.S.A. Inc.'s parent corporation is Chevron Corporation.

**(3)(ii):**  No publicly held company holds 10% or more of Chevron Corporation's stock. Chevron U.S.A. Inc. is a wholly owned subsidiary of Chevron Corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP p.l.c., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 ConocoPhillips; ConocoPhillips Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Massey & Gail LLP; Wilmer Cutler Pickering Hale and Dorr LLP

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

 Please see attached addendum.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 No publicly held corporation owns 10% or more in ConocoPhillips stock.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Robert Kingsley Smith          Date:  July 8, 2025

Attorney's Printed Name:   Robert Kingsley Smith

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✓]

Address:  60 State Street

 Boston, MA 02109

Phone Number:  (617) 526-6000          Fax Number:

E-Mail Address:  robert.smith@wilmerhale.com

rev. 12/19 AK

Addendum to Appearance & Circuit Rule 26.1 Disclosure Statement

(3)(i): ConocoPhillips does not have a parent corporation.  ConocoPhillips Company is wholly owned by ConocoPhillips.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ..........................................................ii

INTRODUCTION ......................................................................... 1

JURISDICTIONAL STATEMENT ................................................ 4

STATEMENT OF THE ISSUES ..................................................... 5

STATEMENT OF THE CASE .......................................................... 5

    A.    Factual Background ................................................ 6

    B.    Procedural Background ......................................... 9

SUMMARY OF ARGUMENT .................................................... 15

STANDARD OF REVIEW ............................................................ 18

ARGUMENT ................................................................................. 19

I.    The District Court Had Jurisdiction Under The Federal Officer Removal Statute ................................................................ 21

    A.    Defendants Were "Acting Under" Federal Officers ............. 21

    B.    Plaintiff's Suit "Relat[es] To" Acts Defendants Performed Under Federal Officers ........................................ 39

    C.    Defendants Have Several Colorable Defenses...................... 50

II.    Plaintiff's Disclaimer Cannot Defeat Federal Officer Removal ....59

CONCLUSION .......................................................................... 69

# TABLE OF AUTHORITIES

## Cases

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988)..................................................................55

*Am. Elec. Power Co. v. Connecticut*,
564 U.S. 410 (2011)..........................................18, 39, 52, 65

*Arizona v. Manypenny*,
451 U.S. 232 (1981)....................................................57, 58

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020)....................2, 4, 12, 13, 19, 20, 21, 23, 27,
31, 37, 39, 41, 44, 45, 46, 47,
48, 49, 50, 56, 57, 58, 60, 62,
66, 67, 69, 70

*Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Comm'n*,
216 N.E.2d 788 (Ill. 1966)....................................................42

*Betzner v. Boeing Co.*,
910 F.3d 1010 (7th Cir. 2018)............................................19

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)..........................................................51

*BP P.L.C. v. Mayor & City Council of Baltimore*,
593 U.S. 230 (2021)......................................................5, 20

*Brownback v. King*,
592 U.S. 209 (2021)............................................................40

*Butler v. Coast Elec. Power Ass'n*,
926 F.3d 190 (5th Cir. 2019)..............................................59

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017)............................................................40

*Cardenas v. Smith*,
    733 F.2d 909 (D.C. Cir. 1984) ................................................................ 42

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022)................................................ 48, 49, 51

*City of New York v. Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021) ........................................ 46, 50, 51, 53, 66

*City of Oakland v. BP P.L.C.*,
    325 F. Supp. 3d 1017 (N.D. Cal. 2018)................................................53

*In re Commonwealth's Motion to Appoint Couns. Against or*
    *Directed to Def. Ass'n of Phila.*,
    790 F.3d 457 (3d Cir. 2015) ........................................................56, 59

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010)................................................................54

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) ................................................................................ 19

*Doe I v. UPMC*,
    2020 WL 4381675 (W.D. Pa. July 31, 2020) ......................................59

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)................................................................................55

*Exxon Mobil Corp. v. United States*,
    2020 WL 5573048 (S.D. Tex. Sept. 16, 2020)......................................27

*Farina v. Nokia Inc.*,
    625 F.3d 97 (3d Cir. 2010) ..................................................................54

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024)...................................... 49, 60, 61, 62, 65

*Holmes Grp. v. Vornado Air Circulation Sys., Inc.*,
    535 U.S. 826 (2002) .............................................................................. 20

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972) ............................................................................. 52

*Jefferson County v. Acker*,
   527 U.S. 423 (1999) ........................................................ 43, 44, 50, 51

*State ex rel. Jennings v. BP Am. Inc.*,
   2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024) ............................. 53, 55

*Kircher v. Putnam Funds Tr.*,
   547 U.S. 633 (2006) ........................................................................... 20

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) (en banc) .............................................. 41

*Maryland v. 3M Co.*,
   130 F.4th 380 (4th Cir. 2025) ................................................. 60, 61, 64

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   2024 WL 3678699 (Md. Cir. Ct. July 10, 2024) ................................. 53

*Mesa v. California*,
   489 U.S. 121 (1989) ..................................................................... 56, 59

*New W., L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) .............................................................. 55

*Oneok, Inc. v. Learjet, Inc.*,
   575 U.S. 373 (2015) ........................................................................... 54

*Papp v. Fore-Kast Sales Co.*,
   842 F.3d 805 (3d Cir. 2016) ............................................................... 47

*People ex rel. Raoul v. 3M Co.*,
   111 F.4th 846 (7th Cir. 2024) ......................... 19, 20, 60, 62, 63, 64, 66

*Ripley v. Foster Wheeler LLC*,
   841 F.3d 207 (4th Cir. 2016) .............................................................. 52

*Roberts v. Smith & Wesson Brands, Inc.*,
   98 F.4th 810 (7th Cir. 2024) .............................................................. 42

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) ................................ 21, 22, 43, 51, 56, 58

*Sawyer v. Foster Wheeler LLC*,
    860 F.3d 249 (4th Cir. 2017) ............................................... 47

*Schmitt v. War Emergency Pipelines, Inc.*,
    175 F.2d 335 (8th Cir. 1949) ............................................... 28

*Shell Oil Co. v. United States*,
    751 F.3d 1282 (Fed. Cir. 2014) ........................................... 26

*Sierra v. City of Hallandale Beach, Fla.*,
    996 F.3d 1110 (11th Cir. 2021) ........................................... 42

*St. Augustine Sch. v. Underly*,
    78 F.4th 349 (7th Cir. 2023) ......................................... 42, 68

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. &*
*Indem. Co.*,
    990 F.3d 447, 451 (5th Cir. 2021) ....................................... 61

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965) ...................................................... 55

*United States v. Shell Oil Co.*,
    294 F.3d 1045 (9th Cir. 2002) ........................................... 26

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007) ................................... 20, 22, 31, 36, 37

*Wiker v. Pieprzyca-Berkes*,
    732 N.E.2d 92 (Ill. App. 2000) .......................................... 43

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ............................... 4, 20, 21, 49, 58, 59

*Wisconsin v. Schaffer*,
    565 F.2d 961 (7th Cir. 1977) ............................................. 57

*Woodill v. Parke Davis & Co.*,
    402 N.E.2d 194 (Ill. 1980)........................................................42

*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940)..................................................................52

## Statutes

28 U.S.C. § 1442..........................................1, 2, 4, 5, 6, 11, 15, 20, 21, 22,
                                                                37, 40, 43, 47, 48, 50, 57

28 U.S.C. § 1446.......................................................................4

28 U.S.C. § 1447.......................................................................5

42 U.S.C. § 6231......................................................................36

42 U.S.C. § 15927.....................................................................6

43 U.S.C. § 1332......................................................................34

MCC § 1-20-020 ......................................................................10

MCC § 2-25-090 ......................................................................10

MCC § 4-276-470 ....................................................................10

## Regulations

*Final List of Critical Minerals 2018*, 83 Fed. Reg. 23,295
    (May 18, 2018)........................................................................6

## Rules

Fed. R. Civ. P. 3 .....................................................................41

## Treatises

*Action*, Black's Law Dictionary (12th ed. 2024) ......................................40

14 Wright & Miller, *Federal Practice & Procedure* § 3726
    (4th ed. 2009).......................................................................43

**INTRODUCTION**

Plaintiff, the City of Chicago, sued selected energy companies and a trade association ("Defendants") in Illinois state court, seeking to use Illinois state tort law to recover for physical harms allegedly attributable to the effects of global climate change stemming from the cumulative impact of the worldwide production, promotion, sale, and use of oil and gas spanning back decades. Defendants removed this action to federal district court under the federal officer removal statute, 28 U.S.C. § 1442(a). Backed by reams of evidence, Defendants' notice of removal demonstrated that Plaintiff's claims are related in part to oil and gas production that Defendants undertook for the federal government under federal direction.

Plaintiff sought to avoid federal jurisdiction by arguing that its claims concerned only Defendants' allegedly deceptive advertising and by purporting to "disclai[m] injuries arising on federal property and those arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." Separate Appendix ("S.A.") 34. But Plaintiff's artfully crafted arguments rest on a fiction. Plaintiff's only alleged source of injuries is

the emission of greenhouse gases.  Yet, as Defendants showed in their notice of removal, it is impossible to tell whether particular emissions stemmed from governmental or non-governmental sources.  Put differently, greenhouse gas emissions from fossil fuel produced at the direction of the federal government are indistinguishable and indivisible from emissions traceable to ordinary consumer combustion of fossil fuels.  Under this Court's precedent, whether Plaintiff's "injuries flowed from [Defendants'] specific wartime production for the federal government or from . . . operations outside those confines . . . are merits questions that a federal court should decide."  *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020).  The district court nevertheless remanded the case.

The district court committed two fundamental errors in its analysis of federal-officer jurisdiction.  *First*, the district court erred in crediting Plaintiff's effort to characterize this case as concerning only Defendants' allegedly misleading advertising and deception—and not Defendants' oil and gas production activities that allegedly caused Plaintiff's claimed injuries.  That analysis improperly limits the scope of the federal officer removal statute, which permits removal whenever the "civil action" that the plaintiff has filed "relat[es] to" Defendants' federal acts.  28 U.S.C.

§ 1442(a)(1). Here, Plaintiff's "civil action" is not confined to allegedly tortious marketing activities, but necessarily includes the complaint's theory of causation and injury, which rests entirely on the greenhouse gas emissions stemming from the production and use of fossil fuels. Emissions arising from Defendants' conduct (for the government and otherwise) are an essential element of Plaintiff's claims, so they are necessarily part of this "civil action." And because emissions from governmental and non-governmental sources cannot be separated, the district court's decision would empower *state* courts to impose liability on Defendants for alleged emissions attributable to and related to federally supervised activities, or at minimum, to decide causal questions about the extent to which Plaintiff's injuries are attributable to Defendants' federal work. This flies in the face of the federal officer removal statute.

*Second*, the district court erred in crediting Plaintiff's disclaimer and its efforts to exclude injuries resulting from Defendants' federal work. Because Plaintiff seeks recovery for a single, indivisible injury (harm from commingled greenhouse gas emissions), it cannot simply disclaim *part* of that injury by *ipse dixit*. Whether and to what extent

Plaintiff's injuries are traceable to Defendants' federal work is itself a question that must be resolved in federal court.

This is a textbook case for federal officer removal. The federal officer removal statute guarantees that those sued for actions taken under federal direction will have a federal forum in which to raise federal defenses to liability. And as this Court recognized in *Baker*, Congress provided for federal-officer removal jurisdiction precisely so that federal courts can resolve "merits questions"—including "difficult causation question[s]"—that drive the availability of defenses for actions taken under federal authority. 962 F.3d at 945, n.3; *see Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

The district court erred in remanding this case, and this Court should reverse.

## JURISDICTIONAL STATEMENT

Defendants timely removed this action to the district court on March 28, 2024. 28 U.S.C. § 1446(b)(2); S.A 218. The district court had federal question jurisdiction under the Federal Officer Removal Statute, 28 U.S.C. § 1442.

On May 16, 2025, the district court granted Plaintiff's motion to remand this case to state court. Appendix ("App.") 1-26. Defendants timely filed a notice of appeal on May 28, 2025. S.A. 1-13. This Court has jurisdiction under 28 U.S.C. § 1447(d) to review the district court's entire remand order. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021).

## STATEMENT OF THE ISSUES

I.    Whether the district court had jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiff's injuries were allegedly caused by emissions from oil and gas, a substantial amount of which Defendants produced at the direction of federal officers, such that Plaintiff's claims "relat[e] to" Defendants' federal acts.

II.    Whether the district court erred in holding that Plaintiff's purported disclaimer of liability based on Defendants' federally supervised activities precluded removal under the federal officer removal statute.

## STATEMENT OF THE CASE

In this suit, Plaintiff seeks to hold Defendants—fourteen energy producers and a trade association to which they belong—liable under

state tort law for the production, promotion, and sale of oil and gas that create greenhouse gas emissions when combusted by end users. A substantial portion of the emissions for which Plaintiff seeks to impose liability is attributable to oil and gas production activities that Defendants undertook at the federal government's direction, including the production of highly specialized, non-commercial-grade military fuels to support the government's wartime and peacekeeping efforts. Defendants thus removed this case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a). This appeal arises from the district court's decision remanding the case to state court.

### A. Factual Background

Oil and gas power our national defense; keep our homes, offices, and factories illuminated, heated, and cooled; and transport people and products across the nation and around the world. S.A. 222-23. The United States thus views fossil fuels as "strategically important domestic resources" that should be developed to "reduce the growing dependence" on "politically and economically unstable sources of foreign oil imports." 42 U.S.C. § 15927(b)(1); *see also Final List of Critical Minerals 2018*, 83 Fed. Reg. 23,295, 23,296 (May 18, 2018) ("fossil fuels" are "indispensable

to a modern society for the purposes of national security, technology, infrastructure, and energy production"). For "[o]ver the last 120 years, the U.S. government has relied upon and controlled the oil and gas industry to obtain oil supplies and expand the production of petroleum products, in order to meet military needs and enhance national security." S.A. 326.

Since World War II, the federal government has required and promoted the production of oil and gas by Defendants to meet military and national economy demands. *See* S.A. 236-86. During wartime, the federal government has required Defendants to produce oil and gas, including high-octane fuel for airplanes ("avgas"). S.A. 236-37. Indeed, during World War II, Congress created federal agencies—such as the Petroleum Administration for War ("PAW")—to direct the oil and gas industry, including Defendants, and prioritize the production of aviation gasoline. S.A. 236-39. And PAW maintained "disciplinary measures" for noncompliance. S.A. 240, 427. The government took similar measures during the Korean War, requiring oil companies to drill wells and ensure adequate quantities of avgas for military use. S.A. 355-56. And after the 1973 oil embargo, the government issued directives for companies,

including Defendants, to supply millions of barrels of petroleum to the Department of Defense.  S.A. 241-42, 456.

