No. 25-1916

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | Appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellee, | ) | Northern District of Illinois |
| | ) | |
| v. | ) | |
| | ) | No. 1:24-cv-02496 |
| BP P.L.C., *et al.*, | ) | |
| | ) | The Honorable |
| Defendants-Appellants. | ) | FRANKLIN U. |
| | ) | VALDERRAMA, |
| | ) | Judge Presiding. |

**APPELLEE'S RESPONSE TO APPELLANTS' MOTION TO STAY
EXECUTION OF REMAND ORDER PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT ........................................................................................4

I.    Defendants Are Not Entitled to a Discretionary Stay.....................5

    A.    Defendants Are Not Likely to Succeed on the Merits. ...........6

    B.    Defendants Will Not Suffer Irreparable Injury
        Absent a Stay. ...................................................................13

    C.    A Stay Would Substantially Harm the City and
        Contravene the Public Interest. ............................................16

II.   Defendants Are Not Entitled to an Automatic Stay......................18

CONCLUSION ...................................................................................24

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Anne Arundel Cty. v. BP P.L.C.*,
   94 F.4th 343 (4th Cir. 2024) ............................................................ 11, 12

*Att'y Gen. v. Dow Chem. Co.*,
   2024 WL 3361395 (D.N.J. July 9, 2024) ............................. 19, 20, 21, 23

*Baker v. Atlantic Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ............................................................. 8, 9

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
   423 F. Supp. 3d 1066 (D. Colo. 2019) ................................................ 5, 15

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
   25 F.4th 1238 (10th Cir. 2022) ............................................................ 11

*Betzner v. Boeing Co.*,
   910 F.3d 1010 (7th Cir. 2018) ............................................................... 7

*BP P.L.C. v. Mayor and City Council of Baltimore*,
   140 S. Ct. 449 (Oct. 22, 2019) ............................................................... 5

*City & Cty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) .............................................................. 11

*City & Cty. of Honolulu v. Sunoco LP*,
   2021 WL 839439 (D. Haw. Mar. 5, 2021) ............................................... 5

*City of Annapolis v. BP P.L.C.*,
   2022 WL 4548226 (D. Md. Sep. 29, 2022) ............................................ 17

*City of Charleston v. Brabham Oil Co., Inc.*,
   2023 WL 4361234 (D.S.C. July 6, 2023) ............................... 5, 14, 16, 17

*City of Charleston v. Brabham Oil Co.*,
   2023 WL 11867279 (D.S.C. July 5, 2023) ............................................. 11

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ............................................................ 11, 13

*City of Martinsville v. Express Scripts, Inc.*,
  128 F.4th 265 (4th Cir. 2025) ......................................................... 18, 23

*City of New York v. Exxon Mobil Corp. ("City of New York II")*,
  733 F. Supp. 3d 296 (S.D.N.Y. 2024) .................................................. 11

*City of Oakland v. BP PLC*,
  969 F.3d 895 (9th Cir. 2020) ................................................................ 11

*City of Oakland v. BP PLC*,
  2023 WL 8179286 (9th Cir. Nov. 27, 2023) ......................................... 11

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ....................................................................... 18, 20

*Connecticut v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023) ..................................................... 11, 12, 13

*Cty. of Multnomah v. Exxon Mobil Corp.*,
  2024 WL 1991554 (D. Or. Apr. 10, 2024) ........................................... 11

*Cty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ................................................................ 11

*Delaware ex rel. Jennings v. BP Am., Inc.*,
  2022 WL 605822 (D. Del. Feb. 8, 2022) .............................................. 12

*District of Columbia v. Exxon Mobil Corp.*,
  89 F.4th 144 (D.C. Cir. 2023) .............................................................. 11

*Doe v. Gunderson Lutheran Health Sys., Inc.*,
  2024 WL 1270798 (W.D. Wis. March 26, 2024) ................................... 19

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
  15 F.4th 70, 80 (1st Cir. 2021) ............................................................ 14

*Gov't of P.R. v. Express Scripts, Inc.*,
  119 F.4th 174 (1st Cir. 2024) .............................................................. 19

iii

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ..................................................................21

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ..................................................................6

*Hinrichs v. Bosma*,
440 F.3d 393 (7th Cir. 2006) ...............................................12

*Hojnacki v. Klein-Acosta*,
285 F.3d 544 (7th Cir. 2002) ...............................................18

*Massachusetts v. Exxon Mobil Corp.*,
462 F. Supp. 3d 31 (D. Mass. 2020) ...................................11

*Mayor & City Council of Baltimore v. BP P.L.C.*,
31 F.4th 178 (4th Cir. 2022)..................................................11