"To this day, Defendants supply the [government] with highly specialized fuels according to military specifications to meet its need to power planes, ships, and other vehicles."  S.A. 245.  To take just one example, from 2016 to 2020, BP contracted with the government to provide approximately 1.5 billion gallons of specialized military fuel, which was required to contain certain additives and conform to specific chemical and physical requirements.  S.A. 247-48, 572.

In addition, Defendants have operated the federal government's petroleum reserves and production facilities on its behalf.  Chevron and its predecessor were involved in the operation, development, and production of the Elk Hills Naval Petroleum Reserve on behalf of the government from 1944 to 1998.  *See* S.A. 251-54, 258-59.  The government directed daily production at the reserve to meet fuel shortages.  *See, e.g.*, S.A. 256-57, 1144, 1278.  Similarly, Defendants produced oil for the government's Strategic Petroleum Reserve ("SPR") and operated its infrastructure, with the aim of helping the government reduce the impact of disruptions in supplies of petroleum products.  S.A. 279-82.

Defendants also assisted the government by producing oil and gas in the Outer Continental Shelf at the direction and supervision of the federal government.  S.A. 262, 270-71.  And Defendants developed mineral resources on federal lands offshore based on leases from the Bureau of Land Management.  S.A. 278-79.

### B. Procedural Background

In March 2024, the City of Chicago sued Defendants in state court seeking damages for the "climate change impacts" it claims resulted from "greenhouse gas emissions" caused by "fossil fuels."  S.A. 30.  Seeking to hold Defendants liable for "global warming" from "the 1950s to the present," Plaintiff alleges that Defendants have "extracted and sold fossil fuel[] products" for decades.  S.A. 31.  Plaintiff claims that Defendants allegedly "misrepresented and concealed the hazards of fossil fuel products," which "drove fossil fuel consumption" and "caused an . . . increase in anthropogenic GHG emissions and accelerated global warming," which in turn allegedly "brought about devastating climate change impacts to the City of Chicago."  S.A. 30, 33.  Plaintiff's suit, in sum, seeks recovery for "Climate-Related Harms" based on the "release [of] greenhouse gases

into the atmosphere" from the sale and use of fossil-fuel products. S.A. 182.

The Complaint asserts eleven causes of action under state and local law, including strict liability failure to warn, negligence, public and private nuisance, civil conspiracy, unjust enrichment, consumer fraud in violation of MCC § 2-25-090, deceptive practices in violation of MCC § 4-276-470, and recovery under MCC § 1-20-020. S.A. 181-216. In its Complaint, Plaintiff purported to disclaim "recovery or relief attributable to injuries arising on federal property and those arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." S.A. 34. The Complaint recognized, however, that Plaintiff's recovery hinges on "quantifying GHG pollution attributable to the Fossil Fuel Defendants' products and conduct," and that determining the "injuries to Chicago" requires determining the "portion of the global atmospheric GHG concentrations" attributable to Defendants' products and conduct—including products created for, and conduct occurring, at the behest of federal officers. S.A. 74-75.

Defendants timely removed under the federal officer removal statute.  S.A. 225.  That statute guarantees a federal forum for those "acting under" federal officers who seek to raise colorable federal defenses in a civil action that "relat[es] to" their acts taken under color of federal authority.  28 U.S.C. § 1442(a)(1).

In their notice of removal, Defendants demonstrated that the statutory requirements for removal are satisfied here.  Defendants introduced nearly one hundred exhibits—including unrefuted declarations from two prominent historians and statements from two former Chairmen of the Joint Chiefs of Staff—documenting Defendants' work producing oil and gas for the federal government under close federal supervision. *See* S.A. 218-308; *see also* S.A. 309-23.  Defendants explained that this action relates to those activities because Plaintiff's claims "depend on Defendants' production, promotion and/or sale of oil and gas that create greenhouse gas emissions when combusted by end users."  S.A. 222-23.  Emissions are *the* pivotal link in the causal chain of Plaintiff's alleged injuries—indeed, if no emissions were released, Plaintiff would not have suffered any of its alleged injuries at all.  And because emissions become well-mixed in the atmosphere and untraceable to their source, Plaintiff's

suit effectively seeks relief for a single, indivisible harm caused by a multitude of sources.  S.A. 290.  This suit would thus either impose liability for emissions that resulted from or relate to Defendants' federally directed activities or, at minimum, require a state court to decide vexing causal questions about the extent to which Defendants' federal activities caused Plaintiff's injuries.  Defendants also explained that they intend to raise multiple colorable federal defenses to liability, including the government-contractor defense, federal preclusion and preemption, and the First Amendment.  S.A. 292, 296.

The district court, however, remanded the case, relying principally on Plaintiff's purported disclaimer of liability from Defendants' federal activities.  Required Short Appendix ("App.") 2, 10.  The court recognized that this Court had rejected a disclaimer in similar circumstances in *Baker*, 962 F.3d 937, but it held that *Baker* is limited to circumstances where a disclaimer "contradicts" the plaintiff's theory of liability.  Here, in the district court's view, there is no "contradiction between Plaintiff's disclaimer" of liability for production-related activities "and its deception-focused theory of liability."  App. 11.  But the district court disregarded that under *Baker*, Plaintiff's causes of action were necessarily

12

intertwined with the pollution, rendering the disclaimer ineffective or at least raising questions to be resolved by a federal court. Despite acknowledging the principle that it "must" credit Defendants' theory of the case in assessing removal, the district court refused to do so here because the emissions-based theory was purportedly "untethered" from the Complaint's allegations. App. 11, 23.

The court's flawed reliance on Plaintiff's disclaimer infected its analysis of the federal officer removal statute's elements and its conclusion that these elements were unsatisfied. The court first agreed with Defendants that, under *Baker*, Defendants *did* act under federal officers "[i]f the disclaimer were not effective." App. 17 ("[T]he Court finds that Defendants' argument has merit."). The court correctly recognized that *Baker* held that "the defendants' sale to the government of materials it needed for war efforts was sufficient to satisfy the acting under requirement." *Id.* As a result, the court agreed with Defendants that they acted under federal officers because they (1) produced aviation fuel gas and operated petroleum infrastructure during World War II and the Korean War, (2) supply specialized fuels to the military, (3) operated the Elk Hills Reserve, (4) produced oil and gas pursuant to the federal mineral

exploitation and production regime created by the Outer Continental Shelf Lands Act, and (5) supply oil and gas to the Strategic Petroleum Reserve. App. 14. Despite finding that Defendants "acted under the federal government," the court nonetheless incorrectly held that "Defendants fail to satisfy the acting under element" because, in the court's view, "this case is about Defendants' alleged misrepresentations," not government-supervised production activities that "led to or contributed to fossil fuel emissions." App. 19-20.

As to the third prong of the test—whether this action "relate[s] to" Defendants' federal acts—the court reasoned that it is the "charged conduct," not "plaintiff's injuries," that must relate to acts taken by Defendants under federal direction. App. 22-23. According to the court, Plaintiff's claims involve only deceptive advertising and speech about the dangers of fossil fuels, not emissions stemming from Defendants' oil and gas production activities.

Finally, the court deemed Defendants' federal defenses irrelevant because (given its earlier holdings) they did not "arise from any official duties" and had "nothing to do with" the "allegedly deceptive acts." App. 24-25. The court did not consider whether Defendants' federal defenses

were colorable, and the court cited no authority for its conclusion that defenses must "arise from . . . official duties."  App. 25.

This appeal timely followed.

## SUMMARY OF ARGUMENT

**I.**    This action is removable under the federal officer removal statute, 28 U.S.C. § 1442(a).  Plaintiff's claim of injury causation necessarily relates to Defendants' oil and gas production and sales activities, and a significant portion of those activities were performed under the direction of federal officers.  Because Defendants also have numerous colorable federal defenses, the district court has federal officer removal jurisdiction.

**A.**    Defendants' acts under the direction of federal officers were pervasive.  Defendants presented detailed allegations and an extensive evidentiary record of numerous categories of activities undertaken at the direction of federal officers: they supplied the federal government, including the U.S. military, with highly specialized fuels under detailed contracts subject to federal control, supervision, and compulsion; produced oil and gas on federal lands subject to federal direction and control; operated federal oil reserves; supplied and managed the Strategic Petroleum

Reserve; and produced oil and gas, operated government-owned facilities and equipment, and constructed pipelines as agents for the federal government and military during wartime.

**B.** Plaintiff's claims relate to the activities Defendants carried out under color of federal authority. Because the statute requires only that the plaintiff's "civil action" "relat[e] to" Defendants' federal acts, the "relatedness" analysis is not limited to the particular conduct that the plaintiff chooses to characterize as tortious. Rather, courts must also consider the nature of the plaintiff's theory of injury, which is part of the plaintiff's "civil action" no less than the conduct that purportedly triggers liability. Injury causation is an essential element of many of Plaintiff's claims, including for strict liability failure to warn, negligence, and nuisance. Plaintiff alleges physical injuries stemming from global climate change, which, it contends, resulted in part from Defendants' production and sale of fossil fuels. And because a substantial portion of those production and sale activities were undertaken at the direction of federal officers, Defendants have a right to a federal forum under the federal officer removal statute. In short, Plaintiff's claims relate to conduct that the Defendants undertook at the direction of federal officers.

16

**C.**     Defendants have multiple colorable federal defenses.  Defendants plausibly alleged that Plaintiff's claims are precluded and preempted by federal law; that the government-contractor defense applies; and that Plaintiff's claims are barred by structural constitutional principles, the Commerce Clause, the foreign-affairs doctrine, the Due Process Clause, and the First Amendment.

**II.**     Plaintiff's purported disclaimer does not change the analysis.  This Court's precedent holds that a plaintiff cannot evade federal officer removal by disclaiming liability from federally supervised activities while pursuing claims based on a single, indivisible injury potentially attributable to both federal and non-federal activities.  Where federally directed acts allegedly produced a pollutant that intermingled with the same pollutant produced from other sources, the very need to identify the source of the plaintiff's alleged injury raises a causal question germane to the adjudication of a defendant's federal defenses.  That authorizes removal to federal court.

Here, Plaintiff's disclaimer is ineffective because it has attempted to disclaim part of a single, indivisible injury.  As the Supreme Court has recognized, greenhouse gases, once emitted, "become well mixed in the

atmosphere," and one source's emissions are indistinguishable from another's. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011) ("*AEP*") (citation omitted). Thus, Defendants showed in their notice of removal that greenhouse gas emissions commingle in the atmosphere, rendering emissions from various sources indistinguishable. Yet Plaintiff attempts to "both recover from [greenhouse gases emissions] but also disclaim[s] government-controlled production" of activities that led to the same emissions. App. 11.

In crediting Plaintiff's disclaimer, the district court erred by rejecting Defendants' reasonable (and accurate) theory of the case—that Plaintiff's claims turn on greenhouse gas emissions traceable to the combustion of fossil-fuel products, not merely Defendants' allegedly deceptive advertising. The district court's unduly narrow view of Plaintiff's "claims" fails on its own terms. And both this Court and the Supreme Court have repeatedly instructed that, in assessing removal, courts must credit a defendant's reasonable theory of the case—not the plaintiff's.

## STANDARD OF REVIEW

This Court reviews "the propriety of the removal of a state-court action de novo." *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th

Cir. 2024).  Although the removing party bears the burden of establishing federal jurisdiction, *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018), the Court "credit[s] only" the removing party's "theory" of the case and must give it the "benefit of all reasonable inferences from the facts alleged" in the notice of removal, *Baker*, 962 F.3d at 945, 947.  The Court reviews a defendant's allegations in its notice of removal under federal pleading standards.  *Betzner*, 910 F.3d at 1015.  Accordingly, the Court must take as true all "plausible allegation[s]" of jurisdictional facts in a defendant's notice of removal.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

## ARGUMENT

Federal subject matter jurisdiction exists under the federal officer removal statute.  By enacting the federal officer removal statute, Congress "promise[d] a federal forum for any action against an 'officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'"  *Baltimore*, 593 U.S. at 234-35 (quoting 28 U.S.C. § 1442(a)(1)).  A "defendant seeking removal based on this statute must show the following: (1) it is a person within the meaning of the statute;

19

(2) it is acting under the United States (or its agencies or officers); (3) it has been sued for or relating to any act under color of such office; and (4) it has a colorable federal defense to the plaintiff's claim." *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024).

"[T]he Supreme Court has made clear that courts must liberally construe § 1442(a)." *Baker*, 962 F.3d at 941; *see Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Willingham*, 395 U.S. at 407. Accordingly, the usual rules for removal principles are inverted for the federal officer removal statute. The well-pleaded complaint rule ordinarily enables a plaintiff to have his "cause heard in state court" merely "by eschewing claims based on federal law." *Holmes Grp. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (internal quotation marks omitted). But federal officer removal "is an exception to the well-pleaded complaint rule," allowing "suits against federal officers to be removed despite the nonfederal cast of the complaint." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (cleaned up). The right to removal under Section 1442(a) is thus "absolute" when its requirements are met: the case may be removed "regardless of whether the suit could originally have been brought in a federal court." *Willingham*, 395 U.S. at 406.

## I. The District Court Had Jurisdiction Under The Federal Officer Removal Statute.

Defendants satisfied each of Section 1442(a)'s elements. Defendants properly removed this action because the federal government directed Defendants to engage in activities relating to Plaintiff's claims. Defendants "act[ed] under the United States, its agencies, or its officers"; Plaintiff's claims relate to those acts "under color of federal authority"; and Defendants have raised "colorable federal defense[s]." *Baker*, 962 F.3d at 941. The district court's contrary holding misreads the statute, misconstrues this Court's precedent, and applies a "narrow, grudging interpretation" of Section 1442(a) that the Supreme Court has repeatedly cautioned against. *Id.* at 943.[1]

### A. Defendants Were "Acting Under" Federal Officers.

Section 1442(a)'s "acting under" requirement requires a relationship between the defendant and the government that "involves subjection, guidance, or control" and "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," *Watson*, 551 U.S. at 151-52 (internal

---

[1] It is undisputed that Defendants are "persons" within the meaning of the federal officer removal statute. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (corporations are "persons" under Section 1442(a)).

quotation marks omitted), which is established here.  Although "simple compliance with" federal regulations does not suffice, a private contractor "goes beyond" such compliance when it specifically helps "the Government to produce an item that it needs." *Id.* at 153.  A textbook example is "providing the Government with a product that it used to help conduct a war," *id.* at 153-54, or "assisting the federal government in building warships," *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012).  Another is performing "basic governmental tasks" that, "in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 154.  A private party and the government form the "necessary relationship" to satisfy the acting-under standard when the government supplies "detailed specifications" for a private company's production of materials under "compulsion to provide the product to the government's specifications." *Baker*, 962 F.3d at 943.