*Mayor & City Council of Baltimore v. BP P.L.C.*,
2019 WL 3464667 (D. Md. July 31, 2019) ......................5, 15

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023)...........................................11, 12

*Minnesota v. Am. Petroleum Inst.*,
2021 WL 3711072 (D. Minn. Aug. 20, 2021) ......................12

*N. Mississippi Med. Ctr., Inc. v. Quartiz Techs.*,
2024 WL 2262684 (N.D. Miss. May 17, 2024) ....................19

*New Hampshire v. 3M Co.*,
132 F.4th 556 (1st Cir. 2025) ...............................................13

*New Jersey v. Exxon Mobil Corp.*,
2023 WL 4086353 (D.N.J. June 20, 2023)............................11

*Nken v. Holder*,
556 U.S. 418 (2009) .........................................6, 13, 16, 23

*Northrop Grumman Technology Services, Inc. v. DynCorp Int'l LLC*,
2016 WL 3346349 (E.D. Va. June 16, 2016)........................14

*People of the State of California v. Express Scripts, Inc.*,
139 F.4th 763 (9th Cir. 2025) ...................................................... *passim*

*Plaquemines Par. v. Chevron United States, Inc.*,
84 F.4th 362 (5th Cir. 2023) ................................................. 19

*Proto Gage, Inc. v. Fed. Ins. Co.*,
2023 WL 9112923 (E.D. Mich. Dec. 28, 2023) ..................................... 19

*Rhode Island v. Shell Oil Prods. Co., L.L.C.*,
35 F.4th 44 (1st Cir. 2022) ............................................. 11, 12

*Roberts v. Smith & Wesson Brands, Inc.*,
2023 WL 8701093 (N.D. Ill. Dec. 15, 2023) ......................................... 14

*Vermont v. Exxon Mobil Corp.*,
2024 WL 446086 (D. Vt. Feb. 6, 2024) .................................................. 11

*Vialva v. Watson*,
975 F.3d 664 (7th Cir. 2020) ............................................... 7

*Westchester Cty. v. Mylan Pharms., Inc.*,
737 F. Supp. 3d 214 (S.D.N.Y. 2024) ........................................ 19, 21

*Winston–Salem/Forsyth County Bd. of Educ. v. Scott*,
404 U.S. 1221 (1971) ......................................................5

**Statutes**

28 U.S.C. § 1292(a)(1) ........................................................... 19

28 U.S.C. § 1442 ....................................................................3

**Rules**

Federal Rule of Appellate Procedure 32(a)(5) ..........................................26

Federal Rule of Appellate Procedure 32(a)(6) ..........................................26

Federal Rule of Appellate Procedure 32(a)(7)(B) ....................................26

## INTRODUCTION

Defendants ask this court to take the "extraordinary" step of halting state court proceedings in a case of significant importance to the residents of the City of Chicago.  For decades, defendants – key fossil fuel industry players – knew of the direct link between fossil fuel use and climate change yet concealed and denied that knowledge, resulting in the climate-related harms the City is now facing.  In February 2024, the City filed state-law claims in the Circuit Court of Cook County, seeking to hold defendants liable for this deception campaign.  Defendants removed the case to federal court under the federal officer removal statute, and the district court, after extensive briefing and argument, granted the City's motion to remand to state court.  The district court also found that none of the factors regarding a stay weighed in defendants' favor.

Defendants now ask this court to accept the very same removal arguments the district court twice rejected—and which eight other courts of appeals have also rejected.  Here, not a single one of the City's claims – which challenge defendants' misrepresentations to the public about their consumer products – even remotely implicates the exploration and production activities carried out by defendants for the federal

1

government for national defense, so there was no basis for removal under the federal officer removal statute. For this reason, Defendants are not likely to succeed on the merits. Staying the proceedings pending this appeal will frustrate the City's efforts to obtain much-needed relief for the public. Defendants' motion should be denied.

## BACKGROUND

Plaintiff-Appellee the City of Chicago ("City") filed this state-law action in the Circuit Court of Cook County in February 2024 alleging defendants were aware "of the negative impacts of fossil fuel consumption" and its "catastrophic" impacts to the climate, R. 1-1 ¶ 5; "mounted a disinformation campaign" to "create doubt in the minds of consumers, the media, teachers, and the public about the reality and consequences of burning fossil fuels," R. 1-1 ¶ 6; and "deceived customers and the public by misrepresenting the climate impacts of their products sold in the City," R. 1-1 ¶ 7. The City further alleged that defendants "have profited from the deception campaign designed to drive profits at the expense of Chicagoans," and this deception "has resulted in tremendous harm to people, property, and the environment in the City." R. 1-1 ¶ 11.