This Court's decision in *Baker* provides controlling guidance on how to apply the "acting under" prong of the federal-officer removal statute.  There, residents of a housing complex sued nearby chemical manufacturing companies for alleged contamination of soil with hazardous substances like lead and arsenic.  962 F.3d at 939-40.  The chemical

companies removed the case to federal court on the grounds that, during World War II, "the United States government directed them to produce certain materials [including lead] for the military, supervised distribution of these goods, and controlled their ultimate usage." *Id.* at 939-40. This Court held that removal was proper because the companies acted under federal authority by "provid[ing] the federal government with materials that it needed to stay in the fight at home and abroad," and without which "the government would have had to manufacture the relevant items on its own." *Id.* at 942.

This case resembles *Baker* in every way that matters. Here, too, Defendants "help[ed] the Government to produce an item that it needs"— not only for war but beyond. *Id.* (quoting *Watson*, 551 U.S. at 153). Defendants stepped into the government's shoes and performed essential government functions subject to the government's direction. Defendants supplied the federal government and U.S. military with highly specialized fuels under detailed contracts subject to federal control, supervision, and compulsion; produced oil and gas on federal lands subject to federal direction and control; operated federal oil reserves; supplied and managed the Strategic Petroleum Reserve; and produced oil and gas, operated

government-owned facilities and equipment, and constructed pipelines as agents for the federal government and military during wartime.

**1.** Defendants' activities here amply satisfy the acting-under standard. The U.S. Department of Defense ("DOD") is the single largest consumer of energy in the United States, and one of the world's largest consumers of petroleum fuels. S.A. 242-43; *see* S.A. 433-40. As two former Chairmen of the Joint Chiefs of Staff explained, the "history of the Federal Government's control and direction of the production and sale of gasoline and diesel to ensure that the military is 'deployment-ready'" spans "more than a century." S.A. 242-43. "Because armed forces have used petroleum-based fuels since the 1910s, oil companies have been essential military contractors, throughout the last century." S.A. 327. The "U.S. government has controlled and directed oil companies in order to secure and expand fuel supplies for its military forces and those of its allies, both in wartime and in peacetime." *Id.* Defendants' activities encompass five distinct categories of acts undertaken pursuant to federal direction: (1) provision of fuel during World War II and the Korean War, (2) provision of specialized fuels under military direction, (3) operation of Elk Hills Reserve in the employ of the U.S. Navy, (4) developing mineral resources

24

on federal law, and (5) supplying and managing the strategic petroleum reserve. Any one of these suffices to establish that Defendants acted under federal officers and together leave no doubt that the standard is satisfied here.

*Provision of Fuel During World War II and Korean War.* During World War II, the United States pursued full production of its oil reserves and created agencies—such as the Petroleum Administration for War ("PAW")—to *control* the petroleum industry, including Defendants' predecessors and affiliates. The federal government built refineries and directed the production of certain products, and it managed scarce resources for the war effort. As Senator O'Mahoney, Chairman of the Special Committee Investigating Petroleum Resources, put it in 1945: "No one who knows even the slightest bit about what the petroleum industry contributed to the war can fail to understand that it was, without the slightest doubt, one of the most effective *arms of this Government* . . . in bringing about a victory." S.A. 378 (emphasis added).

The federal government exercised extraordinary control over Defendants during wartime to guarantee the supply of oil and petroleum fuels, such as high-octane aviation gasoline ("avgas"). As courts have

recognized, "[b]ecause avgas was critical to the war effort, the United States government exercised significant control over the means of its production during World War II." *United States v. Shell Oil Co.*, 294 F.3d 1045, 1049 (9th Cir. 2002). "PAW told the refiners what to make, how much of it to make, and what quality." *Shell Oil Co. v. United States*, 751 F.3d 1282, 1286 (Fed. Cir. 2014). Federal agencies directed oil exploration activities, the construction of refining facilities, and the allocation of raw materials. S.A. 238-39, 389, 394, 401-402. They issued production orders, entered into contracts giving extraordinary control to federal officers, and "programmed operations to meet new demands, changed conditions, and emergencies." S.A. 389. None of those directives was voluntary. *See Exxon Mobil Corp. v. United States*, 2020 WL 5573048, at *11 (S.D. Tex. Sept. 16, 2020) (finding that private refiners had "no choice" but to comply with the federal officers' direction); S.A. 427 (PAW maintained "disciplinary measures" for noncompliance, including "restricting transportation, reducing crude oil supplies, and withholding priority assistance"). Put simply, "[t]he government . . . used [its] authority to control" Defendant's "operations." *Exxon*, 2020 WL 5573048, at *14; *see also* S.A. 410-13. Later, during the Korean War, the Petroleum

26

Administration for Defense performed much the same function as PAW. *See* S.A. 241-42; *see also Exxon*, 2020 WL 5573048, at *15.[2]

Defendants also acted under the federal government by operating and managing government-owned or government-funded petroleum-production facilities. During World War II, the government built "dozens of large government-owned industrial plants" that were "*managed by private companies under government direction*." S.A. 340-41 (emphasis added). "The U.S. government enlisted oil companies," including Defendants' predecessors, "to operate government-owned industrial equipment . . . [in order] to comply with urgent government orders." S.A. 341-42. These "oil companies were not merely top World War II prime contractors, but also served as government-designated operators of government-owned industrial facilities" or government-owned equipment within industrial facilities. S.A. 346-47. And Defendants also acted under federal officers in constructing and operating the Inch Lines

---

[2] Removal would be warranted even if Defendants provided "mere assistance" to the federal government, without any "legal duty" to do so. This Court has found "no authority for the suggestion that a voluntary relationship somehow voids the application of the removal statute." *Baker*, 962 F.3d at 942 n.1 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008)).

(pipelines extending from Texas to New Jersey) "under contracts" and "as agent[s]" for the federal government, bringing hundreds of millions of barrels of oil and refined products for use and combustion in the cross-Atlantic fronts during World War II. *Schmitt v. War Emergency Pipelines, Inc.*, 175 F.2d 335, 335 (8th Cir. 1949).

In short, the relationship between Defendants and the federal government during World War II and the Korean War involved detailed directives for production and distribution of oil, under federal supervision and backed by government coercion, not to mention the operation and management of government-owned oil facilities under government direction.

*Provision of Specialized Fuels Under Military Direction.* To this day, Defendants continue to produce and supply highly specialized fuels that must conform to exact DOD specifications to meet the U.S. military's unique operational needs. U.S. Navy Captain Matthew D. Holman recently explained that "[f]uel is truly the lifeblood of the full range of Department of Defense (DoD) capabilities, and, as such, must be available on specification, on demand, on time, every time." S.A. 494. To meet those demands, the Department has for decades worked "hand-in-hand"

with "contractors" like Defendants "to deliver fuel to every corner of the world, ashore and afloat." *Id.* The military has "continued to rely on oil companies to supply it under contract with specialty fuels, such as JP-5 jet aviation fuel and other jet fuels, F-76 marine diesel, and Navy Special Fuel." S.A. 366-67.

During the Cold War, for instance, Shell Oil Company developed and produced specialized jet fuel to meet the unique performance requirements of the U-2 spy plane and later the SR-71 Blackbird and its predecessor, the OXCART program. S.A. 246. These fuels involved special processes, testing and inspection requirements, facilities, and security restrictions to support these unique and highly specialized military airframes. *Id.* Similarly, BP entities have contracted with the Defense Logistics Agency ("DLA") to provide a significant quantity of specialized military fuels over decades. BP entities entered into approximately 25 contracts with the DLA to provide approximately 1.5 billion gallons of specialized military fuels, such as JP-5, JP-8, and F-76. S.A. 572. The Department of Defense exerted significant control over the BP entities in fulfilling these contracts, seeking to ensure that these fuels met specific performance requirements. *See* S.A. 248, 806, 838-40. To meet these

29

unique operational needs, DLA required that the fuels contain express amounts of "military unique additives that are required by military weapon systems." S.A. 247-49, 560. These fuel contracts are far more specialized and prescriptive than contractual requirements for fuel intended for consumer-type vehicles. S.A. 248-49. DOD specifications also required the BP entities to conform the fuels to other specific chemical and physical requirements that are essential to the performance of the relevant military function. S.A. 250.

Federal officers have thus directed Defendants for decades to help the government by providing specialized, non-commercial grade fuels and services that are essential to the national economy and security—functions the government would have needed to perform itself absent Defendants' assistance. These were not arm's-length transactions of widely available commercial products; these specialized military grade fuels have *no commercial purpose or use at all*. As the former Chairmen of the Joint Chiefs of Staff explained, "the Federal Government has both incentivized, directed, and contracted with Defendants to obtain oil and gas products," and "[a] substantial portion of the oil and gas used by the United States military are *non-commercial* grade fuels that are

developed . . . under the oversight and direction of military officials." S.A. 470 (emphasis added). Far from "typical commercial agreements," the government contracts required Defendants "to supply fuels with unique additives to achieve important objectives." S.A. 484. This in turn "provid[ed] the Government with a product that it use[s] to help conduct a war," *Watson*, 551 U.S. at 154, and "that it need[s] to stay in the fight at home and abroad," *Baker*, 962 F.3d at 942.

In short, as Defendants' experts explained, "the U.S. government has controlled and directed oil companies in order to secure and expand fuel supplies for its military forces and those of its allies, both in wartime and in peacetime," by employing "direct orders, government ownership, and national controls." S.A. 327-28.

*Operation of Elk Hills Reserve "In the Employ" of the U.S. Navy*. Subject to federal direction, a Chevron predecessor, Standard Oil of California, played a significant role in operating the Elk Hills Reserve in California for over three decades in the mid-twentieth century. *See* S.A. 251-59. The Elk Hills Reserve was a petroleum reserve created by President Taft in 1912 to preserve oil in the ground for national emergencies. S.A. 251, 1106-11. Standard Oil operated the U.S. Navy's portion of the

31

oil reserve according to an Operating Agreement that put Standard Oil "*in the employ*" of the Navy and made it "responsible to the Secretary thereof." S.A. 1278 (emphasis added).

Based on its right to operate the reserve, the Navy had the option to produce oil directly or hire a contractor for the job. "The 'Navy chose to operate the reserve through a contractor rather than with its own personnel.'" S.A. 255-56. Standard Oil "was awarded the contract, and continued to operate [Elk Hills] [for the Navy] for the next 31 years." *Id.* Standard Oil's operation and production at Elk Hills for the Navy were subject to substantial supervision by Navy officers. S.A. 257-58. Naval officers directed Standard Oil to conduct operations to further national policy. For example, the reserve produced up to 65,000 barrels per day in 1945 "to address fuel shortages and World War II military needs." S.A. 256-57. And in November 1974, the Navy directed Standard Oil to increase production to 400,000 barrels per day to meet the unfolding energy crisis, advising Standard Oil that "*you are in the employ of the Navy* and *have been tasked with performing a function which is within the exclusive control of the Secretary of the Navy*." S.A. 1299 (emphases added); *see* S.A. 256-57.

*Developing Mineral Resources on Federal Land.*  Defendants have produced oil and gas pursuant to the federal mineral exploitation and production regime on the Outer Continental Shelf ("OCS"), as well as on federal lands onshore.  *See* S.A. 262-79.  Defendants acted on behalf of the federal government to extract federally owned mineral resources under the federal government's close direction and supervision to assist the government in fulfilling the basic (and critical) government objectives of ensuring sufficient domestic supplies of oil and gas to protect the nation's economic, security, and foreign-policy interests.  These OCS leases are "*not merely commercial transactions* between the federal government and the oil companies.  They reflect the creation of a valuable national security asset for the United States over time."  S.A. 1361-63 (emphasis added).  Under federal law, the OCS "is a vital national resource reserve held by the Federal Government for the public, which should be made available for expeditious and orderly development" in "a manner which is consistent with . . . national needs."  43 U.S.C. § 1332(3).

The oil and gas resources on the OCS are owned by the United States.  Accordingly, when Congress determined that the government had a policy need to extract those resources, its only options were to

assign that task to federal employees or obtain the services of private parties to achieve the same goals. It chose the second option, "procur[ing] the services of oil and gas firms to develop urgently needed energy resources on federal offshore lands that the federal government was unable to do on its own." S.A. 1361-63. But the federal government "dictated the terms, locations, methods, and rates of hydrocarbon production on the OCS" in order to advance federal interests. S.A. 1364-65. Federal "supervisors" exerted substantial control and oversight over Defendants' operations on the OCS, with complete authority to control and dictate the rate of production from OCS wells, and additional powers to direct how oil and gas resources would be extracted and sold. S.A. 1375-85. Defendants' development of mineral resources on the Outer Continental Shelf has thus "filled a national government need" for "more than six decades," S.A. 1361-63, and federal officials "supervised, directed, and controlled the rate of oil and gas production," S.A. 1405-06.

Similarly, Defendants develop mineral resources on federal lands onshore pursuant to leases offered by the Bureau of Land Management. For these leases, too, the United States "reserves [the] right to specify rates of development and production in the *public interest*." S.A. 1457

(emphasis added).  The leases permit the federal government "'to ensure that production is sold at reasonable prices and to prevent monopoly,'" to determine the value of production, and to otherwise exercise extensive supervision and control over the lessees.  S.A. 278-79.

In sum, the federal government has enlisted Defendants as its agents to extract the federal government's oil, gas, and minerals from the ground and supply the domestic market to serve federal governmental interests.  *See* S.A. 1364-65 (explaining that the federal government "viewed these firms as agents of a larger, more long-range energy strategy to increase domestic oil and gas reserves").

*Supplying and Managing the Strategic Petroleum Reserve*.  In response to the 1970s oil embargoes, Congress created the Strategic Petroleum Reserve "to reduce the impact of disruptions in supplies of petroleum products."  42 U.S.C. § 6231(b); *see also* S.A. 279-80.  Defendants "acted under" federal officers by supplying federally owned oil and managing the Strategic Petroleum Reserve for the government.  *See* S.A. 280-81.  The Strategic Petroleum Reserve subjects Defendants to the federal government's supervision and control, including in the event the President calls for an emergency drawdown, under which the reserve oil can

be used to address national crises. S.A. 282-83. The United States exercised this emergency control to draw down the reserve in response to Hurricane Katrina in 2005 and disruptions to oil supply in Libya in 2011. *Id.*; S.A. 1563-79. By supplying and managing the Strategic Petroleum Reserve, Defendants engaged in "an effort to *assist*, or to help *carry out*" the federal government's task of ensuring energy security. *Watson*, 551 U.S. at 152 (emphases added).

In short, Defendants acted in an "effort to assist, or to help carry out, the duties or tasks of the federal superior" and "in the absence of . . . contract[s] with . . . [these] private firm[s], the Government itself would have had to perform" such tasks. *Watson*, 551 U.S. at 152, 154.