The City brought claims for state-law strict liability, negligent products liability, negligence, public and private nuisance, civil conspiracy, and unjust enrichment, premised on defendants' failures to warn consumers and the public about the harms their fossil fuel products pose to the health and safety of the public and the environment, R. 1-1 ¶¶ 258–351, 357–381; violations of the Municipal Code of Chicago, including provisions prohibiting public and private nuisance, consumer fraud, and misrepresentation in connection with the sale or advertisement of merchandise, all premised on defendants' failure to warn, R. 1-1 ¶¶ 352–356, 382–409; and recovery of costs incurred by the City due to defendants' violations of the state and local laws alleged above, R. 1-1 ¶¶ 410–16. The City expressly "disclaim[ed] injuries arising on federal property and those arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." R. 1-1 ¶ 11 n.6. Defendants removed the action to federal court, pursuant to the federal officer removal statute, 28 U.S.C. § 1442. R. 1.[1] The City filed a motion

---

[1] Defendants also stated that removal was proper because the action "arises under federal law," R. 1 at 2, but they explicitly abandoned that argument, R. 113 at 4 n.3.

to remand, R. 66, which the district court granted, R. 113 at 25–26. The court first concluded that the City's disclaimer of injuries arising from defendants' provision of fossil fuels to the government for military and national defense purposes is valid and that remand is proper on that basis alone. R. 113 at 8–12. The court then concluded that, in any event, defendants failed to satisfy any of the other requirements for federal officer removal, because the City's claims, which "are based on Defendants' alleged deceptive and misleading campaign minimizing the dangers of fossil fuel consumption," R. 113 at 12, have nothing to do with any actions defendants took on behalf of the federal government, R. 113 at 13–24.

Defendants appealed, R. 123, and moved for a stay pending appeal in the district court, R. 124. The district court denied a stay pending appeal but allowed a temporary stay pending this court's review of the present motion. R. 134. Defendants moved for a stay in this court. Dkt. 48-1 ("Motion").

## ARGUMENT

Defendants ask this court for a discretionary stay and, in the alternative, an automatic stay. They are not entitled to either. Courts

4

across the country have denied Defendants' motions for stays pending

appeals of remand orders in similar climate deception cases, and this

Court should do the same.[2]

## I.    Defendants Are Not Entitled to a Discretionary Stay.

Defendants bear a "heavy burden" to justify the "extraordinary"

remedy of a stay pending appeal.  *Winston–Salem/Forsyth County Bd. of

Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers).  A

stay pending appeal "is not a matter of right" but "is instead 'an exercise

of judicial discretion,'" with the "party requesting a stay bear[ing] the

---

[2] *See BP P.L.C. v. Mayor and City Council of Baltimore*, 140 S. Ct. 449 (Oct. 22, 2019); *City & Cty. of Honolulu v. Sunoco LP et al.*, No. 21 15313, Doc. 144 (9th Cir. Mar. 13, 2021); *Bd. of Cty. Commissioners of Boulder County v. Suncor Energy, Inc.*, No. 19-1330, Doc. No. 10687694 (10th Cir. Oct. 17, 2019); *Mayor and City Council of Baltimore v. BP P.L.C.*, No. 19-1644, Doc No. 116 (4th Cir. Oct. 1, 2019); *State of Rhode Island v. Shell Oil Products Company, LLC*, No. 19-1818, Doc. No. 00117499123 (1st Cir. Oct. 7, 2019); *City of Charleston v. Brabham Oil Co., Inc.*, No. 2:20-CV-03579, 2023 WL 4361234 (D.S.C. July 6, 2023); *City & Cty. of Honolulu v. Sunoco LP*, No. 20-CV-00163-DKW-RT, 2021 WL 839439, at *1 (D. Haw. Mar. 5, 2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, No. CV-ELH-18-2357, 2019 WL 3464667 (D. Md. July 31, 2019); *State of Rhode Island v. Shell Oil Prods. Co., LLC*, No. 1:18-cv-395-WES-LDA (D.R.I. Sept. 10, 2019) ("TEXT ORDER granting Motion to Remand to State Court; denying Motion to Stay: The Court DENIES Defendants' Motion to Stay Remand Order Pending Appeal."); *Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066 (D. Colo. 2019).

burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 423, 433–34 (2009) (citation omitted). A stay "is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 427. These factors ensure no relief is ordered unless, at a minimum, the movant is sufficiently likely to prevail and will be irretrievably harmed if the court waits until the appeal's conclusion to act. *See id.* at 434.

In considering whether to grant a stay pending appeal, the Court must consider "four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434. Defendants fail to satisfy any of the four factors.