**2.** Even the district court "agree[d]" that *Baker* controls the "acting under" analysis: "*Baker*'s holding" is that "defendants' sale to the government of materials it needed for war efforts *was* sufficient to satisfy the acting under requirement." App. 17. That should have been the end of the matter. But the court perplexingly proceeded to conclude that the acting-under requirement was not met because (1) "[Plaintiff's] disclaimer excludes injuries" related to Defendants' work under the supervision of federal officers, and (2) "the Complaint takes issue with

36

Defendants' alleged *campaign of deception and misrepresentation* in the 1980s," not any of Defendants' federal work pertaining to oil and gas production. App. 15, 18-19.

That analysis mistakenly confuses an analysis of Section 1442(a)'s "acting under" requirement with *other* aspects of the Section 1442 inquiry—namely, whether Plaintiff's disclaimer is effective, and whether Defendants' federally supervised activities "relate to" Plaintiff's civil action. Neither consideration bears on the "acting under" requirement, which asks whether a defendant acted under a federal officer, irrespective of the plaintiffs' claims.

The district court also wrongly concluded that because some of Defendants' federally supervised activities predated Plaintiff's alleged disinformation campaigns—such as their contributions during World War II and the Korean War—they could not support a finding that Defendants were acting under a federal officer.[3] App. 18-19. This reasoning, too, confuses the "acting under" requirement with whether such activities "relate to" Plaintiff's claims. The timing of Defendants' wartime conduct as

---

[3] In any event, it is undisputed that a significant portion of Defendants' federally supervised conduct occurred after the so-called disinformation campaigns alleged by the Plaintiff. *See, e.g.*, App. 245-51.

it relates to the allegedly deceptive statements has nothing to do with whether Defendant's conduct was performed at the direction of the federal government.

To the extent that the district court was instead concluding that the wartime conduct was not related to Plaintiff's claim, that was also mistaken. Indeed, the district court's analysis misses the mark by failing to consider Plaintiff's theories of causation and injury. Plaintiff alleges its injuries result from the cumulative impact of *all* global emissions, including those released from oil and gas produced by Defendants during World War II and the Korean War. Indeed, Plaintiff cites the rapid rise in fossil-fuel emissions "since the mid-twentieth century" as causing "a correspondingly sharp rise in atmospheric concentration of CO2." S.A. 71; *see also* S.A. 72 (alleging "[a]s greenhouse gases accumulate in the atmosphere, . . . [the] accumulation and" "associated disruption of the Earth's energy balance have a myriad of environmental and physical consequences"). And because greenhouse gases "become well mixed in the atmosphere" once emitted, *AEP*, 564 U.S. at 422 (citation omitted), and remain there "for potentially thousands of years," S.A. 127 (Compl. ¶ 143), the emissions from these wartime periods are indistinguishable from and

38

cumulative with all later emissions. The district court's opinion again amounts to a failure to credit Defendants' theory of the case. And importantly, it contradicts this Court's precedent, which "see[s] no support in the statute or precedent for [a] rule that a removing defendant must operate under government orders for most of the relevant time frame." *Baker*, 962 F.3d at 945.

## B. Plaintiff's Suit "Relat[es] To" Acts Defendants Performed Under Federal Officers.

This "civil action" is "for or relating to a[n] act under color of [federal] office." 28 U.S.C. § 1442(a)(1). The federal officer removal statute requires a connection between a Defendant's federal conduct and the lawsuit as a whole. And that connection is present here. After all, Plaintiff's alleged injuries stem from greenhouse gas emissions which are attributable to the Defendant's federal act, and thus "relat[e] to" Defendant's federally directed conduct. The district court erred in holding otherwise.

**1.** By its terms, the federal officer removal statute requires a connection between federally supervised acts and the "civil action" as a whole—not merely the specific breach of duty alleged by the plaintiff. 28 U.S.C. § 1442(a). The term "action" encompasses the entire "judicial proceeding" and is "synonymous" with "suit." *Action*, Black's Law Dictionary

(12th ed. 2024); *see California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 514 (2017) (same); *Brownback v. King*, 592 U.S. 209, 220 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit."). Accordingly, the federal officer removal statute reaches any suit that has a "connection or association" with a defendant's federally directed conduct. *Baker*, 962 F.3d at 944; *see Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc) ("Congress applied 'relating to' to all 'civil action[s]'" so "any civil action that is connected or associated with an act under color of federal office may be removed."). As this Court explained in *Baker*, "the statute does not require that the [lawsuit] must be for the very acts" that Defendants conducted under federal authority; a removing party need not allege "that the complained-of conduct *itself* was at the behest of a federal agency." 962 F.3d at 944-45 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)); *id.* at 942 n.1 (quoting *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 473 (3d Cir. 2015)). All that is required is some "connection or association" between the civil action and Defendants' federal conduct. *Id.* at 944.

40

Because a plaintiff commences a "civil action" by filing a complaint, Fed. R. Civ. P. 3, the Court must look to the entire complaint—including the claims in their entirety, and not only the specific allegations of an alleged breach of duty—to determine whether the requisite connection exists.  Here, Plaintiff's purported injuries necessarily form part of its claims.  A claim is "the set of operative facts that produce an assertable right in court *and create an entitlement to a remedy*."  *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023) (emphasis added); *Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 815 (7th Cir. 2024) (same). That is why courts have defined "[a] damage claim" as "a means *to redress an injury*."  *Cardenas v. Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984) (emphasis added); *cf. Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1122 n.5 (11th Cir. 2021) (Newsom, J., concurring) (explaining usage of related term "cause of action" as "refer[ring] to the existence of *both* a legal right *and* a corresponding legal remedy" (emphases added)).

Causation and injury are necessary elements of Plaintiff's claims for nuisance, strict liability failure to warn, and negligence.  *See* S.A. 181-216.  "[T]o constitute a nuisance, the act . . . complained about *must cause some injury*."  *Belmar Drive-In Theatre Co. v. Ill. State Toll Highway*

41

*Comm'n*, 216 N.E.2d 788, 790 (Ill. 1966) (emphasis added).  An actionable claim for failure to warn likewise requires a showing that "the defendant manufacturer failed to warn plaintiff of th[e] danger" that *"caused the injury."* *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 198 (Ill. 1980) (emphasis added).  And a "plaintiff in a negligence action must show . . . proximate causation and *compensable damages."*  *Wiker v. Pieprzyca-Berkes*, 732 N.E.2d 92, 96 (Ill. App. 2000) (emphasis added) (citing *Ogle v. Fuiten*, 445 N.E.2d 1344, 1347 (Ill. App. Ct. 1983)).  "Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer," any *one* of these claims would support removal.  14 Wright & Miller, *Federal Practice & Procedure* § 3726 (4th ed. 2009); *see Ruppel*, 701 F.3d at 1182.

Precedent confirms this principle.  The Supreme Court's decision in *Jefferson County v. Acker* makes clear that Section 1442(a)'s relatedness requirement does not turn narrowly on the allegedly duty-breaching acts on which the plaintiff focuses.  527 U.S. 423 (1999).  That case involved an Alabama county's effort to collect an occupational tax from two federal judges who held court in the county.  *Id.* at 427.  After the county initiated a collection suit in state court, the judges removed the case, arguing that

the tax impermissibly burdened the performance of federal judicial duties. *Id.* A four-Justice minority would have held that removal was improper because the suit was based only on the judges' "having refused to pay the tax," not their "performance of their official duties." *Id.* at 432. But the majority was unpersuaded. It was "not just the [defendant's] refusal to pay [taxes]," but rather, all "[t]he circumstances that gave rise to the tax liability"—which "encompass[ed] holding court in the county and receiving income for that activity"—that "'constitute[d] the basis' for the tax collection lawsuits at issue." *Id.* at 433 (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). Similarly here, "the circumstances giving rise" to Defendants' alleged liability is not just their alleged deception, but also their extraction and sale of fossil fuels that allegedly harmed Plaintiff. S.A. 30, 31.

This Court's decision in *Baker* followed the same logic. There, the plaintiffs argued that they sought to impose liability only for pollution from the chemical companies' general consumer operations, while the companies invoked federal officer removal on the ground that the action sought to impose liability in part for pollution traceable to their production of goods for the federal government during World War II. *Baker*, 962

43

F.3d at 940-41.  The plaintiffs contended that the relatedness require-
ment was not satisfied because the companies could not show that their
federal work caused the plaintiffs' injuries.  *See id.* at 943.  This Court
disagreed: any "questions about whether the Companies' pollution that
allegedly caused the Residents' injuries flowed from the Companies' spe-
cific wartime production for the federal government or from their more
general manufacturing operations outside those confines" were "merits
questions that a federal court should decide."  *Id.* at 944 (emphasis omit-
ted).

Here, too, Plaintiff's suit squarely relates to Defendants' federal
work.  Plaintiff alleges that because Defendants "extracted and sold fossil
fuel products," greenhouse gas emissions have increased, which has
"brought about devastating climate change impacts to the City of Chi-
cago."  S.A. 30, 31.  It is the "negative impacts of fossil fuel *consumption*"
that Plaintiff alleges have "warm[ed] the planet and change[d] our cli-
mate."  S.A. 32 (emphasis added).  According to Plaintiff, Defendants'
purported conduct "drove fossil fuel *consumption*," causing an "increase
in anthropogenic GHG emissions and accelerated global warming" that
have resulted in "devastating consequences to the City and its people."

44

S.A. 33.  And all of Plaintiff's alleged injuries stem from so-called "Climate-Related Harms," based on the "release [of] greenhouse gases into the atmosphere" from the sale and use of fossil-fuel products.  S.A. 182. At bottom, "[plaintiff] identifies no 'environmental harms' . . . other than those caused by emissions." *City of New York v. Chevron Corp.*, 993 F.3d 81, 97 n.8 (2d Cir. 2021); *see, e.g.*, S.A. 127.

Given the source of Plaintiff's alleged injuries, there is an obvious "connection or association" between Plaintiff's claims and Defendants' federal work, *Baker*, 962 F.3d at 944.  Plaintiff seeks relief for alleged impacts caused by greenhouse gas emissions that have intermingled in the environment due in part to Defendants' federally directed conduct. Plaintiff does not dispute—indeed, it affirmatively alleges—that it must "quantif[y] GHG pollution attributable to the Fossil Fuel Defendants' products and conduct" to recover.  *See* S.A. 74.  Yet it offers no ready means of disentangling emissions attributable to different sources.  And just as in *Baker*, whether Plaintiff's "injuries were caused by [Defendants'] wartime production for the government" is a "merits question" that a federal court must determine.  *Baker*, 962 F.3d at 943-44.  Plaintiff's action

45

therefore arises out of, and at a minimum relates to, Defendants' federally directed conduct.

**2.** In reaching a contrary conclusion, the district court erred in its construction of the federal officer removal statute and its application of controlling precedent.

The court first underscored that "Defendants in this case do not argue that the government required them to market their products in any specific way." App. 19-20. But that analysis commits the exact error that *Baker* rejects—requiring a removing defendant to show that "*the complained-of conduct itself* was at the behest of a federal agency." 962 F.3d at 944 (emphasis added). And "demanding a showing of a specific government direction . . . [goes] beyond what § 1442(a)(1) requires"—namely, that *the action* merely "relate to" federally supervised conduct. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *see also, e.g.*, *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016).[4]

---

[4] On June 16, the Supreme Court granted certiorari to consider whether a "contractual-directive test" survived Congress's amendment of the federal officer removal statute in 2011. *See Chevron U.S.A. Inc. v. Plaquemines Parish*, No. 24-813, 2025 WL 1678985 (U.S. June 16, 2025) (mem.). The overwhelming majority of courts of appeals—including this Court—reject such a requirement.

The district court incorrectly asserted that federal officer removal may not be "based on a relation to *a plaintiff's injuries* rather than to *the claims themselves*." App. 22 (emphases added).  According to the court, federal officer removal turns on the "complained-of conduct," not the "mechanism of injury." App. 21.  But this Court's decision in *Baker* directly forecloses that rationale: *Baker* expressly focused on "the Residents' injuries" and "whether a connection or association exists *between the Residents' health conditions* and their alleged exposure to federally dictated chemicals or others." 962 F.3d at 944 (emphasis added).

As explained above, moreover, the district court's reasoning contradicts the statutory text, which turns on the relationship between the "civil action" and Defendants' federal acts.  28 U.S.C. § 1442(a).  The district court's decision assumes an illusory distinction between Plaintiff's claims and its injuries.  In reality, Plaintiff's theory of injury is an essential element of its claims.  *See supra* 40-46.  Even if the relevant inquiry turned on "charged conduct," App. 20 (quoting *Ruppel*, 701 F.3d at 1181), the production and use of fossil fuels *are* conduct essential to Plaintiff's claims, because, under Plaintiff's theory, they are the mechanism of Plaintiff's alleged injuries and form the basis for the relief Plaintiff seeks.

The Third Circuit expressly recognized as much in an analogous climate-change suit, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022). In that case, the City of Hoboken similarly contended that Defendants' oil production activities on federal land did not relate to the suit by "cast[ing] their suits as just about misrepresentations." *Id.* at 712. The Third Circuit rejected that argument: There, as here, the complaint "charge[d] the oil companies with not just misrepresentations, but also . . . nuisances," which "are caused by burning fossil fuels and emitting carbon dioxide." *Id.*; *see* S.A. 143-46, 195-203 (Counts IV-VI).

The district court's singular focus on the defendant's allegedly tortious conduct also undercuts the federal officer removal statute's purpose—to provide a federal forum "when particular litigation implicates a cognizable federal interest." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 185 (1st Cir. 2024). Where the parties dispute causation questions about that federal interest, individuals acting at the government's direction "should have the opportunity to present their version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409. Thus, *Baker* teaches that the very act of parsing *injuries* traceable to governmental versus non-governmental activities can implicate federal

48

interests no less than the need to parse *actionable conduct* traceable to governmental versus non-governmental activities. In holding otherwise, the district court refused to give Section 1442(a) the "liberal[]" construction the Supreme Court and this Court have required. *Baker*, 962 F.3d at 941.

Finally, the district court mistakenly deferred to *Plaintiff's* characterization of its case as resting solely on deception, rather than also including emissions. This was error under any reasonable reading of the complaint. But the district court was doubly wrong for disregarding this Court's directive to credit only *Defendants'* "reasonable theor[y] of this case" in assessing removal. *Baker*, 962 F.3d at 947 (citing *Acker*, 527 U.S. at 432). And Defendants' emissions-based theory of the case is, at a minimum, reasonable. It is also undeniably accurate. In dismissing nearly identical climate-tort claims, the Second Circuit held that the case concerned emissions: "[Plaintiff] intends to hold the Producers liable . . . for the effects of emissions made around the globe over the past several hundred years." *City of New York*, 993 F.3d at 92. It is "precisely because fossil fuels emit greenhouse gases—which collectively 'exacerbate global warming'—that [plaintiff] is seeking damages." *Id.* at 91. And

"[plaintiff's] focus on [an] 'earlier moment' in the global warming lifecycle"—here, the advertising and sale of fossil fuels—"is merely artful pleading and does not change the substance of its claims." *Id.* at 97. Other courts have recognized the same. *See, e.g.*, *City of Hoboken*, 45 F.4th at 712 (rejecting effort "to cast th[e] suits as just about misrepresentations").