## A.    Defendants Are Not Likely to Succeed on the Merits.

To satisfy the first "critical" stay factor, "[a] person who seeks a stay pending appeal must establish a material probability of success on the

merits," and "[a] better-than-negligible chance will not do." *Vialva v. Watson*, 975 F.3d 664, 666 (7th Cir. 2020).

To remove a case to federal court under the federal officer removal statute, a defendant must show that it: "(1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018). The first element is undisputed, but as the district court found, defendants cannot satisfy the remaining elements because none of the City's claims implicate any of the activities carried out by defendants for the federal government.

The City's claims do not seek to hold defendants liable for harms resulting from defendants' production of aviation gas and operation of petroleum infrastructure during World War II and the Korean War; production and supply of large quantities of specialized fuels for the military; operation of a petroleum reserve for the U.S. Navy; production of oil and gas pursuant to the Outer Continental Shelf Lands Act; and management of the federal government's Strategic Petroleum Reserve. R. 113 at 13–15. In fact, the City does not challenge defendants' fossil

fuel exploration and production at all. The City challenges the harms caused by defendants' "disinformation campaign," which began in the 1970s. R. 1-1 ¶ 6. Defendants do not claim that the federal government directed them to engage in any deceptive conduct.

Moreover, if there remains any doubt about the scope of the lawsuit, the City expressly disclaimed "injuries arising on federal property and those arising from defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military or national defense purposes." R. 1-1 ¶ 11 n.6.

Defendants, for their part, rely almost exclusively on *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), but that case is inapposite. Contrary to defendants' contention, Motion at 14, *Baker* did not involve "failure-to-warn" claims, like those at issue here. The plaintiffs in *Baker* sought to hold defendants liable for operating facilities that contaminated the plaintiffs' properties with lead, arsenic, and other toxic substances. 962 F.3d at 939. Because at least some of these operations occurred at the federal government's behest, there was a question of fact as to whether any of the contamination that caused the plaintiffs injuries occurred "under color of federal office." *Id.* at 945.

Here, there is no such question of fact. Defendants do not assert that the federal government played *any* role in their misrepresentations to the public.

Nor does *Baker* invalidate the City's disclaimer, as defendants contend. Motion at 13–14. In *Baker*, the plaintiffs disclaimed any injuries arising from the manufacture of Freon-12 for the federal government, but because Freon-12 resulted in the "waste streams that contained lead and arsenic," which "are the two main toxins the [plaintiffs] claim harmed them," their disclaimer was ineffective. *Baker*, 962 F.3d at 945 n.3. The disclaimer in *Baker* was ineffective because "it contradicted [plaintiffs'] theory of liability." R. 113 at 9. Here, as the district court correctly found, "there is no contradiction between the City's disclaimer and its deception-focused theory of liability." *Id.* at 11. The disclaimer is in fact "'redundant' because the causes of action brought by the City do not go to the conduct carved out in the disclaimer." *Id.*

Defendants' arguments rely on this Court accepting their theory that the case is about their production of fossil fuels. Motion at 14–15; *see* R. 113 at 19. That is patently false. As the complaint makes clear,

this case is solely about defendants' deception and misrepresentations. *See, e.g.*, R. 1-1 ¶¶ 1–11. Defendants urge that the City engages in "artful pleading" to avoid removal. Motion at 17 (citation omitted). On their view, all that matters is that the City's injuries are based on "global greenhouse emissions," which are "partially" a result of defendants' production of fossil fuels for the federal government. *Id.* at 15. Again, the City's claimed injuries are *not* based on emissions resulting from production for the federal government; they are based *solely* on deception of the public about *consumer* products. There is nothing "artful" about the City's choosing to narrow the scope of its claims to a particular type of conduct. *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) which defendants cite, Motion at 17–18, is inapposite. There, the plaintiff "filed suit in federal court" on diversity jurisdiction grounds, and the court assessed an ordinary preemption defense based on federal common law. *City of New York*, 993 F.3d at 94. The Second Circuit never analyzed federal subject-matter jurisdiction at all. Finally, defendants argue that "their appeal raises significant legal questions of first impression in [the Seventh] Circuit." Motion at 13. That a question may be new does not mean an appellant is likely to succeed on it. Numerous

10

federal courts of appeals across the country have rejected defendants'
removal arguments in similar climate deception cases.[3]  For example, as
the Fourth Circuit explained in *Anne Arundel Cty. v. BP P.L.C.*, 94 F.4th
343 (4th Cir. 2024), in addressing whether removal of plaintiffs' climate
deception claims under the federal officer removal statute was proper,
the court explained "[b]ecause the activities cited by the companies