### C.    Defendants Have Several Colorable Defenses

**1.** Defendants have numerous colorable defenses. Because this requirement "encapsulates Congress's desire to have federal defenses litigated in federal forums," a defendant needs to only show that its defense is "colorable." *Ruppel*, 701 F.3d at 1182. In other words, Defendants do not bear a heavy burden—they need not "win [their] case before [they] can have it removed." *Acker*, 527 U.S. at 431. And here, Defendants' defenses are far more than colorable under any standard.

*First*, Defendants have a colorable government-contractor defense. S.A. 292-93. This defense applies against state-law products liability claims when (1) the suit involves a unique federal interest and (2) holding the defendant liable under state law would present a significant conflict with federal policy. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504,

507-08 (1988).  Here, Defendants' supplying fuel to the military and en-

suring an adequate domestic supply of oil and gas implicated core federal

interests.  *See id.* at 512 (holding federal contractor immune from suit

over "a particular feature of military equipment"); *Yearsley v. W.A. Ross

Constr. Co.*, 309 U.S. 18, 21-22 (1940) (holding federal contractors im-

mune from damages for the construction of dikes on the Missouri River

under federal direction).  "[T]he judiciary should hesitate to intervene in

matters of military procurement contracts" because "a higher risk of lia-

bility for government contractors would increase costs to the government

while decreasing the supply of contractors and research and development

in military equipment." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210

(4th Cir. 2016).  Taking the well-pleaded allegations in Defendants' no-

tice of removal as true, Defendants have shown a colorable federal-con-

tractor defense.

*Second*, under our federal constitutional structure, state law is not

competent to govern claims that seek relief for injuries attributable to

global emissions, and any remedies under federal law have been dis-

placed by the CAA.  *See AEP*, 564 U.S. at 421-23 ("the basic scheme of

the Constitution . . . demands" that "federal common law" govern these

types of disputes, and the CAA "displaced" any remedies for such suits); *Illinois v. City of Milwaukee*, 406 U.S. 91, 103, 105 n.6 (1972) (the "basic interests of federalism" embodied in the Constitution "demand[]" that federal law govern disputes involving "air and water in their ambient or interstate aspects"). The Second Circuit has squarely so held in an analogous climate-change case. *City of New York*, 993 F.3d at 92. Other courts have followed suit. Indeed, the Pennsylvania Court of Common Pleas recently noted in dismissing one of these cases that there is "a growing chorus of state and federal courts across the United States, singing from the same hymnal, in concluding that the claims raised by [climate-change plaintiffs] are not judiciable by any state court" and that "our federal structure does not allow . . . any State's law[] to address [these types of climate-change] claims." *Bucks Cnty. v. BP P.L.C.*, No. 2024-01836, at *11–12 (Pa. Ct. Comm. Pleas May 16, 2025) (citing *City of New York*; *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020); *State ex rel. Jennings v. BP Am. Inc.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024); *Mayor & City Council of Baltimore v. BP P.L.C.*, 2024 WL 3678699 (Md. Cir. Ct. July 10, 2024); *City of Annapolis v. BP plc*, No. C-02-CV-21-

000250 (Md. Cir. Ct. Jan. 23, 2025); *Anne Arundel Cnty. v. BP plc*, No. C-02-CV-21-000565 (Md. Cir. Ct. Jan. 23, 2025); *New Jersey ex rel. Platkin v. Exxon Mobil Corp.*, No. MER-L-001797-22 (N.J. Super. Ct. Law Div. Feb. 5, 2025)).[5]

*Third*, Plaintiff's claims are preempted by the Clean Air Act ("CAA"). S.A. 294-95. Conflict preemption occurs where "compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted); *see also Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). And courts have held that the CAA preempts state common-law claims to remedy harms arising from out-of-state emissions. *See, e.g.*, *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 303-06 (4th Cir. 2010). Here, Plaintiff attempts to bring state common-law claims for alleged injuries purportedly resulting from the aggregate effects of global emissions that have

---

[5] Other constitutional principles, including the Commerce Clause, the foreign-affairs doctrine, and the Due Process Clause, confirm that Plaintiff may not use state law to effectively regulate the entire global energy market. *See* S.A. 296-305.

been discharged almost entirely outside of Illinois.  That is squarely preempted by the CAA.  *See, e.g.*, *State ex rel. Jennings*, 2024 WL 98888, at *9 ("[C]laims . . . seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution, are preempted by the CAA.").

*Fourth*, to the extent that Plaintiff's claims target Defendants' statements, they are barred by the First Amendment.  S.A. 296.  Plaintiff's Complaint alleges that Defendants "oppos[ed] GHG emission-reduction initiatives," "disseminat[ed]" information to the "government," and sought to "prevent U.S. adoption" of the Kyoto Protocol.  S.A. 65, 100, 133.  The First Amendment's Speech Clause protects such activity from civil liability.  *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 671 (1965).  And those protections apply even if a defendant "employs unethical and deceptive methods."  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988); *see New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007).

**2.**  Rather than assess Defendants' defenses, the district court rejected them solely because the defenses purportedly did not "arise from

any official duties." App. 25 (reasoning that defenses had "nothing to do with" Defendants' federal work). But the federal officer removal statute requires only the "averment of *a* federal defense"—not one that arises from official duties. *Mesa v. California*, 489 U.S. 121, 139 (1989) (emphasis added). That limited requirement serves merely to provide the "federal law under which the action against the federal officer arises for Art. III purposes." *Id.* at 136. It "creates Article III jurisdiction" and "represents an exception to the well-pleaded complaint rule" by authorizing jurisdiction on a "federal question" that appears "outside of the plaintiff's complaint." *Ruppel*, 701 F.3d at 1180.

Indeed, the Third Circuit has expressly rejected the district court's erroneous view of the statute. "What matters is that a defense raises a federal question, not that a federal duty forms the defense." *In re Commonwealth's Motion*, 790 F.3d at 473. Although many federal officer removal cases involve duty-based defenses, like official immunity or federal contractor defenses, "the fact that duty-based defenses are the most common defenses does not make them the *only* permissible ones." *Id.* (emphasis added). In *Baker*, 962 F.3d at 942 n.1, this Court approvingly cited

55

the Third Circuit's rule, and it has never imposed a requirement that a defense arise out of official duties.

In imposing that *additional* requirement here, the district court improperly narrowed Section 1442(a)'s reach. As explained, by its terms, Section 1442(a) requires only that the suit "relate to" a defendant's federally supervised activities. Congress deliberately added that phrase in the 2011 Removal Clarification Act to "broade[n] federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office." *Baker*, 962 F.3d at 943. Yet requiring the removing party to show that its defenses "arise out of official duties" would revive the very causal requirement that Congress interred.

To be sure, courts have sometimes observed that the "purpose of the removal statute is to insure a federal forum for cases where federal officials must raise defenses *arising out of their official duties*." *Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977) (emphasis added); *see Arizona v. Manypenny*, 451 U.S. 232, 241 (1981) (similar). But those statements in *Schaffer* and *Manypenny* preceded Congress's amendment of the federal officer removal statute in 2011. And that rough statement of purpose

is not a statutory requirement.  Rather, this Court has repeatedly under-
scored that defendants need only "'have a colorable federal defense to the
plaintiff's action'"—nothing more.  *Ruppel*, 701 F.3d at 1180 (citing *Mesa*,
489 U.S. at 132-34); *Baker*, 962 F.3d at 945-46 (similar).

Indeed, one of the cases on which *Manypenny* relied makes clear
that federal defenses arising from federal duties are *the floor*—not the
ceiling—of federal officer removal.  *See* 451 U.S. at 242 (citing *Willing-
ham*, 395 U.S. at 407).  In *Willingham*, the Court explained that, "[*a*]*t the
very least*, [the federal officer removal statute] is broad enough to cover
all cases where federal officers can raise a colorable defense arising out
of their duty to enforce federal law."  395 U.S. at 406-07 (emphasis added).
In other words, the Court in no way limited removal to situations where
the defense arises from the official federal duty; it contemplated that re-
moval would *not* be so limited.  And this conclusion was consistent with
the Court's emphasis that "[t]he federal officer removal statute is not
'narrow' or 'limited'"; rather, "the right of removal under [the federal of-
ficer removal statute] is made absolute whenever a suit in a state court
is for any act 'under color' of federal office, regardless of whether the suit
could originally have been brought in a federal court."  *Id.* at 406.  And

as the Third Circuit has recognized, the Supreme Court's decision in *Acker* cements the conclusion that only a colorable defense is required. There, the Court allowed federal judges to remove a state case based on the judges' assertion of an intergovernmental-tax-immunity defense—a defense not required by their judicial duties. *See In re Commonwealth's Motion*, 790 F.3d at 473 ("[T]he judges' duties did not require them to resist the tax." (citing *Acker*, 527 U.S. at 437)).

Accordingly, such defenses can include federal preemption—a defense that arises out of the Supremacy Clause's operation on state law, not any duty imposed on the federal officer. *See, e.g.*, *In re Commonwealth's Motion*, 790 F.3d at 474; *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 192, 198 (5th Cir. 2019). Such defenses can include federal preclusion of a plaintiff's "right of action." *Id.* at 474. And they can include defenses under structural constitutional principles and the dormant Commerce Clause. *See, e.g.*, *Doe I v. UPMC*, 2020 WL 4381675, at *7 (W.D. Pa. July 31, 2020). Any of these defenses suffices to establish "federal law" for Article III purposes. *Mesa*, 489 U.S. at 136. The district court erred in holding otherwise.

58

## II.    Plaintiff's Disclaimer Cannot Defeat Federal Officer Removal.

No doubt recognizing that its claims would impose liability for emissions traceable to federally supervised work, Plaintiff sought to disclaim such liability in the Complaint: "Plaintiff hereby disclaims injuries arising on federal property and those arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes.  Plaintiff seeks no recovery or relief attributable to these injuries."  S.A. 34.  But it is well-settled that "[a] disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Express Scripts*, 119 F.4th at 188; *see Maryland v. 3M Co.*, 130 F.4th 380, 389 (4th Cir. 2025) (same); *Baker*, 962 F.3d at 945 n.3 (similar).  That is the case here, and the district court erred in crediting Plaintiff's disclaimer.

**1.**  Under the disclaimer doctrine, a plaintiff may forestall federal officer removal by "explicitly renounc[ing] claims upon which federal officer removal was based." *Express Scripts*, 119 F.4th at 187 (internal quotation marks omitted); *see, e.g.*, *Raoul*, 111 F.4th at 849.  But a disclaimer is valid only if it "eliminate[s] *any* basis for federal officer removal

59

so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Express Scripts*, 119 F.4th at 187 (emphasis in original).

Courts give no effect to disclaimers that are "merely 'artful pleading designed to circumvent federal officer jurisdiction.'" *St. Charles Surgical Hosp.*, *L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (quoting *Reinbold v. Advanced Auto Parts, Inc.*, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018)); *see 3M Co.*, 130 F.4th at 390 ("[T]he States' artful pleading does not trump 3M's theory for removal here."); *Express Scripts*, 119 F.4th at 180 ("The Commonwealth's attempts at artful pleading cannot serve as an end run around the federal officer removal statute."). A paradigmatic example involves a disclaimer whose applicability "turns on the core question" whether the plaintiff's injuries were "caused by [the defendant's] relationship with the federal government." *Express Scripts*, 119 F.4th at 187 (cleaned up). These disclaimers are "circular" and require the removing party "to prove in state court" the very sorts of causation questions that they seek to litigate in a federal forum. *Id.* at 187 (internal quotation marks omitted). A disclaimer is thus ineffective when a plaintiff seeks to disclaim liability from

federally supervised activities, but its theory of liability enables it to recover for harms potentially traceable to those activities. *See Baker*, 962 F.3d at 945 n.3; *Express Scripts*, 119 F.4th at 192 (finding disclaimer ineffective where the plaintiff's "theory of liability . . . make[s] it possible that it will recover for work that [a defendant] claims to have 'carried out' for the federal government").

*Baker* again illustrates the point. There, plaintiffs sought recovery for arsenic and lead contamination on their property. 962 F.3d at 940. They attempted to circumvent federal officer removal by purporting to disclaim that their lawsuit concerned any materials manufactured for the federal government. *Id.* at 945 n.3. But those government materials themselves contained arsenic and lead. The disclaimer thus implicated a core merits question in the case: "whether the Residents' injuries arise from products [the defendant] manufactured for the government." *Id.* That was "a difficult causation question that a federal court should be the one to resolve." *Id.*

This Court's decision in *Raoul*, in contrast, demonstrates the limited circumstances in which courts credit a disclaimer. 111 F.4th at 849. There, Illinois sought to hold a manufacturer, 3M, liable for

61

polyfluoroalkyl substances ("PFAS") contamination. *Id.* at 847. The manufacturer claimed that one of the products it produced containing PFAS was for the United States military. *Id.* The manufacturer alleged that the contamination at issue "could either have come from" the military product or from its other PFAS products. *Id.* at 848. This Court reasoned that the complaint's "expres[s] exclu[sion]" of PFAS contamination from military product would not alone suffice to defeat removal because "then a factfinder would need to apportion the contamination" stemming from military and non-military products in assessing the manufacturer's government contractor defense. *Id.* The Court affirmed the district court's decision to remand the case only because the State *also* "clearly and unequivocally conceded at oral argument that it would not seek relief" with respect to areas where contamination was mixed—*i.e.*, areas containing compounds from both non-governmental and governmental facilities. *Id.* at 849. Under that additional concession, "[i]f even a morsel of contamination" was from the governmental facilities, "the State's recovery is barred." *Id.*

Accordingly, in the Fourth Circuit's materially indistinguishable case against the same manufacturer where the plaintiffs refused to make

the same additional concession, the court reversed the district court's re-
liance on the States' disclaimers as a basis for remanding to state court.
*3M Co.*, 130 F.4th at 389.  Like the *Raoul* court, the Fourth Circuit un-
derscored that the State's claims would require a factfinder to "apportion
how much of a given sample of PFAS contamination" came from military
as opposed to non-military products.  *Id.* at 391.  Unlike in *Raoul*, how-
ever, the States "did not . . . concede" that "even a morsel of contamina-
tion" from a governmental source would defeat recovery.  *Id.*  That fact
was dispositive:  Because "the States envision[ed] recovering for mixed
PFAS contamination from numerous geographic locations," "a factfinder
must, unlike in *Raoul*, still decide the important causation and allocation
questions."  *Id.* at 392.  And "those are merits questions that belong in
federal court."  *Id.*

**2.**  Plaintiff's disclaimer is ineffective here because it seeks simul-
taneously to recover on a theory of liability based on a single, indivisible
injury and also to disclaim part of that injury—the part attributable to
federally supervised work.  Plaintiff brought this case to recover for
harms that resulted from allegedly increased emissions from the con-
sumption and use of fossil fuels.  S.A. 30-33.  To sidestep removal,

63

Plaintiff purported to "disclai[m] injuries . . . arising from Defendant's provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." S.A. 34. But Defendants showed in their notice of removal that the non-commercial, specialized fossil fuels they supplied to the federal government resulted in emissions of the same greenhouse gases that Plaintiff complains of and that are commingled with and indistinguishable from other greenhouse gases in the atmosphere. *See* S.A. 290-91; *AEP*, 564 U.S. at 422 ("Greenhouse gases once emitted become well mixed in the atmosphere, . . . emissions in New Jersey may contribute no more to flooding in New York than emissions in China."). Plaintiff's disclaimer cannot and does not distinguish between Plaintiff's alleged harms that resulted from the greenhouse gases emitted by the non-commercial, specialized fossil fuels and those emitted by the commercial fossil fuels. In other words, Plaintiff's claimed harms and its disclaimed harms are "indivisible." *Express Scripts*, 119 F.4th at 189.