---

[3] *Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 35 F.4th 44 (1st Cir. 2022),
*cert. denied*, 143 S. Ct. 1796 (2023); *Connecticut v. Exxon Mobil Corp.*, 83
F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699
(3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Anne Arundel Cty. v.
BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024); *Mayor & City Council of
Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S.
Ct. 1795 (2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir.
2023), *cert. denied*, 144 S. Ct. 620 (2024); *City & Cty. of Honolulu v.
Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795
(2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert.
denied*, 141 S. Ct. 2776 (2021); *City of Oakland v. BP PLC*, No. 22-16810,
2023 WL 8179286 (9th Cir. Nov. 27, 2023); *Cty. of San Mateo v. Chevron
Corp.*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023);
*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25
F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *District
of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023); *City of
New York v. Exxon Mobil Corp.* ("*City of New York II*"), 733 F. Supp. 3d
296 (S.D.N.Y. 2024); *Cty. of Multnomah v. Exxon Mobil Corp.*, No. 3:23-
cv-01213-YY, 2024 WL 1991554 (D. Or. Apr. 10, 2024); *Vermont v. Exxon
Mobil Corp.*, No. 2:21-cv-260, 2024 WL 446086 (D. Vt. Feb. 6, 2024); *New
Jersey v. Exxon Mobil Corp.*, No. 22-cv-06733 (RK) (JBD), 2023 WL
4086353 (D.N.J. June 20, 2023); *City of Charleston v. Brabham Oil Co.*,
No. 2:20-cv-03579-RMG, 2023 WL 11867279 (D.S.C. July 5, 2023);
*Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020).

involve fossil fuel *production* rather than concealment or misrepresentation of information about fossil fuel products, those activities fail to show the required relatedness." *Id.* at 349 (emphasis added). And, where an issue is new to this court but has "been addressed by other courts" and "rejected," denial of a motion to stay is appropriate. *Hinrichs v. Bosma*, 440 F.3d 393, 402–03 (7th Cir. 2006).

Defendants rely on the minority of cases that have granted stays. *See Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 3711072 (D. Minn. Aug. 20, 2021); *Hoboken v. Exxon Mobil Corp.*, No. 20-cv-14243, Doc. 133, at 5 (D.N.J. Dec. 15, 2021); *Delaware ex rel. Jennings v. BP Am., Inc.*, No. 20-1429-LPS, 2022 WL 605822 (D. Del. Feb. 8, 2022); *Connecticut v. Exxon Mobil Corp.*, No. 21-1446, Doc. 80 (2d Cir. Oct. 5, 2021). All of these decisions were issued before many circuit courts had rejected defendants' removal arguments on the merits. *See Delaware*, 2022 WL 605822, at *2 (finding likelihood of success on appeal because remand decisions "have been subject to little or no appellate review"). Even more tellingly, in each of these cases, defendants eventually lost on the merits of their appeal, just as they have lost in every single court of appeals to have heard a similar case. *See Minnesota v. Am. Petroleum*

*Inst.*, 63 F.4th 703 (8th Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (consolidated appeal of *Hoboken* and *Delaware* cases); *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023).  At this point, when eight circuits have now rejected defendants' arguments for removal, defendants' likelihood of success is lower – and a stay less warranted – than ever.

### B.    Defendants Will Not Suffer Irreparable Injury Absent a Stay.

To satisfy the second "critical" factor, the moving party must show that it faces harm that is both irreparable and at least probable, not merely possible.  *Nken*, 556 U.S. at 434–35.  Defendants' purported harm related to litigating in two forums is illusory.  "For starters, it is always the case that an appellant, challenging a remand order, will have to litigate in two forums until resolution of the appeal."  R. 134 at 4.

Preliminarily, defendants' suggestion that a denial of a stay would somehow prevent consideration of this appeal is flat-out incorrect. Motion at 20–21.  In the unlikely event the Seventh Circuit reverses on the merits, there is "no reason here to doubt that 'general principles of comity, cooperation, and communication between state and federal courts' will secure the retrieval of the case" to federal court.  *New*

*Hampshire v. 3M Co.*, 132 F.4th 556, 559 (1st Cir. 2025) (citation omitted). In *Forty Six Hundred LLC v. Cadence Educ., LLC*—the very case defendants cite—the First Circuit reversed a remand order and ordered the case returned to federal court, noting that "[t]he case law abounds with examples of federal courts using informal processes to retrieve improvidently remanded cases from state courts." 15 F.4th 70, 80 (1st Cir. 2021).[4]

Defendants also assert that a "final 'state court judgment or order could render the appeal meaningless.'" Motion at 21 (citation omitted). This is "speculative" and "is premised on the unsupported conjecture that the state court matter would proceed to judgment before resolution of the appeal." R. 134 at 4; *see also Charleston*, 2023 WL 4361234, at *2 (it is "unlikely . . . that a final judgment is reached in the state court before the resolution of [Defendants'] appeal").