Unlike the plaintiff in *Raoul*, Plaintiff here does not contend that it is disclaiming all relief resulting from the "mixed" greenhouse gases. *See* 111 F.4th at 849. Nor could it. After all, greenhouse gas emissions are

64

the "singular source of [plaintiff's] harm," *City of New York*, 993 F.3d at 91, and such a disclaimer would leave nothing left of Plaintiff's claims*, see* S.A. 33 (stating that Defendants' alleged tortious conduct "drove fossil fuel consumption and . . . caused an . . . increase in [greenhouse gases] emissions and accelerated global warming"). No amount of "[a]rtful pleading" can "transform [plaintiff's] complaint into anything other than a suit over global greenhouse gas emissions." *City of New York*, 993 F.3d at 91.

Plaintiff's disclaimer is thus no different than the one this Court deemed ineffective in *Baker*. Like the plaintiffs in *Baker*, Plaintiff seeks to disclaim that its lawsuit imposes liability for specialized fossil fuels that Defendants manufactured "for the government." 962 F.3d at 945 n.3. And like the manufacturer in *Baker*, Defendants here "allege[]" that their specialized fossil fuels "resulted in" emissions "that contained" greenhouse gases. *Id.* These are the same greenhouse gases that Plaintiff "claim[s] harmed [it]." *Id.* Plaintiff "cannot have it both ways": either it can disclaim harms from greenhouse emissions from any origin and thus negate the Defendants' opportunity to raise their federal defenses, or it can seek to recover for those harms, in which case Plaintiff's claims

implicate Defendants' federal defenses and must be resolved in federal court. *See id.*

**3.** The district court's contrary rationales lack merit.

*First*, the district court reasoned that *Baker* is distinguishable because the disclaimer there purportedly "contradicted" the plaintiffs' "theory of liability," while here, the disclaimer appeared to be "'redundant' because the causes of action . . . do not go to the conduct carved out in the disclaimer." App. 9-10. But if *Baker* involved a contradiction, so does this case. In *Baker*, the plaintiffs' disclaimer was ineffective because the harms resulting from the commercial products—lead and arsenic contamination—were indistinguishable from the harms resulting from the military products. 962 F.3d at 945 n.3. But the same is true here: Plaintiff attempts to "both recover from [greenhouse gases emissions] but also disclaim government-controlled production of some of [those emissions]." App. 11.

*Second*, the district court reasoned that Plaintiff's disclaimer here did not contradict its theory of liability because Plaintiff's claims were related to "Defendants' alleged deceptive and misleading campaign," while the disclaimer concerned "provision of fossil fuels to the

government." App. 12. As explained above, however, the district court's narrow focus on the claims and "complained-of conduct"—rather than the "plaintiff's injuries"—turns on an illusory distinction. App. 21-22. The court's distinction between "claims" and "injuries" is artificial because a claim is "the set of operative facts that produce an assertable right in court *and create an entitlement to a remedy*." *Underly*, 78 F.4th at 352 (emphasis added); *see supra* 40-43. And Plaintiff's claims—including its claims for failure to warn, negligence, and nuisance—all require injury as an essential element of the claim. *See supra* 45-46. The only pleaded injury is one *from emissions* resulting from production and sale of fossil-fuel products by Defendants, which directly implicates acts they took under federal direction.

In holding otherwise, the district court failed to credit Defendants' theory of the case regarding the necessary link that greenhouse gas emissions from production activities—including activities directed by the federal government—play in Plaintiff's claims. App. 11(dismissing Defendants' theory as "untethered to the claims of Plaintiffs"); App. 23. As explained above, that directly contravenes this Court's admonition that in

assessing removal, the court must "credit only" *Defendants'* "theory" of the case. *Baker*, 962 F.3d at 947; *see supra* 19, 50.

Defendants' theory is at minimum a reasonable one. Defendants plausibly alleged that "Plaintiff's claims depend on Defendants' production, promotion and/or sale of oil and gas that create greenhouse gas emissions when combusted by end users." S.A. 222. They alleged that "Plaintiff's claims center on Defendants' worldwide 'extract[ion]' and sale of oil and natural gas that Plaintiff alleges has led to a 'substantial[]' 'increase[]' in '[f]ossil fuel emissions.'" S.A. 227 (quoting S.A. 31 (Compl.¶4)). And Defendants alleged that any "alleged misrepresentations matter for Plaintiff's tort claims only insofar as they purportedly led to a marginal increase in greenhouse gas emissions that allegedly have caused Plaintiff's harms." App. 227. Any such marginal increase, Defendants explained, must ultimately be separated from those emissions "attributable to Defendants' production of oil and gas under the direction of the federal government." S.A. 290-91. To assess damages, a factfinder would therefore be tasked with making difficult, indeed impossible, causation and allocation determinations about which emissions are attributable to Defendants' purported campaign of deception and which

indivisible emissions are attributable to Defendants' federally directed activities. Under *Baker*, those are merits questions "a federal court should decide." 962 F.3d at 944.

The district court refused to grapple with Defendants' theory of the case. By instead giving effect to Plaintiff's disclaimer, the district court wrongly denied Defendants a federal forum in which to raise their federal defenses.

## CONCLUSION

The Court should reverse the district court's remand order.

Dated: July 8, 2025

Respectfully submitted,

By: */s/ Theodore J. Boutrous, Jr.*
**GIBSON, DUNN & CRUTCHER LLP**
Theodore J. Boutrous, Jr.
William E. Thomson
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
tboutrous@gibsondunn.com
wthomson@gibsondunn.com

Joshua D. Dick
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
jdick@gibsondunn.com

Thomas G. Hungar
Lochlan F. Shelfer
1700 M St., N.W.
Washington, D.C. 20036
Telephone: (202) 887-3784
thungar@gibsondunn.com
lshelfer@gibsondunn.com

**RILEY SAFER HOLMES & CANCILA LLP**
Patricia Brown Holmes
Ronald S. Safer
Lauren E. Jaffe
Christopher L. Schaeffer
1 S. Dearborn St., Ste. 2200
Chicago, IL 60603
Telephone: (312) 471-8700
pholmes@rshc-law.com
rsafer@rshc-law.com
ljaffe@rshc-law.com
cschaeffer@rshc-law.com

70

**SUSMAN GODFREY L.L.P.**
Erica W. Harris
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
eharris@susmangodfrey.com

**STERN, KILCULLEN & RUFOLO, LLC**
Herbert J. Stern
Joel M. Silverstein
325 Columbia Turnpike, Suite 110
Florham Park, New Jersey 07932-0992
Telephone: (973) 535-1900
hstern@sgklaw.com
jsilverstein@sgklaw.com

*Attorneys for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc.*

By: */s/ Richard C. Pepperman II*
**SULLIVAN & CROMWELL LLP**
Richard C. Pepperman II*
125 Broad Street
New York, New York  10004
Telephone:  212.558.4000
peppermanr@sullcrom.com

Amanda Flug Davidoff
1700 New York Avenue, N.W.
Suite 700
Washington, D.C.  20006
Telephone:  202.956.7500
davidoffa@sullcrom.com

**ARNOLD & PORTER KAYE SCHOLER LLP**
Jonathan W. Hughes
3 Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
jonathan.hughes@arnoldporter.com

71

John D. Lombardo
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
john.lombardo@arnoldporter.com

Diana E. Reiter
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
diana.reiter@arnoldporter.com

**SCHARF BANKS MARMOR LLC**
Stephanie A. Scharf
George D. Sax
30 West Hubbard Street, Suite 500
Chicago, IL 60654
Telephone: (312) 662-6999
sscharf@scharfbanks.com
gsax@scharfbanks.com

*Attorneys for Defendants-Appellants BP p.l.c., BP America Inc., and BP Products North America Inc.*


By: */s/ Nicole C. Mueller*
**K&L GATES LLP**
Nicole C. Mueller*
Kenn Brotman
70 West Madison Street
Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
nicole.mueller@klgates.com
kenn.brotman@klgates.com

*Attorneys for Defendants-Appellants Shell plc, Shell USA, Inc., and Shell Oil Products Company LLC*

By: */s/ Kannon K. Shanmugam*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Kannon K. Shanmugam*
William T. Marks
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 223-7300
Email: kshanmugam@paulweiss.com
Email: wmarks@paulweiss.com

Daniel J. Toal
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
dtoal@paulweiss.com

**JOHNSON & BELL, LTD.**

H. Patrick Morris
David F. Fanning
33 W. Monroe St., Suite 2700
Chicago, IL  60603
Telephone: (312) 372-0770
morrisp@jbltd.com
fanningd@jbltd.com

*Attorneys for Defendants-Appellants Exxon Mobil Corporation and ExxonMobil Oil Corporation*

By: */s/ Brian D. Schmalzbach*

**MCGUIREWOODS LLP**

Brian D. Schmalzbach*
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

Patrick P. Clyder
77 West Wacker Drive
 Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 750-8668
pclyder@mcguirewoods.com

*Attorneys for Defendant-Appellant American Petroleum Institute*

By: */s/ Matthew T. Martens*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Matthew T. Martens *
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
matthew.martens@wilmerhale.com

Hallie B. Levin
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
hallie.levin@wilmerhale.com

Robert Kingsley Smith
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
robert.smith@wilmerhale.com

**MASSEY & GAIL LLP**
Suyash Agrawal
50 East Washington Street, Suite 400
Chicago, Illinois 60602
(312) 283-1590
sagrawal@masseygail.com

*Attorneys for Defendants-Appellants ConocoPhillips Company and ConocoPhillips*

74

By: <u>/s/ *Sean M. Berkowitz*</u>
**LATHAM & WATKINS LLP**
Sean M. Berkowitz*
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com

Nicole C. Valco
Katherine A. Rouse
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
nicole.valco@lw.com
katherine.rouse@lw.com

*Attorneys for Defendants-Appellants Phillips
66 and Phillips 66 Company*

75

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitations of Seventh Circuit Rule 32(c) because it contains 13,422 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a), as amended by Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.

July 8, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 30(d) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, counsel for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc. states that the attached Required Short Appendix and the Separate Appendix contain all materials required by Rule 30(a) and Rule 30(b) of the Circuit Rules.

Dated:  July 8, 2025                    */s/ Theodore J. Boutrous Jr.*
                                        Theodore J. Boutrous Jr.

# **REQUIRED SHORT APPENDIX**

**REQUIRED SHORT APPENDIX**

**Table of Contents**

Memorandum Opinion and Order ........................................................ App. 1

**ILL UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CITY OF CHICAGO,

        Plaintiff,

v.

BP P.L.C., *et al.*,

        Defendants.

No. 24-cv-02496

Judge Franklin U. Valderrama

---

**MEMORANDUM OPINION AND ORDER**

Climate change and its causes is one of the most divisive issues of our time. For some, the burning of fossil fuels is the primary cause of climate change. Municipalities in recent years have sought to hold fossil fuel companies liable for the costs associated with climate change. In this case, the City of Chicago (the City) sued oil companies BP P.L.C., BP America Inc., BP Products North America Inc., Chevron Corporation, Chevron U.S.A. Inc., ConocoPhillips Company, ConocoPhillips, Phillips 66 Company, Phillips 66, Exxon Mobil Corporation, ExxonMobil Oil Corporation, Shell Oil Products Company LLC, Shell PLC, Shell USA, Inc., and their primary trade organization, the American Petroleum Institute (collectively Defendants) in state court, alleging that they misrepresented and concealed information about their fossil fuel products in violation of numerous state laws and various state common laws. *See generally* R. 1-1, Compl.[1] Defendants removed the case to this Court

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

pursuant to 28 U.S.C. § 1442, 28 U.S.C. §§ 1331 and 1441(a). R. 1, NOR. The City moves to remand the case to state court. R. 66, Mot. Remand. For the reasons that follow, the Court grants the City's motion to remand.

## Background[2]

The City alleges that, for decades the fossil fuel industry has misled consumers and the public about climate change. Compl. ¶ 1. Major members of the fossil industry have known for decades that fossil fuels are the primary cause of climate change. *Id.* ¶ 2. The fossil fuel industry knew that, if unabated, climate change could result in catastrophic impacts, including droughts, floods, and severe weather events that would impose enormous harms on cities such as Chicago. *Id.* Rather than warn of these harms, Defendants "mounted a disinformation campaign beginning as early as the 1970s to discredit the burgeoning scientific consensus on climate change . . . ." *Id.* ¶ 6. Defendants "misrepresented and concealed the hazards of fossil fuel products to deceive consumers and the public about the consequences of everyday use of fossil fuel products . . . while knowing the dangers associated with them." *Id.* ¶ 9. Defendants' conduct "drove fossil fuel consumption and delayed the transition to a lower-carbon future." *Id*. This caused, from the City's perspective, "an enormous, foreseeable, and avoidable increase in anthropogenic GHG emissions and accelerated global warming, bringing devastating consequences to the City and its people." *Id*.

---

[2]In considering a motion to remand, the Court "assumes the truth of the operative complaint's allegations at the time of removal, but may also consider facts set forth in the notice of removal." *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 808 (N.D. Ill. 2021) (cleaned up).

**App. 2**

The City sued Defendants in state court asserting causes of action against all Defendants for: strict products liability, failure to warn (Count I); negligent products liability, failure to warn (Count II); negligence (Count III); public nuisance (Count IV); private nuisance (Count V); nuisance violations of MCC § 7-28-030 (Count VI); civil conspiracy (Count VII); unjust enrichment (Count VIII); consumer fraud in violation of MCC § 2-25-090 (count IX); misrepresentations in connection with sale or advertisement of merchandise in violation of MCC §§ 4-276-470, *et seq.* (Count X); and recovery of City costs in violation of MCC § 1-20-020 (Count XI). Compl. Defendants removed the case to this Court based upon 28 U.S.C. §§ 1331, 1441(a), and 1442. NOR. The City moves to remand the case back to state court, arguing that the Court lacks subject matter jurisdiction. The Court agrees.