---

[4] Defendants' other cited cases are inapposite. *Northrop Grumman Technology Services, Inc. v. DynCorp International LLC* addressed the risk of a final judgment in state court, which, as stated below, is unlikely here. No. 1:16cv534(JCC/IDD), 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016). In *Roberts v. Smith & Wesson Brands, Inc.*, the court considered the plaintiffs' request to block an appeal rather than stay a remand decision. No. 22-cv-6169, 2023 WL 8701093, at *2 (N.D. Ill. Dec. 15, 2023).

Defendants next speculate that proceeding in state court could lead to inconsistent outcomes. Motion at 22–23. The mere possibility of some state court ruling does not constitute irreparable harm. "[A]s important as it is to make correct decisions about matters of federal jurisdiction and even removal procedure, trial in state court is not a horrible fate." 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3914.11.1 (3d ed. Sept. 2022). And accepting defendants' logic to the contrary would seemingly require a stay of *every* remand order pending appeal. Regardless, denying a stay is more likely to promote, rather than hinder, judicial efficiency. "[T]he interim proceedings in state court may well advance the resolution of the case in federal court" because "the parties will have to proceed with the filing of responsive pleadings or preliminary motions, regardless of the forum." *Baltimore*, 2019 WL 3464667, at *6 (denying stay pending appeal); *accord Boulder*, 423 F. Supp. 3d at 1074 ("It is not unusual for cases to be removed after substantial state litigation."). And if the Seventh Circuit finds in defendants' favor, the district court is perfectly capable of addressing defendants' hypothetical concern about the potential for a "rat's nest of comity and federalism issues." Motion at 23 (citation omitted).

The risk of producing "sensitive and confidential documents to Plaintiff" does not weigh in favor of granting a stay and is also speculative. Motion at 23. If discovery begins in state court, the parties would enter into a protective order, as they have in every other climate deception case that has advanced to discovery, to protect sensitive information. Further, "much of the litigation will be duplicative across the[se] cases," reducing the risk that any sensitive documents will be produced for the first time during the pendency of this appeal. *Charleston*, 2023 WL 4361234, at *2.

## C.    A Stay Would Substantially Harm the City and Contravene the Public Interest.

The harm-to-the-non-movant and public-interest factors "merge" when a government would be subject to the requested stay. *Nken*, 556 U.S. at 435. A stay of this litigation would harm the City and the public interest. The City filed this case more than a year ago, yet defendants have filed no responsive pleading nor dispositive motion, nor have the parties engaged in any discovery—all because defendants removed this case despite their unanimous losing track record. Defendants now ask for yet more delay. That would substantially prejudice the City's case. "Plaintiff has a legitimate interest in proceeding with the litigation,

including obtaining a responsive pleading to the complaint, as well as the issuance of discovery in state court." R. 134 at 5. If discovery is delayed until after "the conclusion of the appeal," Motion at 25, discovery materials become stale and witnesses' memories fade. *See, e.g.*, *Charleston,* 2023 WL 4361234, at *2 (citation omitted) ("Plaintiff would be injured if the Court stayed execution of the Remand Order because it would 'further delay reaching the merits of the case and further risk losing discoverable evidence.'"). The district court also held that this factor weighed in favor of denying a stay and that "Plaintiff has a legitimate interest in proceeding with the litigation," including by "issu[ing] discovery in state court." R. 134 at 5.

A stay would also prejudice the City's ability to protect its residents from defendants' continuing municipal violations and tortious conduct, as well as the calamitous effects of that conduct. *See* R. 1-1 ¶¶ 353–56, 382, 416; *see also City of Annapolis v. BP P.L.C.*, No. SAG-21-00772, 2022 WL 4548226, at *5 (D. Md. Sep. 29, 2022) ("[t]there is substantial public interest in moving these cases towards disposition."); *Charleston*, 2023 WL 4361234, at *3. Moreover, "Chicago has and will continue to incur substantial costs to adapt to the impacts of climate change," and a stay

further delays compensation.  R. 1-1 ¶ 257.[5]  The City is entitled to prosecute its case and should be permitted to do so.