## Legal Standard

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapatthah Servs., Inc.*, 545 U.S. 546, 552 (2005). A case may only be brought in federal court when such a cause of action arises under a federal question, 28 U.S.C. § 1331, or where there is diversity of citizenship and an amount-in-controversy exceeding $75,000, *id*. § 1332(a); *see Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437–38 (2019). A defendant may remove to federal court any action filed in state court that "could have been brought originally in federal court." 28 U.S.C. § 1441(a); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). "The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "Courts should interpret the

**App. 3**

removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

## Analysis

Defendants assert that the Court has subject matter jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1) and federal common law. However, the City argues, and the Court agrees, that Defendants have abandoned their contention that the Court has jurisdiction based on federal common law, as this argument is relegated to a footnote in their response.[3] *See* R. 87, Resp. at 2–3 n.2. *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) ("A party may waive an argument by presenting it only in an undeveloped footnote.") (citing *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013)); *see also Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at \*10 (N.D. Ill. July 26, 2016) ("Arguments in footnotes are typically waived."); J. Valderrama Standing Order, Memorandum of Law Requirements ("Generally, the Court will not consider substantive arguments contained in footnotes."). That is especially true where Defendants bear the burden of establishing federal jurisdiction—they have not met that burden based on the arguments included in their cursory footnote. Therefore, the Court limits its analysis to jurisdiction under the federal officer removal statute.

---

[3]Additionally, at oral argument held on February 5, 2025 (R. 112), counsel for the defense stated that the Court only needs to consider the federal officer removal, and need not consider removal pursuant to federal common law.

**App. 4**

The federal officer removal statute permits a defendant to remove to federal court a state court action, if the action is against "[t]he United States or an agency thereof" or a federal officer. 28 U.S.C. § 1442(a)(1); *Raoul v. 3M Co.*, 111 F. 4th 846, 848 (7th Cir. 2024). Federal officer removal is proper "when 'the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense.'" *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)). Generally, courts interpret removal statutes narrowly. *See Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007). Such is not the case, however, when it comes to the federal officer removal statute. In that case, courts construe the federal officer removal statute liberally, not strictly. *Betzner*, 910 F.3d at 1014.

The City argues that the case should be remanded to state court because Defendants do not satisfy the elements of the federal officer removal statute. Specifically, the City advances four arguments for remand: (1) the City does not seek any relief for injuries arising from Defendants' supplying specialized fuels to the federal government for military and national defense purposes; (2) Defendants were not acting under the direction or control of federal officers during any of the activities Defendants cite as grounds for removal; (3) the City does not seek to hold Defendants liable for any act that Defendants allegedly took at the behest of a federal officer; and (4) Defendants have not pled a colorable federal defense. R. 66-1, Memo. Remand at

**App. 5**

5–6. The City points out that eight courts of appeals have rejected Defendants' removal attempts in similar cases. *Id.* at 1.

Predictably, Defendants disagree, arguing that they have satisfied each element of the federal officer removal statute. Resp. According to Defendants, it matters not that other circuits have remanded similar cases based on similar arguments, since Seventh Circuit authority, and specifically *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) is binding on this Court and is dispositive. *Id.* at 2. Because many of Defendants' arguments are based on *Baker*, the Court briefly summarizes that case here and then addresses its applicability to specific arguments in its analysis.

In *Baker,* the plaintiffs, former residents of a housing complex, sued in state court several companies that manufactured industrial materials at a refinery that previously stood on the same land as the complex. The plaintiffs alleged that the defendants polluted the soil in and around their housing complex, exposing plaintiffs to hazardous substances like lead and arsenic. 962 F.3d at 939. The defendants removed the case to federal court under the federal officer removal statute, on the basis that the government directed the defendants or their predecessors to produce certain materials for the military, supervised the distribution of these goods, and controlled their ultimate usages. 962 F.3d at 939–41. The plaintiffs moved to remand the case to state court, which the district court granted, finding that the defendants acted under color of federal office for only a portion of the time covered by the plaintiffs' claims. 962 F.3d at 940.

**App. 6**

The Seventh Circuit reversed. The court explained that "where a private contractor helps the Government to produce an item that it needs, the assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Baker*, 962 F.3d at 942 (cleaned up).[4] The court found that the defendants conducted wartime operations under federal authority by producing chemicals that the government would have otherwise had to manufacture and because the government used the chemicals to conduct a war. *Id.* at 942–43. Thus, the defendants "acted under federal authority" when manufacturing those chemicals. *Id.* at 943.

The court then turned to whether the conduct alleged in the complaint related to "acts for or relating to" federal authority. That is, whether there was a causal connection between the charged conduct and asserted federal authority. *Baker*, 962 F.3d at 943. The court rejected the plaintiffs' contention that the defendants failed to show that their injuries were caused by the defendants' wartime production for the government because the plaintiffs mistakenly were demanding "an airtight case on the merits in order to show the required causal connection." *Id*. The court reminded that Supreme Court "jurisprudence teaches that the policy in favor of federal officer removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id*. (cleaned up). The court found that Congress, in amending the federal officer removal statute in 2011, "broadened federal officer removal to actions,

---

[4]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

**App. 7**

not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* (emphases in original) (cleaned up). Accordingly, the Seventh Circuit abandoned the "causal connection" test and "join[ed] all the courts of appeals that have replaced causation with connection and expressly adopt[ed] that standard as [its] own." *Id.* at 944. When viewed under that lens, the defendants did not need to allege that the complained-of-conduct itself was at the behest of a federal agency. *Id.* It is enough for the "acting under" test that the allegations are directed at the relationship between the defendant and the federal government. *Id.* at 945. The court concluded that the parties' dispute over whether the plaintiffs' injuries arose from products the defendants manufactured for the government was a causation question that federal courts can resolve. *Id.*

Keeping *Baker* in mind, the Court addresses each of the City's arguments below.

## I.     Disclaimer of Injuries

As a preliminary matter, the City argues that "[m]any of Defendants' removal arguments are irrelevant because the Complaint expressly 'disclaims injuries . . . arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes.'" Memo. Remand at 6 (quoting Compl. ¶ 11). That is, the Complaint, from the City's point of view, does not place Defendants' sales of specialized military fuels at issue. *Id.* Courts, asserts the City, grant motions to remand where the plaintiff expressly disclaims the claims upon which the federal officer removal was based. *Id.* (citing, *inter alia*,

**App. 8**

*Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015); *Reinbold v. Advanced Auto Parts, Inc.*, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018)).

Defendants counter that the City's disclaimer of injuries argument is foreclosed by *Baker*. Resp. at 27. As for *Kelleher* and *Reinbold*, those cases, from Defendants' perspective, are distinguishable as they pre-date *Baker*. *Id.* at 28. And, in a notice of supplemental authority, Defendants point to a more recent Seventh Circuit case, *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) and a First Circuit case that relied in part on *3M*, *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 192–93 (1st Cir. 2024). R. 97, Defs.' Suppl. Auth.

In *Baker*, in a footnote, the Seventh Circuit addressed and rejected the plaintiffs' purported disclaimer as it contradicted their theory of liability. 962 F.3d at 945 n.3. The plaintiffs purported to disclaim that their lawsuit was about one of the defendant's manufacture of Freon-12 for the government, but because the defendant alleged that its Freon-12 production resulted in waste streams containing lead and arsenic waste, two of the main toxins the plaintiffs claimed harmed them, the court found that the plaintiffs "could not have it both ways." *Id.* Put another way, the Seventh Circuit did not allow the plaintiffs to seek damages for certain types of pollution, while simultaneously disclaiming those same types of pollution for jurisdictional purposes.

In *3M*, like *Baker*, the plaintiffs alleged violations of several Illinois environmental statutes, as well as common law claims, against a company that

**App. 9**

produces numerous chemical products in its manufacturing operations. 111 F.4th at 849. The plaintiffs' suit was not premised on any misrepresentations made by the company. The Seventh Circuit agreed with the district court that the plaintiffs' disclaimer—that it would not seek relief against the company for mixed contamination, that is, contamination arising from private and government-contracted conduct—brought the disclaimer outside the scope of the disclaimer in *Baker*, and prevented the defendant from raising a colorable federal contractor defense. *Id*. The plaintiff in *Express Scripts* alleged that defendants "schemed to unlawfully inflate insulin prices through rebate negotiations and price setting." 119 F.4th at 179. Similar to the plaintiffs in *3M*, the plaintiff sought to evade federal jurisdiction by disclaiming any "relief relating to any federal program . . . or any contract related to a federal program." *Id*. at 189. However, the First Circuit found that it was impossible to divide the defendant's negotiations over rebates and prices over insulin between "federal and non-federal work to enforce the disclaimer," and thus, crediting the defendant's theory of the case, the disclaimer did not foreclose colorable federal defenses. *Id*. at 192–93.

Here, the City states in its Complaint that it "hereby disclaims injuries arising on federal property and those arising from Defendants' provisions of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes. [The City] seeks no recovery or relief attributable to these injuries." Compl. ¶ 11 n.6. The Court agrees with the City that neither *Baker*, *3M*, nor *Express Scripts* render the City's disclaimer ineffective. R. 93, Reply at 5–6; R. 99, Pl. Resp.

**App. 10**

Suppl. Auth. Unlike in *Baker*, where, as discussed above, there was a contradiction between the plaintiffs' attempt to both recover from lead and arsenic contamination but also disclaim government-controlled production of some of that contamination, here, there is no contradiction between the City's disclaimer and its deception-focused theory of liability. Reply at 5. Indeed, as counsel for the City acknowledged during oral argument, the City's disclaimer, to an extent, is "redundant" because the causes of action brought by the City do not go to the conduct carved out in the disclaimer. As the Third Circuit stated in *City of Hoboken v. Chevron Corp.* about a materially identical disclaimer, "the disclaimers are no ruse . . . [the plaintiffs] carve out a small island that would needlessly complicate their cases." 45 F.4th 699, 713 (3d Cir. 2022); *see also City of Annapolis, Maryland v. BP P.L.C.*, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022), *aff'd sub nom. Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024)).

Finally, Defendants are correct that the Court must credit a defendant's "reasonable" theory of the case. *Baker*, 962 F.3d at 947. The Supreme Court has stated that "federal officers 'should have the opportunity to present their version of the facts' on disputes at the heart of their federal service to a federal court." *Express Scripts*, 119 F.4th at 189 (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). However, a defendant cannot simply offer "*any* theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory," as doing so "would completely ignore the requirement that there must be a causal connection with the plaintiff's claims." *City & Cnty. of Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D.

**App. 11**

Haw. Feb. 12, 2021) *(Honolulu I)*, *aff'd*, 39 F.4th 1101 (9th Cir. 2022) (emphasis in original). As the City points out, the Seventh Circuit found that the plaintiff-State's disclaimer made the federal contractor defense "wholly irrelevant under the *State's* theory of recovery" in *3M*. Pl. Resp. Suppl. Auth. at 2 (citing *3M Co.*, 111 F.4th at 849 (emphasis added)). Here, the City's claims are based on Defendants' alleged deceptive and misleading campaign minimizing the dangers of fossil fuel consumption, so there is no contradiction with the City's disclaimer regarding Defendants' provision of fossil fuels to the government for military and national defense purposes.

Even if Defendants were correct that the City's disclaimer is invalid, however, the Court nonetheless agrees with the City that they fail to satisfy other requirements of federal officer removal, as discussed below.

## II.    Federal Officer Elements

Briefly, as stated above, federal officer removal is proper "when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Baker*, 962 F.3d at 941. Starting with the first element, the City does not contend that Defendants, all corporations, are not persons under § 1442(a). No matter, as the Court finds that Defendants easily satisfy the first element for federal officer removal. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (Congress did not exclude corporations as "persons" under § 1442(a)).

**App. 12**

Instead, the City maintains that Defendants do not satisfy the remaining elements for federal officer removal. The Court addresses each in turn.

### A. Acting Under Federal Officers

The second element, the "acting under" requirement, looks to the relationship between the defendant seeking to remove the case and the United States, its agencies, or its officers. *Roberts v. Smith & Wesson Brands, Inc.*, 2023 WL 6213654, at *5 (N.D. Ill. Sept. 25, 2023) (*Roberts I*), *aff'd,* 98 F.4th 810 (7th Cir. 2024). This element includes situations where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete. *Ruppel*, 701 F.3d at 1181. "Acting under" covers situations where defendants work "hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Id*. Similarly, this element is satisfied where the government enlists a private party in "'an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks.'" *Id*. (quoting *Watson*, 551 U.S. at 152 (emphases in original)). Defendants insist that they were "acting under" federal officers when they engaged in several activities, detailed briefly below.

First, Defendants contend that they acted under federal officers by repeatedly performing critical and necessary functions for the U.S. military to further national defense. NOR ¶ 22. More specifically, that they acted under federal officers when they produced aviation fuel gas or "avgas" and operated petroleum infrastructure, particularly during World War II and the Korean War. *Id.* ¶¶ 29, 31. Second, Defendants maintain that they "continue to produce and supply large quantities of

**App. 13**

highly specialized fuels that are required to conform to exact DOD specifications" to the military to this day. Resp. at 12; NOR ¶¶ 45–55. Third, Defendants contend that removal is appropriate because of the role of Standard Oil of California, a Chevron predecessor, in operating Elk Hills Reserve in California. NOR ¶ 59. The Elk Hills Reserve was a petroleum reserve created in 1912 intended to preserve oil in the ground for national emergencies. *Id.* ¶ 58. Standard Oil, note Defendants, operated the U.S. Navy's portion of the oil reserve according to an Operating Agreement which specified that Standard Oil was "*in the employ of the Navy Department* and [was] responsible to the Secretary thereof." *Id.* ¶ 70 (emphasis in NOR). Standard Oil, insist Defendants, operated Elk Hills under the "subjection, guidance, or control" of the Navy. *Id.* ¶ 72 (quoting *Watson*, 551 U.S. at 151).

Fourth, Defendants assert that they acted under federal officers "by producing oil and gas pursuant to the federal mineral exploitation and production regime created by the Outer Continental Shelf Lands Act." NOR ¶¶ 82–109. The federal government, according to Defendants, "retained the power to direct how oil and gas resources would be extracted and sold from the [Outer Continental Shelf (OCS)]." *Id.* ¶ 82. Fifth, and finally, in response to the 1970's oil embargoes, Congress created the Strategic Petroleum Reserve to reduce the impact of disruptions in supplies of petroleum products. *Id.* ¶ 117. Defendants insist that they acted under federal officers by supplying federally owned oil for gas and managing the Strategic Petroleum Reserve for the government. *Id.* ¶¶ 119–20. The federal government,

**App. 14**

assert Defendants, required certain Defendants or their predecessors to pay royalties in kind, which the government used for its strategic stockpile. *Id.* ¶ 120.