## II.    Defendants Are Not Entitled to an Automatic Stay.

Recognizing they are not likely to obtain a stay under the discretionary factors, defendants now ask this court to bypass this long-established framework and instead grant a stay automatically in light of *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). First, Defendants waived this argument by not raising it in the district court.  *See Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) (citation omitted). Second, *Coinbase* applies only in the unique arbitration context. Defendants ask this court to extend *Coinbase* to requests for stays of remand orders related to the federal officer removal statute, citing *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265 (4th Cir. 2025). That case is not binding here, nor is it persuasive.  It is an outlier among the federal courts of appeals that have addressed the issue, and it

---

[5] Defendants also chastise the City for "cho[o]s[ing] to wait until 2024 to bring this case."  Motion at 24.  The City has suffered recent harms, and those harms are ongoing.  *See, e.g.*, R. 1-1 ¶¶ 217 ("2023 was the hottest year on record."), 238 (2023 extreme rain event).  The time that the City filed its complaint does not make an otherwise unjustified delay any more justified.

overlooks important differences between arbitration and federal office removal.[6]

First, arbitration promotes different interests. Absent an automatic stay, the benefits of arbitration – avoiding the time and expense of litigation – would be irretrievably lost. *Harrison*, 139 F.4th at 770. No such concern is present here. On the contrary, any progress

---

[6] *See People of the State of California v. Express Scripts, Inc.*, 139 F.4th 763, 773 (9th Cir. 2025) ("*Harrison*") rejecting an automatic stay under *Coinbase); Gov't of P.R. v. Express Scripts, Inc.*, 119 F.4th 174, 184 n.3 (1st Cir. 2024) (denying stay under the traditional *Nken* factors); *Cty. of Westchester v. Express Scripts, Inc.*, No. 24-1639 (2d Cir. Sept. 6, 2024) ("Appellants are not entitled to an automatic stay pending appeal under *Coinbase*."); *Plaquemines Par. v. Chevron United States, Inc.*, 84 F.4th 362, 373–78 (5th Cir. 2023) (noting *Coinbase* and nonetheless applying *Nken*).

District courts have also refused to apply *Coinbase*'s automatic stay beyond the arbitration context. *E.g.*, *Att'y Gen. v. Dow Chem. Co.*, No. CV 23-2449 (RK) (JBD), 2024 WL 3361395, at *9–11 (D.N.J. July 9, 2024) (declining to extend *Coinbase* to federal officer removal context); *Westchester Cty. v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 230 n.13 (S.D.N.Y. 2024) (same); *see also N. Mississippi Med. Ctr., Inc. v. Quartiz Techs.*, No. 23-00003, 2024 WL 2262684, at *2, 7 (N.D. Miss. May 17, 2024) (refusing to apply *Coinbase* and denying stay pending interlocutory appeal under 28 U.S.C. § 1292(a)(1)); *Proto Gage, Inc. v. Fed. Ins. Co.*, No. 21-12286, 2023 WL 9112923, at *2–3 (E.D. Mich. Dec. 28, 2023) (same); *see also Doe v. Gunderson Lutheran Health Sys., Inc.*, No. 23-cv-694, 2024 WL 1270798 (W.D. Wis. March 26, 2024) (post-*Coinbase* decision applying discretionary stay factors to motion to stay remand decision involving federal office removal statute).

made in state court – namely in discovery – would further the federal case if remand is ultimately reversed.   Parties opt for arbitration instead of court adjudication because it involves "less expense, less intrusive discovery, and the like." *Coinbase*, 599 U.S. at 743.  The same is not true in the removal context.  State and federal court "each provide forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms." *Harrison*, 139 F.4th at 770.  Continuing to litigate in state court "does not cause defendants to 'irretrievably lose' any benefits of the type lost when being wrongfully forced to arbitrate." *Id.*; *accord Att'y Gen. v. Dow*, 2024 WL 3361395, at *10 n.8 ("Unlike in the arbitration context, any progress made in state court—namely, discovery—would also further the federal case if [the remand decision is reversed].").

Second, "[r]equiring an automatic stay in the federal officer removal context would implicate federalism concerns not at issue where parties seek to compel arbitration." *Harrison*, 139 F.4th at 768.  An improper removal based on federal officer jurisdiction "deprive[s] state courts of jurisdiction over cases that should rightfully be heard in their fora, in violation of comity principles," and an automatic stay based on *Coinbase*

"would only exacerbate federal infringement on state courts' rights." *Id.* at 769; *accord Att'y Gen. v. Dow*, 2024 WL 3361395, at *10 (refusing to apply *Coinbase* in federal officer removal context in part because it would "have the effect of pausing litigation in state court"). Thus, the "discretion" embodied in the *Nken* factors "makes sense in the federal officer removal context because courts should have the power to weigh these important factors before granting stays that could infringe upon the rights of state courts." *Harrison*, 139 F.4th at 768–69.