The City takes issue with each of Defendants' activities for which they claim they acted under federal authority, raising four primary arguments that pertain to some or all of the activities. The Court addresses each in turn.

As an initial matter, the City contends—and the Court agrees, as explained above—that the City's disclaimer excludes injuries caused by Defendants' production of avgas during World War II and the Korean War, as well as sales of specialized, non-commercial fuels to the military at any time. Memo. Remand at 6–8; Reply at 5. So too with Defendants' interactions with the Strategic Petroleum Reserve. Memo. Remand at 13 (citing *Hoboken*, 45 F.4th at 713).

The City also argues that none of the above-listed activities demonstrate federal control because they were not closely controlled by the government, but rather demonstrate "the story of a narrow business relationship," and which other courts, including several appellate courts, have found to be insufficient to show the requisite "subjection, guidance, or control" required for the "acting under" element. Memo. Remand at 11–12; Reply at 14–15 (citing, *inter alia*, *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 235–38 (4th Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1109 (9th Cir. 2022) *(Honolulu II)*); *see also* Memo. Remand at 9 (citing *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 757 (9th Cir. 2022) ("a person is not 'acting under' a federal officer when the person enters into an arm's-length business arrangement with the federal government or supplies it with

**App. 15**

widely available commercial products or services."); *Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 814 (7th Cir. 2024) (*Roberts II*) ("[A] business *might be* 'acting under' a federal officer if the officer commanded it or contracted with it to produce *a particular item in a specified way*.") (emphasis in brief); Memo. Remand at 9–16. Additionally, argues the City, Defendants simply complied with federal laws, rules, and regulations when they executed the listed activities, which is insufficient to constitute acting under a federal officer. Memo. Remand at 8–9 (citing, *inter alia*, *Kelly v. Martin & Bayley, Inc.*, 503 F.3d 584, 588 (7th Cir. 2007)); *id.* at 9–16. In support of its contentions that Defendants' activities are merely arms-length transactions or constitute compliance with federal rules, the City cites to numerous out-of-Circuit cases that have rejected similar arguments and exhibits raised by Defendants. *See, e.g.*, *id.* at 11–12; Reply at 14–15 (citing, *inter alia*, *Mayor & City Council of Baltimore*, 31 F.4th at 235–38; *Honolulu II*, 39 F.4th at 1109).

Defendants retort that under *Baker*, their activities satisfy the acting-under standard. That is, Defendants' fuel production and sales activities were done according to "detailed specifications," under federal "compulsion," and subject to "continuous federal supervision"—which, Defendants argue, suffices to meet the acting-under standard under *Baker*. Resp. at 6–7 (quoting *Baker*, 962 F.3d at 943). Additionally, posit Defendants, much of the activity, including their supply of specialized fuel to meet Department of Defense demands, would have had to be performed by the Government in the absence of the contracts with Defendants. *Id.* at 13 (citing *Baker*, 962 F.3d at 942). As discussed above, the Court finds that the City's

**App. 16**

disclaimer forecloses Defendants' reliance on the provision of specialized fuels to the military. If the disclaimer were not effective, however, the Court finds that Defendants' argument has merit.

The City's reliance on out-of-Circuit cases is insufficient on this point, as the Court agrees with Defendants that the Seventh Circuit adopted a broader interpretation of the "acting under" standard in *Baker* than other Circuits have applied. For example, the Fourth Circuit in *Mayor & City Council of Baltimore v. BP P.L.C.*, rejected the defendants' argument that they acted under federal officials when it "helped the Government to produce an item that it needs" by selling fuel for resale on Navy bases, as "such logic would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer." 31 F.4th at 230 (citing *Watson*, 551 U.S. at 153). As Defendants point out, however, *Baker*'s holding is more encompassing, in that it found that the defendants' sale to the government of materials it needed for war efforts *was* sufficient to satisfy the acting under requirement. Resp. at 16 (citing *Baker*, 962, F.3d at 942). The City's citation to *Roberts* does not change that analysis. Reply at 14. In *Roberts*, the Seventh Circuit cited to *Watson* in support of the proposition that "a business might be 'acting under' a federal officer if the officer commanded it or contracted with it to produce a particular item in a specified way." 98 F.4th at 814. But the defendant in *Roberts* did not contend that the government directed it to make a weapon at all, let alone for any wartime purpose.

**App. 17**

No matter, because the Court agrees with the City that, not only does the disclaimer foreclose the above argument, but also the timing of certain activities and the relationship of the activities to the crux of the City's claims do not support a finding that Defendants were acting under a federal official. Specifically, the City argues that Defendants' activities during World War II and the Korean War cannot justify federal officer removal because Defendants' activities during those wars predate the deceptive conduct alleged in the Complaint. Memo. Remand at 14 (citing *Anne Arundel*, 94 F.4th at 349; *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 144 (2d Cir. 2023)). Similarly, the City posits that Standard Oil of California's status as the operator of the Elk Hills petroleum reserve does not preclude remand, as it "precedes and bears no relationship to Defendants' charged conduct." Reply at 15. Defendants respond that the fact that these activities pre-date the alleged disinformation campaign, is of no moment because "the emissions from these wartime periods are indistinguishable from and cumulative with all later emissions." Resp. at 12.

The City correctly points out that several circuit courts have rejected similar arguments—and declarations cited in support—raised by Defendants. *See* Reply at 10. As the United States Court of Appeals for the District of Columbia recently noted in a similar case:

> But the District does not allege the Companies acted unlawfully until the late 1980s, and none of the alleged misrepresentations bears any relationship to the sale or production of military fuels in the mid-20th century. There is simply no relationship between actions taken by the Companies' predecessors in the

**App. 18**

1940s and 1950s and the allegedly deceptive statements made by the Companies about climate change since 1980.

*D.C. v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023); *see also Anne Arundel Cnty.*, 94 F.4th at 349 (same).

The Court finds this reasoning persuasive. Here, the City's Complaint does not take aim at Defendants' *production* of fossil fuels during World War II or the Korean War for that matter. Instead, the Complaint takes issue with Defendants' alleged *campaign of deception and misrepresentation* in the 1980s of the dangers of fossil fuel vis-à-vis the environment. The fact that Defendants acted under the federal government by operating and managing government-owned and/or government-funded petroleum production facilities is of no import. Unlike the claims in *Baker*, this case is about Defendants' alleged misrepresentations; not their work with or on behalf of the government that led to or contributed to fossil fuel emissions.

So too with Defendants' more recent activities, involving the "extraction of gasoline or operation of energy infrastructure, either under federal regulations or via commercial relationships with the federal government." *Anne Arundel*, 94 F.4th at 349. As discussed in more detail below, the Court agrees with the Fourth Circuit's analysis that Defendants' activities involving "fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products," cannot support the acting under element because "those activities fail to show the required relatedness," and the defendants did "not argue the federal government required them to market or describe their products in a certain way." *Id.* Similarly, Defendants in this case do not argue that the government required them to market their products

**App. 19**

in any specific way. For the foregoing reasons, the Court agrees with the City that Defendants fail to satisfy the acting under element of federal officer removal.

### B. Relation to Charged Conduct to Acting under Color of Federal Authority

The third element requires that the gravamen of the claim against Defendants occur while they acted under color of federal authority. "[T]his requirement is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a causal connection between the charged conduct and asserted official authority." *Ruppel*, 701 F.3d at 1181 (cleaned up).

Defendants argue that the City's claims are "for or relating to" acts Defendants performed under color of office. NOR ¶ 128. To satisfy this element, assert Defendants, there need only be a "connection or association with acts under federal office." *Id.* (quoting *Baker*, 962 F.3d at 943) (cleaned up). It is not necessary, argue Defendants, that the complained-of conduct itself was at the behest of a federal agency. *Id.* ¶ 130; Resp. at 21. In *Baker*, point out Defendants, the Seventh Circuit held that it was "enough for the present purposes of removal that *at least some* of the pollution arose from the federal acts." Resp. at 21 (quoting 962 F.3d at 945) (emphasis in brief). From Defendants' perspective, here, as in *Baker*, the only environmental harms are those caused by emissions arising from acts undertaken at the direction of federal officers. *Id.* Along the same lines, posit Defendants, "[p]roduction and consumption are integral components of [the City's] alleged causal theory," such as the City's allegations that Defendants' extraction and sale of fossil fuel products have

**App. 20**

led to an increase in greenhouse gas emissions, which have caused devastating climate change impacts to the City. *Id.* at 22 (citing Compl. ¶¶ 1, 4). The Court cannot, argue Defendants, allow the City to evade federal jurisdiction by focusing just on Defendants' alleged deception (the complained-of conduct), and not on the production, sale, and consumption of oil and gas producing emissions (the alleged mechanism of injury), as doing so would improperly "elevate form over substance and allow parties to evade" federal court. *Id.* at 23 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) and citing *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007); *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021)). At bottom, the Court must examine the "gravamen" of the Complaint and set "aside any attempts at artful pleading." *Id.* at 22 (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 169 (2017) and citing *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015)).

The City counters that Defendants misread *Baker*'s statement that federal-officer removal does not require "that the complained-of conduct *itself* was at the behest of a federal agency." Reply at 7 (quoting *Baker,* 962 F.3d at 944). The way the City sees it, this statement is simply another way to say that federal-officer removal does not require a strict "causal connection" between a defendant's charged conduct and federal authority, but rather a non-causal "connection or association" will suffice. *Id.* Indeed, the Seventh Circuit made clear that the focus remains on whether there is a "connection or association" between the charged conduct (i.e., "the challenged

act") and federal authority. *Id.* (citing *Baker*, 962 F.3d at 944–45 (quotations omitted)).

As for the other cases cited by Defendants, the City argues that they are inapposite. In *Frye*, the Supreme Court analyzed whether the plaintiff's claims were subject to the Individuals with Disabilities Education Act's administrative exhaustion requirement, and in that context, "explained that 'the gravamen of a complaint' was defined by the 'conduct that violated' the law, not by the 'nature' of a plaintiff's injuries." Resp. at 7–8 (quoting 580 U.S. at 169–71, 174). And in *Sachs*, the Supreme Court construed an exception to the Foreign Sovereign Immunities Act, not the federal-officer removal statute, and did not address the phrase "for or relating to." *Id.* at 7 (citing 577 U.S. at 35). None of the other cases cited by Defendants are even close to being on-point, as none address federal-officer removal. *See id.* at 8. As for Defendants' contention that the City engages in "artful pleading," the City posits that that exception to the well-pleaded complaint rule pertains only to federal-question jurisdiction, which Defendants have waived. *Id.* at 8 (citing *Burda v. M. Ecker Co.*, 954 F.2d 434, 440 (7th Cir. 1992); *Hoboken*, 45 F.4th at 713 ("Artful pleading disguises federal claims as state ones. Yet here, there are no federal claims to disguise.")).

The Court agrees with the City that *Baker* does not stand for the proposition that federal officer removal may be based on a relation to a plaintiff's injuries rather than to the claims themselves. So, as stated above in relation to the City's disclaimer, the Court agrees with the City and out-of-Circuit cases addressing substantially

**App. 22**

similar claims and arguments that the nexus element does not authorize Defendants to rewrite the City's claims into something they are not. Resp. at 9 (citing *Honolulu I*, 2021 WL 531237, at *7 ("[I]f Defendants had it their way, they could assert any theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory"); *Delaware v. BP Am., Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022) (rejecting Defendants' "misunderst[anding]" that "the Court must credit their 'theory of the case'")). Accordingly, the Court finds that the charged conduct is insufficiently connected to any acts taken by Defendants under federal authority to support federal officer removal.

### C. Colorable Defense

The fourth and final element for federal officer removal is the existence of a colorable defense. Defendants must establish that they have a "colorable" federal defense to the City's claims. This requirement "not only satisfies Article III jurisdiction, [but] also encapsulates Congress's desire to have federal defenses litigated in federal forums." *Ruppel*, 701 F.3d at 1182. Defendants assert that they have several colorable defenses to the City's claims: the government contractor defense, preemption, federal immunity, NOR ¶ 141, as well as the Interstate and Foreign Commerce Clause, the Supremacy Clause, the Due Process Clause, and the foreign affairs doctrine, *id.* ¶ 144. The City argues that none have merit.

#### 1. Government Contractor Defense

As the Seventh Circuit explained in *Baker*, "[t]he government contractor defense, developed in *Boyle v. United Technologies Corp.*, [487 U.S. 500, 511–12, 108

**App. 23**

S.Ct. 2510, 101 L.Ed.2d 442 (1988),] immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." *Baker*, 962 F.3d at 946–47 (cleaned up). The "defense applies where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment's dangers that were unknown to the government." *Id*. (cleaned up).

Defendants maintain that they produced oil and gas at the direction of the federal government and thus have a colorable argument that they are immune from liability for any alleged injuries resulting therefrom. NOR ¶ 142. *Baker*, from Defendants' perspective, demonstrates that the government contractor defense is applicable here. *Id*. ¶ 143.

The City contends that, not only has it disclaimed injuries relating to the military sales of specialized fuels, but also the federal contractor defense has nothing to do with the Complaint. Resp. at 19; Reply at 17–18. For the same reasons discussed above, the Court agrees that the federal contractor defense is unavailable to Defendants based on the City's disclaimer, and importantly, the fact that Defendants do not allege that the government ordered their allegedly deceptive acts. *See Honolulu II*, 39 F. 4th at 1110 (rejecting government contractor defense as there was no allegation that government ordered deceptive conduct).

**App. 24**

### 2. Remaining Defenses

As for Defendants' remaining alleged defenses, the City argues that these defenses are inapplicable as "they have nothing to do with the actions Defendants claim they took under federal direction." Memo. Remand at 19. Again, the Court agrees. As the City correctly notes, the defenses do not arise from any official duties.

## III.    Request for Fees

The City requests that the Court award it fees and costs under 28 U.S.C. § 1447(c), due to Defendants' "objectively baseless removal arguments" that have been soundly rejected by myriad courts, including courts of appeal in eight different circuits. Memo. Remand at 3, 30. Predictably, Defendants disagree, taking the position that they raise "numerous meritorious grounds for removal." Resp. at 29. True, as the City points out, most of Defendants' arguments and exhibits are recycled and have been rejected by every out-of-Circuit court to consider them. Still, the Court cannot say, in the face of *Baker*, that Defendants "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Although the Court finds *Baker* distinguishable in relevant part, and therefore disagrees with Defendants that it precludes removal, Defendants' arguments based on *Baker* were reasonable, such that the Court finds that an award of attorneys' fees would be improper. *See id.*

## Conclusion

For the foregoing reasons, the Court grants the City's Motion to Remand [66] in part and denies it in part. It grants it in part, in that the case is remanded and the

**App. 25**

Clerk's Office is directed to remand this case to the Circuit Court of Cook County, Illinois immediately. It denies it in part, in that the Court declines to award the City fees and expenses.

Date: 5/16/2025

United States District Judge
Franklin U. Valderrama

**App. 26**