Third, allowing a case to proceed in state court during the pendency of an appeal of a remand order does not present any "danger a district court and a court of appeals would be simultaneously analyzing the same judgment." *Harrison*, 139 F.4th at 771 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59 (1982)); *Westchester Cty.*, 737 F. Supp. 3d at 230 n.13 (rejecting notion that the "right to appeal is rendered nugatory" because, unlike in the arbitration context, "it is virtually impossible that the state court proceedings will terminate before an appeal of this decision is decided"). Proceeding on questions in state court such as whether the claims have merit "would not interfere with the appellate court's review of the remand order, nor risk

inconsistent judgments." *Harrison*, 139 F.4th at 771. As the Ninth Circuit explained, refusing to extend *Coinbase's* automatic stay to federal officer removal remand orders "squares with *Griggs* because the question on appeal is essentially a narrow venue question," and the appellate proceeding on this narrow question does "not implicate the *Griggs* principle." *Id.*

Fourth, extending *Coinbase*'s automatic stay to appeals involving federal officer removal remand orders "might encourage gamesmanship by defendants that would frustrate principles of judicial economy." *Id.* at 771–72. Any defendant, as defendants do in this case, "could craft an argument for federal officer removal then appeal a district court's remand order" to delay discovery. *Id.* at 772. This results in harm to plaintiffs, like the City of Chicago here, "in the form of lost evidence, depleted funding, and diminished patience." *Id.*

Finally, "[t]he *Coinbase* majority clearly stated that 'the sole question before [the] Court [was] whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing.'" *Id.* at 768 (citation omitted). The Supreme Court did not "receive briefing on the unique federalism issues implicated by the federal officer removal

statute that differ in the arbitration context." *Id.* Thus, *Coinbase* simply "represents a carveout to the normal discretionary stay powers in the arbitration context." *Id*; *Att'y Gen. v. Dow*, 2024 WL 3361395, at *9 ("Had the Supreme Court wanted to overturn this body of case law in *Coinbase*, it would have expressly said so.").

This Court should reject defendants' urging to follow the Fourth Circuit's split holding in *Martinsville*. As the dissent persuasively argued, "the Supreme Court has treated arbitration as exceptional" "for decades," and *Coinbase* followed in that line by protecting "the right to an interlocutory arbitrability appeal.". 128 F.4th at 274. The *Martinsville* majority's holding "disingenuously extend[ed] the narrow holding on arbitrability appeals in *Coinbase* to broadly abrogate the well-settled holding in *Nken v. Holder* that district courts have discretion over whether to impose a stay." *Id.* at 272. As the dissent explained, "*Coinbase* does not constitute a general withdrawal of the discretion that courts have exercised for centuries" and does not "establish[] what is tantamount to a generally applicable substantive Canon in Favor of Automatic Stays." *Id.* at 274–75.

This Court should join the overwhelming majority of other courts of appeals and refuse to expand *Coinbase* to this area.

## CONCLUSION

Defendants are not entitled to an automatic stay and have not met the *Nken* factors for a discretionary stay. Defendants' motion for stay should be denied.

Dated: July 14, 2025

Respectfully submitted,

Mary B. Richardson-Lowry
**Corporation Counsel of the City of Chicago**

Stephen J. Kane
Rebecca A. Hirsch
Chelsey B. Metcalf
**CITY OF CHICAGO
DEPARTMENT OF LAW
AFFIRMATIVE LITIGATION
DIVISION**
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Tel: (312) 744-6934
stephen.kane@cityofchicago.org
rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org

Myriam Zreczny Kasper
Elizabeth Tisher
Suzanne Loose
**CITY OF CHICAGO
DEPARTMENT OF LAW
APPEALS DIVISION**
2 North LaSalle Street, Suite 580
Chicago, Illinois 60602
Tel: (312) 744-6934
myriam.kasper@cityofchicago.org
elizabeth.tisher@cityofchicago.org
suzanne.loose@cityofchicago.org

24

By:     */s/ Matthew K. Edling*
_____

Matthew K. Edling
Victor M. Sher
Paul Stephan
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, California 94104
Tel: (628) 231-2500
matt@sheredling.com
vic@sheredling.com
paul@sheredling.com

Adam J. Levitt
Daniel Rock Flynn
Anna Claire Skinner
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth
Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
askinner@dicellolevitt.com

*Attorneys for Plaintiff-Appellee City of Chicago*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2019, in 14-point Century Schoolbook font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that the brief contains 5192 words.

*/s/ Matthew K. Edling*
Matthew K. Edling

July 14, 2025