No. 25-1916

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

CITY OF CHICAGO,
*Plaintiff-Appellee,*

v.

BP P.L.C., et al.,
*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 24-cv-02496
The Honorable Franklin U. Valderrama, Judge Presiding
————

## APPELLEE'S ANSWER BRIEF

Mary B. Richardson-Lowry
**Corporation Counsel of the City
of Chicago**

Stephen J. Kane
Rebecca A. Hirsch
Chelsey B. Metcalf
**CITY OF CHICAGO
DEPARTMENT OF LAW
AFFIRMATIVE LITIGATION
DIVISION**
121 North LaSalle St., Room 600
Chicago, Illinois 60602

Myriam Zreczny Kasper
Elizabeth Tisher
Suzanne Loose
**CITY OF CHICAGO
DEPARTMENT OF LAW
APPEALS DIVISION**
2 North LaSalle St., Suite 580
Chicago, Illinois 60602

*Attorneys for Plaintiff-Appellee City of Chicago*
*(Additional counsel listed on signature page)*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee City of Chicago

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sher Edling LLP

DiCello Levitt

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

N/A

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Matthew K. Edling      Date: 6/20/2025

Attorney's Printed Name: Matthew K. Edling

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: Sher Edling LLP

100 Montgomery St, Ste. 1410, San Francisco, CA 94104

Phone Number: (628) 231-2500      Fax Number: (628) 231-2929

E-Mail Address: matt@sheredling.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __25-1916__

Short Caption: City of Chicago v. BP P.L.C., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee City of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    DiCello Levitt LLP

    Sher Edling LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/Daniel R. Flynn    Date: June 18, 2025

Attorney's Printed Name: Daniel R. Flynn

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [ ]  **No** [✓]

Address: Ten North Dearborn Street, Sixth Floor

    Chicago, IL 60602

Phone Number: (312) 214-7900    Fax Number: (312) 253-1443

E-Mail Address: dflynn@dicellolevitt.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee City of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sher Edling LLP

DiCello Levitt

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Yumehiko Hoshijima          Date: June 18, 2025

Attorney's Printed Name: Yumehiko Hoshijima

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 100 Montgomery Street Suite 1410

San Francisco, CA 94104

Phone Number: (628) 231-2500          Fax Number: (628) 231-2929

E-Mail Address: yumehiko@sheredling.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee City of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiCello Levitt LLP

Sher Edling LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Adam J. Levitt    Date: September 8, 2025

Attorney's Printed Name: Adam J. Levitt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: Ten North Dearborn Street, Sixth Floor

Chicago, IL 60602

Phone Number: (312) 214-7900    Fax Number: (312) 253-1443

E-Mail Address: alevitt@dicellolevitt.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Plaintiff-Appellee City of Chicago

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sher Edling LLP

DiCello Levitt

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Victor M. Sher          Date: 6/20/2025

Attorney's Printed Name: Victor M. Sher

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]    No [✓]

Address: Sher Edling LLP

100 Montgomery St., Suite 1410, San Francisco, CA 94104

Phone Number: (628) 231-2500          Fax Number: (628) 231-2929

E-Mail Address: vic@sheredling.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __25-1916__

Short Caption: City of Chicago v. BP P.L.C., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee City of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    DiCello Levitt LLP

    Sher Edling LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/Anna Claire Skinner    Date: June 18, 2025

Attorney's Printed Name: Anna Claire Skinner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: Ten North Dearborn Street, Sixth Floor

    Chicago, IL 60602

Phone Number: (312) 214-7900    Fax Number: (312) 253-1443

E-Mail Address: askinner@dicellolevitt.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1916

Short Caption: City of Chicago v. BP P.L.C., et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff-Appellee City of Chicago

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Sher Edling LLP

    DiCello Levitt

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Paul Stephan     Date: June 18, 2025

Attorney's Printed Name: Paul Stephan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]   **No** [✓]

Address: 100 Montgomery Street Suite 1410

    San Francisco, CA 94104

Phone Number: (628) 231-2500     Fax Number: (628) 231-2929

E-Mail Address: paul@sheredling.com

rev. 12/19 AK

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................1

INTRODUCTION ...............................................................................2

STATEMENT OF THE ISSUES.........................................................3

STATEMENT OF THE CASE.............................................................3

SUMMARY OF THE ARGUMENT ....................................................6

ARGUMENT ......................................................................................8

The District Court's Remand Order Should Be Affirmed. .......................9

    A.    The City's deception-based state-law claims
seek liability for defendants' deceptive marketing,
not any federal conduct. .........................................................12

    B.    Defendants' arguments for removal are baseless................17

        1.    Defendants' asserted acts under federal
authority lack any nexus with the City's deception-
based claims. ..............................................................18

        2.    Defendants' purported federal conduct
does not qualify as acting under federal authority. ....30

        3.    Defendants lack a colorable federal defense. ..............41

        4.    Defendants' challenge to the City's disclaimer
is unavailing. ...............................................................54

CONCLUSION.................................................................................59

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head Inc.*,
  486 U.S. 492 (1988) ..............................................................53

*Am. Elec. Power Co. v. Connecticut*,
  564 U.S. 410 (2011) ..............................................................51

*Anne Arundel Cty. v. BP P.L.C.*,
  No. C-02-CV-21-000565, 2025 WL 588595,
  (Md. Cir. Ct. Jan. 23, 2025) ................................................51

*Anne Arundel Cty. v. BP P.L.C.*,
  94 F.4th 343 (4th Cir. 2024) ........................................*passim*

*Arizona v. Manypenny*,
  451 U.S. 232 (1981)............................................ 11, 41, 45, 47

*Baker v. Atlantic Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020)........................................*passim*

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.), Inc.*,
  2024 WL 3204275 (Colo. Dist. Ct. June 21, 2024) .............................53

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
  25 F.4th 1238 (10th Cir. 2022) ...........................8, 27, 32, 55

*Bell v. Thornburg*,
  743 F.3d 84 (5th Cir. 2014)...................................................48

*Betzner v. Boeing Co.*,
  910 F.3d 1010 (7th Cir. 2018).......................................10, 31

*Bolger v. Youngs Drug Prods. Corp.*,
  463 US. 60 (1983)..................................................................53

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988)..............................................................42

*Bucks Cty. v. BP P.L.C.*,
   No. 2024-01836, 2025 WL 1484203
   (Pa. Ct. Comm. Pleas May 16, 2025) ..................................................51

*Chevron U.S.A. Inc. v. Plaquemines Parish*,
   No. 24-813, 2025 WL 1678985 (U.S. June 16, 2025) ...........................29

*City & Cty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) ...................................................... *passim*

*City & Cty. of Honolulu v. Sunoco LP*,
   537 P.3d 1173 (Haw. 2023) ........................................................50, 52

*City & Cty. of Honolulu v. Sunoco LP*,
   2021 WL 531237 (D. Haw. Feb. 12, 2021) ...........................................27

*City of Annapolis v. BP P.L.C.*,
   No. SAG-21-00772, WL 4548226 (D. Md. Sept. 29, 2022) .................55

*City of Annapolis v. BP P.L.C.*,
   No. C-02-CV-21-000250, 2025 WL 588595,
   (Md. Cir. Ct. Jan. 23, 2025) .............................................................51

*City of Charleston v. Brabham Oil Co.*,
   No. 2:20-cv-03579-RMG, 2023 WL 11867279
   (D.S.C. July 5, 2023) ...........................................................................9

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ........................................................ *passim*

*City of New York v. Chevron Corp.* (*City of New York*),
   993 F.3d 81 (2d Cir. 2021) ....................................................27, 28, 55

*City of New York v. Exxon Mobil Corp.* (*City of New York II*),
   733 F. Supp. 3d 296 (S.D.N.Y. 2024) ..................................................8

*City of Oakland v. BP P.L.C.*,
   No. C 17-06011 WHA, 2022 WL 14151421
   (N.D. Cal. Oct. 24, 2022) ..................................................................37

*City of Oakland v. BP PLC,*
   969 F.3d 895 (9th Cir. 2020) ............................................................. 8

*City of Oakland v. BP PLC,*
   No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) ............. 8, 32

*Connecticut v. Exxon Mobil Corp.,*
   83 F.4th 122 (2d Cir. 2023) ...................................................... *passim*

*Cty. Bd. of Arlington Cty. v. Express Scripts Pharmacy, Inc.,*
   996 F.3d 243 (4th Cir. 2021) ........................................................... 48

*Cty. Comm'rs of Boulder Cty. v. Suncor Energy USA, Inc.,*
   No. 24SA206, 2025 WL 1363355 (Colo. May 12, 2025) ................ 51, 52

*Cty. of Multnomah v. Exxon Mobil Corp.,*
   No. 3:23-cv-01213-YY, 2024 WL 1991554 (D. Or. Apr. 10, 2024) ........ 8

*Cty. of San Mateo v. Chevron Corp.,*
   32 F.4th 733 (9th Cir. 2022) ..................................................... *passim*

*Delaware v. BP Am. Inc.,*
   578 F. Supp. 3d 618 (D. Del. 2022) ........................................ 11, 39, 55

*District of Columbia v. Exxon Mobil Corp.,*
   89 F.4th 144 (D.C. Cir. 2023) ........................................ 8, 14, 19, 32

*Edenfield v. Fane,*
   507 U.S. 761 (1993) ...................................................................... 44

*Firestone Fin. Corp. v. Meyer,*
   796 F.3d 822 (7th Cir. 2015) ........................................................... 44

*Fla. Lime & Avocado Growers, Inc. v. Paul,*
   373 U.S. 132 (1963) ...................................................................... 43

*Gay v. Ruff,*
   292 U.S. 25 (1934) .................................................................. 46, 47

*Gov't of Puerto Rico v. Express Scripts, Inc.,*
   119 F.4th 174 (1st Cir. 2024) .................................................... *passim*

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
474 F. Supp. 3d 1231 (N.D. Fla. 2020) .................................................. 41

*In re Commonwealth's Motion to Appoint Couns. Against or
Directed to Def. Ass'n of Phila.*,
790 F.3d 457 (3d Cir. 2015) .................................................... 23, 48, 49

*In re Joint E. & S. Dist. N.Y. Asbestos Litig.*,
897 F.2d 626 (2d Cir. 1990) ................................................................ 42

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008) ........................................................... 23, 47

*Jefferson Cty. v. Acker*,
527 U.S. 423 (1999) ......................................................... 18, 20, 24, 49

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) .............................................................. 53

*Kelleher v. A.W. Chesterton Co.*,
No. 15-CV-893-SMY-SCW, 2015 WL 7422756
(S.D. Ill. Nov. 23, 2015) ..................................................................... 17

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) .......................................................... 23, 25

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015) .............................................................. 32

*Magnin v. Teledyne Cont'l Motors*,
91 F.3d 1424 (11th Cir. 1996) ............................................................ 48

*Maryland v. 3M Co.*,
130 F.4th 380 (4th Cir. 2025) ............................................................ 56

*Massachusetts v. Exxon Mobil Corp.*,
462 F. Supp. 3d 31 (D. Mass. 2020) ...................................................... 9

*Mayor & City Council of Baltimore v. BP P.L.C.*,
31 F.4th 178 (4th Cir. 2022) ....................................................... *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
No. 24-C-18-004219, 2024 WL 3678699
(Md. Cir. Ct. July 10, 2024) ................................................................51

*Mesa v. California*,
489 U.S. 121 (1989) ....................................................................46, 47

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023) ...........................8, 16, 19, 27

*Minnesota v. Am. Petroleum Inst.*,
No. CV 20-1636, 2021 WL 1215656
(D. Minn. Mar. 31, 2021) ......................................................11, 55

*Minnesota v. Am. Petroleum Inst.*,
No. 62-CV-20-3837, 2025 WL 562630
(Minn. Dist. Ct. Feb. 14, 2025) ..........................................53, 54

*Municipalities of Bayamón v. Exxon Mobil Corp.*,
2025 WL 600430 (D.P.R. Feb. 20, 2025)................................53

*New Jersey v. Exxon Mobil Corp.*,
No. 22-cv-06733, 2023 WL 4086353 (D.N.J. June 20, 2023)................9

*New Jersey ex rel. Platkin v. Exxon Mobil Corp.*,
No. MER-L-001797-22, 2025 WL 604846
(N.J. Super. Ct. Law Div. Feb. 5, 2025) ..............................9

*Panther Brands, LLC v. Indy Racing League, LLC*,
827 F.3d 586 (7th Cir. 2016) ................................................31

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) ................................................25

*Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*,
33 F.4th 417 (7th Cir. 2022) ................................................44

*People ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) ......................................56, 57

*Rhode Island v. Shell Oil Prods. Co.*,
   979 F.3d 50 (1st Cir. 2020) ..........................................18, 27

*Rhode Island v. Shell Oil Prods. Co.*,
   35 F.4th 44 (1st Cir. 2022) ....................................................8

*Roberts v. Smith & Wesson Brands, Inc.*,
   98 F.4th 810 (7th Cir. 2024) .................................................31

*Ruppel v. CBS Corp.*,
   701 F.3d 1176 (7th Cir. 2012) ......................................*passim*

*Sawyer v. Foster Wheeler LLC*,
   860 F.3d 249 (4th Cir. 2017) .................................................25

*Scheidler v. Indiana*,
   914 F.3d 535 (7th Cir. 2019) ................................................44

*Soo Line R.R. Co. v. Consol. Rail Corp.*,
   965 F.3d 596 (7th Cir. 2020) ................................................44

*Tennessee v. Davis*,
   100 U.S. 257 (1879) ............................................................46

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ............................................................53

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ................................................45

*United States v. Philip Morris USA Inc.*,
   566 F.3d 1095 (D.C. Cir. 2009) ............................................54

*United States v. Shell Oil Co.*,
   294 F.3d 1045 (9th Cir. 2002) ..............................................33

*Vermont v. Exxon Mobil Corp.*,
   No. 2:21-cv-260, 2024 WL 446086 (D. Vt. Feb. 6, 2024) ........................9

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007) ..................................................*passim*

*Willingham v. Morgan,*
   393 U.S. (1969) ............................................................... 47

*Wisconsin v. Schaffer,*
   565 F.2d 961 (7th Cir. 1977) ...................................... 41, 45

*Wood v. Matthews,*
   23 Vt. 735 (C.C.D. Vt. 1852) ........................................ 46

**Statutes**

28 U.S.C. § 1442(a)(1) ................................... 1, 3, 10, 21

28 U.S.C. § 1447(d) ............................................................. 1

42 U.S.C. § 6241 ............................................................... 40

42 U.S.C. § 7401 ............................................................... 52

43 U.S.C. § 1337(a)(1) ..................................................... 38

# JURISDICTIONAL STATEMENT

The jurisdictional statement of defendants-appellants is not complete and correct.

The City filed this action in February 2024 in the Circuit Court of Cook County, asserting state-law claims. S.A. 14–217.[1] Defendants removed the case to the U.S. District Court for the Northern District of Illinois, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1). S.A. 218.[2] The City moved to remand the action, R. 66, and the district court granted the motion on May 16, 2025, App. 1–26. Defendants filed a notice of appeal on May 28, 2025. S.A. 1. "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," unless the case was "removed pursuant to section 1442 or 1443 of this title." 28 U.S.C. § 1447(d). Thus, this Court has appellate jurisdiction under 28 U.S.C. § 1447(d).

---

[1] Citations to defendants-appellants' Short Appendix, which contains the district court's remand order, are labeled as "App. _." Citations to the Stipulated Joint Separate Appendix are labeled as "S.A. _." Other citations to the district court record are labeled as "R. _." Citations to this Court's docket are labeled as "Doc. _."

[2] Defendants also raised federal common law as a basis for removal, but they expressly "abandoned" that argument. App. 4.

## INTRODUCTION

The City of Chicago seeks to hold the defendant members of the fossil fuel industry liable under Illinois law and the Municipal Code of Chicago for deceiving consumers for decades about the hazards of burning fossil fuels. Defendants removed the case to federal court, invoking the federal officer removal statute. But the City's claims, which seek to impose liability for harm caused by defendants' deception, have no relation whatsoever to any activities defendants carried out for the federal government for military and national security purposes. Simply put, the City brings state law claims that belong in state court.

Well over a dozen federal courts, including eight courts of appeals, have unanimously rejected defendants' federal officer removal arguments. Yet defendants recycle those arguments in this court, relying on the same supporting materials that so many courts have found inadequate, without even trying to explain how all those courts erred. Defendants' core strategy is to attempt to rewrite the City's complaint into something it is not, and to falsely assert that this court's law on federal officer removal diverges so much from the law of other circuits that a different result should obtain. The court should reject these tactics.

## STATEMENT OF THE ISSUES

Whether the district court lacks jurisdiction to hear the City's state-law climate-deception claims under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), where the charged conduct—defendants' alleged deception of the public about consumer products—is wholly unrelated to the production and extraction activities that defendants purportedly carried out for the federal government for military and national security purposes.

## STATEMENT OF THE CASE

The City filed this lawsuit in state court. The City's complaint alleges that for decades, defendants—large fossil fuel companies and one industry trade association—knew of the direct link between the use of their fossil fuel products and climate change. Instead of disclosing that knowledge, defendants concealed and affirmatively misrepresented the risks of fossil fuel use to consumers, resulting in the climate-related harms the City is now facing. S.A. 30–31 (Compl. ¶¶ 1–2). The City brings claims for strict products liability, negligent products liability, negligence, public and private nuisance, civil conspiracy, and unjust enrichment under Illinois common law, as well as four claims for

violations of the Municipal Code of Chicago. S.A. 181–217 (Compl. ¶¶ 258–416).

The City's complaint seeks to hold defendants liable for defendants' misrepresentations of the hazards of fossil fuel products. S.A. 33 (Compl. ¶ 9). It alleges that defendants knew with great accuracy of these hazards yet concealed their knowledge to deceive consumers and the public about the consequences of using fossil fuel products. *Id.* This had the intended consequence of causing an "enormous, foreseeable, and avoidable" increase in greenhouse gas ("GHG") accumulations and accelerated global warming, "bringing devastating consequences to the City and its people." *Id.* The City alleges that it was defendants' decades-long campaign of deception that has caused harm to the City. S.A. 30 (Compl. ¶ 1).

The district court granted the City's motion to remand, App. 1–26, following the eight courts of appeals that have rejected removal in analogous climate-deception cases. The court first held that the City's claims are based on defendants' "alleged deceptive and misleading campaign," not on any fossil fuel production or operations for the federal government. *Id.* at 11–12. The court then held that the City's disclaimer,

which states that the City does not seek relief for "injuries arising on federal property and those arising from Defendants' provisions of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes," S.A. 34 (Compl. ¶ 11 n.6), although redundant, is effective, App. 10, and that defendants cannot rely on activities falling within the disclaimer for removal, *id.* at 15.

The court next held that defendants "fail to satisfy the acting under element of federal officer removal" because of the City's disclaimer and because much of the purported federal acts raised by defendants "predate[s] the deceptive conduct alleged in the Complaint." *Id.* at 18–20. The court again noted that those federal acts are "of no import" to this lawsuit because the City's claims do not seek liability for defendants' "work with or on behalf of the government that led to or contributed to fossil fuel emissions." *Id.* at 19.

The court held that defendants also failed to satisfy the nexus element of federal officer removal because "the charged conduct is insufficiently connected to any acts taken by defendants under federal authority." *Id.* at 23. Defendants' purported acts under federal authority bear no relation to the City's claims, which "are based on Defendants'

alleged deceptive and misleading campaign minimizing the dangers of fossil fuel consumption." *Id.* at 12, 18. The district court rejected defendants' attempts to reimagine the City's deception-based claims, holding that "the nexus element does not authorize Defendants to rewrite the City's claims into something they are not." *Id.* at 23.

Last, the district court held that defendants raise no colorable federal defenses. The "federal contractor defense is unavailable" to defendants because it could apply only to conduct within the scope of the City's valid disclaimer and, "importantly, . . . the [d]efendants do not allege that the government ordered their allegedly deceptive acts." *Id.* at 24. The same is true for defendants' remaining defenses, which the district court held "do not arise from any [of their purported] official duties." *Id.* at 25. As the court noted, "most" of defendants' "arguments and exhibits are recycled and have been rejected by every out-of-Circuit court to consider them." *Id.* The court thus remanded the case to state court. *Id.* at 26. Defendants appealed. S.A. 1.

## SUMMARY OF THE ARGUMENT

Defendants fail to establish three of the four elements of federal officer removal. First, defendants fail to establish a nexus between the

charged conduct alleged in the complaint and any acts under federal authority. Their deceptive conduct that the City alleges in its complaint was concededly not done under federal authority. The federal acts defendants purportedly did take under federal authority are therefore irrelevant to the City's claims. The City's disclaimer of claims based on such federal acts, moreover, provides additional support for this. Defendants' contrary arguments contradict precedent and ask this court to rewrite the City's complaint, which it may not do.

Defendants also fail to establish that they were acting under the United States, its agencies, or its officers in any way relevant to this case. They do not show that any federal officer was involved in, condoned, or even knew about their deception, and defendants' asserted acts did not involve the requisite "unusually close" relationship with the federal government to satisfy this element. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).

As for the colorable federal defense element, defendants forfeited most of their defenses by failing to develop them in the district court. But regardless, their purported defenses are not valid defenses to the claims

the City alleges, which target deceptive marketing. Accordingly, defendants' defenses are not colorable.

## ARGUMENT

Defendants' current attempt to remove climate-deception claims to federal court fares no better than any of their previous ones around the country, which were all resoundingly rejected. The City's claims, like the claims that eight other courts of appeals have remanded, are wholly unrelated to any federal activities conducted by defendants and thus belong in state court.[3] The district court properly interpreted the federal

---

[3] *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023); *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Anne Arundel Cty. v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024); *City & Cty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *City of Oakland v. BP PLC*, No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023); *Cty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023); *City of New York v. Exxon Mobil Corp.* (*City of New York II*), 733 F. Supp. 3d 296 (S.D.N.Y. 2024); *Cty. of Multnomah v. Exxon Mobil Corp.*, No. 3:23-cv-01213-YY, 2024 WL

officer removal statute and applied precedent from the Supreme Court and this court to conclude that it lacked jurisdiction. This court reviews "subject-matter jurisdiction and the propriety of removal of a state-court action de novo." *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (citation omitted). Under this standard, the district court's remand order should be affirmed.

**The District Court's Remand Order Should Be Affirmed.**

The purpose of the federal officer removal statute "is to protect the Federal Government from the interference with its operations that would ensue" if "officers and agents of the Federal Government acting . . . within the scope of their authority" could be sued in state court. *Watson*, 551 U.S. at 150 (cleaned up). The statute was drafted to "provide a federal forum for officers whose duties under federal law conflict with state law." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179 (7th Cir. 2012).

---

1991554 (D. Or. Apr. 10, 2024); *Vermont v. Exxon Mobil Corp.*, No. 2:21-cv-260, 2024 WL 446086 (D. Vt. Feb. 6, 2024); *New Jersey v. Exxon Mobil Corp.*, No. 22-cv-06733, 2023 WL 4086353 (D.N.J. June 20, 2023); *City of Charleston v. Brabham Oil Co.*, No. 2:20-cv-03579-RMG, 2023 WL 11867279 (D.S.C. July 5, 2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020).

Each of the elements of federal officer removal stems from this purpose. Under the statute, a removing defendant must plausibly allege four elements: that they are "a (1) 'person[,]' (2) 'acting under' the United States, its agencies, or its officers[,] (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Id.* at 1180–81 (quoting 28 U.S.C. § 1442(a)(1)).[4] These elements, taken together, require a showing of a significant relationship between the federal government and the basis for the lawsuit. Without this connection, any attempted removal falls outside the contemplated role of the statute. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) (citation omitted).

Generally, the "well-pleaded complaint rule" prevents federal question jurisdiction from attaching to a complaint that does not plead any federal causes of action. *Ruppel,* 701 F.3d at 1180. Although the federal officer removal statute provides an exception to this rule and permits a defendant to remove on the basis of an anticipated federal *defense*, it does not permit the defendant to "freely rewrite the complaint

---

[4] The parties agree that defendants are persons under Section 1442(a)(1).

and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal." *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, n.21 (D. Del. 2022), *aff'd sub nom.*, *City of Hoboken*, 45 F.4th 699; *see Minnesota v. Am. Petroleum Inst.*, No. CV 20-1636, 2021 WL 1215656, at *5 (D. Minn. Mar. 31, 2021) (similar), *aff'd*, 63 F.4th 703 (8th Cir. 2023). If that were the case, the exception would swallow the rule.

Further, in keeping with the purposes of the federal officer removal statute, the defendant must assert a defense that "aris[es] out of [their] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).

"The party seeking removal bears the burden of proving the grounds for its motion." *Ruppel*, 701 F.3d at 1180. Defendants cannot meet that burden here. The City's climate-deception claims are unrelated to any purported official federal duties of defendants, and defendants are not entitled to rewrite them. This court should affirm the order remanding this case to state court.

**A.    The City's deception-based state-law claims seek liability for defendants' deceptive marketing, not any federal conduct.**

The complaint makes explicit that the City seeks to hold defendants liable for their tortious, deceptive marketing conduct. After accumulating vast knowledge about the dangers of unabated fossil fuel use, "[r]ather than warn consumers and the public, fossil fuel companies and their surrogates mounted a disinformation campaign" to conceal those dangers from consumers. S.A. 30 (Compl. ¶ 1). The City's complaint details decades of deceptive marketing by defendants, including misleading publications authored and/or funded by defendants, S.A. 102–06, 131–33 (Compl. ¶¶ 96–101, 151), deceptive "advertorials," S.A. 106–11 (Compl. ¶¶ 102–07), misleading statements made by fossil fuel industry front groups, S.A. 111–16 (Compl. ¶¶ 110–18), research funded by defendants to discredit climate science, S.A. 120–22 (Compl. ¶¶ 125–27), and numerous false and misleading advertisements made by defendants and directed at consumers, S.A. 135–63 (Compl. ¶¶ 155–99).

The City bases each of its causes of action on, and seeks relief solely for, the effects of defendants' deception. The City's claims for failures to warn arise from defendants' deception and lack of adequate warnings,

S.A. 183–84, 188–89 (Compl. ¶¶ 267, 273, 294–95); the City's negligence claim similarly arises from defendants' deceptive commercial conduct and "fail[ures] to include warnings of the risk of harm associated with fossil fuel products," S.A. 193 (Compl. ¶ 315); the City's public, private, and statutory nuisance claims likewise arise from defendants' deceptive commercial conduct and concealment, S.A. 196, 199, 202 (Compl. ¶¶ 329, 341, 354); the City alleges a civil conspiracy "to mislead potential purchasers, consumers, and users in and around the City," S.A. 204 (Compl. ¶ 363); defendants were unjustly enriched after they "failed to give adequate warning[s]" and "misled" others, S.A. 206 (Compl. ¶¶ 369–71); the City's statutory consumer fraud and misrepresentation claims necessarily seek liability only for defendants' deception, S.A. 209–10, 213 (Compl. ¶¶ 387–88, 398–99); and the City seeks relief for the consequences of defendants' deception, S.A. 215 (Compl. ¶ 411). The only tortious conduct at issue in this case, then, is defendants' deception and failure to warn: "This lawsuit seeks to hold those companies accountable for the lies they have told and the damage they have caused." S.A. 34 (Compl. ¶ 11). Thus, the City alleges that defendants' tortious promotion

of fossil fuel products occurred in the commercial marketplace and targeted consumers, including those in the City.

Even defendants do not allege that they acted under federal authority when engaging in any of this alleged misconduct. *See, e.g.*, Doc. 65 (hereinafter "Defs. Br.") at 46; R. 87 at 24. Defendants "do not argue the federal government required them to market or describe their products in a certain way," or influenced their marketing activities whatsoever. *Anne Arundel*, 94 F.4th at 350 (rejecting federal officer removal); *see also District of Columbia*, 89 F.4th at 156 (there is no "allegation the Companies engaged in these misrepresentations at the behest of or in coordination with federal officers"). Instead, defendants seek removal under the federal officer removal statute based on four categories of conduct that focus on the supply of fuels to the military and the fulfillment of federal contracts, including wartime fossil fuel production, the provision of specialized fuels to the military, the operation of fossil fuel reserves, and the leasing of federal lands for fossil fuel production. *See* Defs. Br. 23–36. Importantly, this conduct involves only fossil fuel production and operation activities, including "oil exploration," "construction," fuel "testing," and "extract[ion]." *Id.* at 26,

29, 33. By contrast, as the district court accurately explained, "the Complaint takes issue with Defendants' alleged *campaign of deception and misrepresentation* [starting] in the 1980s of the dangers of fossil fuel[s]," App. 19, so the acts defendants purportedly took under federal officers—like "production of fossil fuels during World War II or the Korean War" and "operating and managing . . . petroleum production facilities"—had nothing to do with the alleged deception campaign. *Id.* Put simply, the City's claims do not relate in any way to actions taken for the federal government.

Courts across the country have agreed. Every court to consider this issue has held that defendants in analogous cases failed to meet the requirements of the federal officer removal statute. *See supra* note 3. Many came to this conclusion precisely because the federal acts raised by defendants were wholly irrelevant to the tortious conduct alleged in the complaint; defendants' purported federal conduct had nothing to do with the deception that gives rise to their liability. Defendants' removal attempts in the climate-deception context simply "present a total mismatch" between defendants' asserted bases for removal and the plaintiffs' allegations. *Connecticut*, 83 F.4th at 145. Their purported

federal acts "bear[] little to no relationship with how they conducted their marketing activities to the general public." *Minnesota*, 63 F.4th at 715; *see also Anne Arundel*, 94 F.4th at 349 ("[T]he activities cited by the companies involve fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products.").

Moreover, the City has also expressly disclaimed relief "arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes." S.A. 34 (Compl. ¶ 11 n.6). If, after a plaintiff's disclaimer, "*any* basis for federal officer removal" is "eliminate[d]," "a defendant is not entitled to 'a federal forum' in which 'to raise a defense arising out of his official duties,' 'because such a defense pertains to claims that simply do not exist.'" *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (citations omitted).

Here, as the district court noted, the City's disclaimer is "redundant" because the deceptive conduct and failure to warn that the City's complaint alleges does not relate to the conduct "carved out" in the disclaimer. App. 11. The disclaimer is therefore not necessary. But the disclaimer does further illustrate that none of defendants' asserted acts

(or their defenses, discussed below) relate to the City's claims. *See, e.g.*, *Hoboken*, 45 F.4th at 713 (accepting a similar disclaimer); *Express Scripts*, 119 F.4th at 187; *Kelleher v. A.W. Chesterton Co.*, No. 15-CV-893-SMY-SCW, 2015 WL 7422756, at *3 (S.D. Ill. Nov. 23, 2015) (defendant did not act under federal authority where disclaimer included "clear statements that [the plaintiff's] claims do not include any work performed" for the federal government). In short, the City's disclaimer is "no ruse," and "[t]he causes of action are about state torts." *Hoboken*, 45 F.4th at 713.

Because there is a "total mismatch" between the City's theory of liability and defendants' asserted federal conduct, removal is not warranted, this court should affirm.

### B. Defendants' arguments for removal are baseless.

Defendants' attempt to satisfy the federal officer removal statute is baseless. There is no nexus between the claims and any federal authority, defendants have not met the requirements for acting under federal authority, and defendants have no colorable federal defenses.

1. **Defendants' asserted acts under federal authority lack any nexus with the City's deception-based claims.**

The nexus element of federal officer removal requires a "connect[ion] or associat[ion]" between a defendant's "charged conduct," or the "conduct the [plaintiff] complain[s] of," and federal authority. *See Baker*, 962 F.3d at 943; *see Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999) (cleaned up) (requirement looks at nexus between "the charged conduct and asserted official authority"). The nexus element does not require a "rigid causation standard," but the defendant's "charged conduct" still must have some significant connection to acts taken under color of federal office. *Baker*, 962 F.3d at 943–44. All seven courts of appeals that have addressed this issue in climate-deception cases, including other courts of appeals that apply the same standard as this court (which does not require strict causation), have held that defendants fail to establish that connection.[5]

---

[5] *See Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 59–60 (1st Cir. 2020) ("There is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer."); *Connecticut*, 83 F.4th at 145 ("[T]his case presents a total mismatch between the business practices that [the defendants] assert[] were subject to federal control . . . and the business

*Baker* is illustrative. There, the plaintiff homeowners alleged that the defendants' manufacturing activities over multiple decades had wrongfully contaminated soil with lead and arsenic at "the same site" where the plaintiffs' homes were later built. *Baker*, 962 F.3d at 940–43. The court searched for a "connect[ion] or associat[ion]" between the defendants' "charged conduct"—*i.e.*, "their polluting conduct"—"and the asserted official authority." *Id.* at 943–45 (quotation omitted) (focusing on "the act that is the subject of Plaintiffs' attack"). The court determined that the defendants satisfied the nexus requirement because their "wartime production" for the government on the same premises had "resulted in waste streams that contained lead and arsenic," which

practices of which [the plaintiff] complains."); *Hoboken*, 45 F.4th at 713 (defendants could not satisfy the nexus element where plaintiffs' causes of action were about state torts not related to the defendants' purported federal conduct); *Baltimore*, 31 F.4th at 232 (defendants could not satisfy the nexus element because "[a]ny connection" between purportedly federal conduct "and the conduct alleged in the Complaint is simply too remote"); *Anne Arundel*, 94 F.4th at 349 (defendants "failed to show any of their allegedly wrongful activities were carried out for or in relation to federal authority"); *Minnesota*, 63 F.4th at 716 ("[T]he relationship between Minnesota's claims and any federal authority . . . is too tenuous."); *District of Columbia*, 89 F.4th at 156 ("Nor is there any allegation the Companies engaged in these misrepresentations at the behest of or in coordination with federal officers.").

constituted "a small, yet *significant*, portion" of the exact same polluting conduct for which they were being sued. *Id*. at 945 n.3. By the same token, *Baker* shows that removal is *inappropriate* where, as here, the purported federal control is unrelated to the wrongful conduct for which the plaintiff sues. Indeed, this Court hypothesized in *Baker* that "a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage." *Id*. at 943 (quoting *Ruppel*, 701 F.3d at 1181). Defendants are trying to remove a suit seeking liability for wrongful conduct that bears no relation to the acts they purportedly performed under federal authority.

The Supreme Court's decisions in *Acker* and *Watson* similarly demonstrate there is no nexus here. *Acker* made clear that the nexus element focuses on the relationship "between the charged conduct and asserted official authority." 527 U.S. at 431. And *Watson* specified that the nexus inquiry focuses on "the acts that are the subject of the [plaintiffs'] complaint." 551 U.S. at 147 (quotation omitted). As the City has explained, this suit seeks liability for wrongful conduct that bears no relation to any federal acts.

Defendants misread the federal officer removal statute and the relevant case law to argue that the nexus element focuses on something *other* than their charged conduct. *See generally* Defs. Br. 39–49. Primarily, they argue that the nexus requirement is satisfied if there is "a connection between federally supervised acts and the 'civil action' as a whole," as opposed to the charged conduct in the complaint. *Id.* at 39. Defendants posit that because the City's claims implicate a "mechanism of injury" that involves greenhouse gases, and because their purported conduct under federal officers resulted in greenhouse gas emissions, there is a nexus between the lawsuit and that conduct. *Id.* at 47–48.

The Fourth Circuit in *Anne Arundel* squarely rejected this improper attempt to broaden the nexus element to the "entire civil action in a general sense," calling it "novel and atextual," and dependent on an "aggressive use of ellipses." 94 F. 4th at 348. As the court explained, "[t]he statutory text tells us what must relate to what": a defendant must show that "a suit is 'against' 'any person acting under [an] officer' 'for or relating to any *act* under color of' a federal office." *Id.* (quoting 28 U.S.C. § 1442(a)(1)). In other words, as "the Supreme Court ha[s]" made clear, "[i]t is the 'act' for which the defendant is being sued—not the plaintiff's

entire civil action in a general sense—that must relate to the asserted federal duty." *Id.* "Having framed the relevant inquiry," the court "conclude[d] the companies failed to show any of their allegedly wrongful activities were carried out for or in relation to federal authority" because their wartime activities predated the complaints' allegations by "decades," and the more recent "activities cited by the companies involve fossil fuel production rather than concealment or misrepresentation of information about fossil fuel products, [which] fail[ed] to show the required relatedness." *Id.* at 349. Defendants rely on the exact same arguments and documentary support here, and the result should be the same.

Trying to buttress their misreading of the statute, defendants also misread *Baker*. *See* Defs. Br. 40. *Baker* did not hold that "the federal officer's removal statute reaches *any suit* that has a 'connection or association' with a defendant's federally directed conduct," as defendants theorize. *Id.* Rather, this court explained that the statute requires "a connection or association between *the act in question*," *i.e.*, the charged

conduct, "and the federal office." *Baker*, 962 F.3d at 944 (emphasis added).[6]

And when this court said in *Baker* that federal officer removal does not require "that the complained-of conduct *itself* was at the behest of a federal agency," 962 F.3d at 944 (quotations omitted), that was—as the district court correctly understood, App. 21–23—just another way of saying that federal officer removal does not require a *causal* connection between a defendant's charged conduct and federal authority, and that a *non-causal* connection or association will suffice. Even so, the focus remains on whether there is a "connection or association" between the charged conduct (*i.e.*, "the challenged act") and federal authority. 962 F.3d at 945. To reiterate, it is undisputed here that there is absolutely no connection between defendants' charged conduct and federal authority.

---

[6] *Baker* also relies on cases from other circuits which uphold the same connection requirement. *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (nexus requires "that the acts complained of . . . were taken under color of federal office"); *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 472 (3d Cir. 2015) (nexus requires that "the acts complained of . . . 'relate to' acts taken under color of federal office"); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (nexus requires that the "charged conduct is connected or associated with an act pursuant to a federal officer's directions").

The City's complaint challenges only defendants' deceptive conduct toward consumers about the hazards of burning fossil fuels, which is unconnected with any work they performed for the government.

Defendants also misread *Acker*. *See* Defs. Br. 42–43. There, an Alabama county sued two federal judges to collect a local "license or privilege tax" that covered "hold[ers] of any kind of office or position either by election or appointment, by any federal . . . officer or employee" rendering services in the county. 527 U.S. at 428 (quotation omitted). The local tax made it "*unlawful to engage in a covered occupation* without paying the tax." *Id.* (cleaned up) (emphasis added). Because the judges' "charged conduct," *id.* at 431, consisted of failing to "pay a license fee before engaging in their occupation" as federal judges, *id.* at 433 (cleaned up), the Supreme Court easily found a nexus between their charged conduct and their official federal duties. Conversely, the charged conduct here does not involve engaging in the occupation of a federal office, nor does it have a nexus with any federal conduct.

Defendants misrepresent many more decisions to argue that the nexus requirement is about something other than their charged conduct. *See* Defs. Br. 40, 47–49. If anything, these decisions only reinforce that

the district court was correct in focusing on defendants' charged conduct. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) (quotations omitted) (searching for "a connection or association between the acts complained of by [the plaintiff] and the federal government," and focusing on the defendant's "charged conduct"); *Hoboken*, 45 F.4th at 712–13 (rejecting federal officer removal in a climate-deception case because "Hoboken and Delaware insist that they are not suing over emissions caused by fuel provided to the federal government"); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (asking whether "the charged conduct was carried out for on in relation to the asserted official authority"); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc) (asking whether "the charged conduct is connected or associated with an act pursuant to a federal officer's directions").[7]

---

[7] Defendants argue that the district court improperly required that the federal government direct defendants' deceptive conduct. *See* Defs. Br. 46. The district court imposed no such requirement. The court noted that defendants did not argue that the government directed their marketing because such an argument could have established a nexus. *See* App. 19–20. The court did not rely on this shortcoming, though. The court looked more generally for any connection between the charged conduct and federal acts and found none because defendants' conduct purportedly

Finding no purchase in the statutory text or the case law, defendants shift to broad statutory purpose arguments. *See* Defs. Br. 48–49. But the courts that have focused on a removing defendant's charged conduct—including this court in *Baker* and the Supreme Court in *Acker*—have also been cognizant of the federal officer removal statute's purpose. In fact, the primary case defendants cite for their purpose argument—*Express Scripts*—itself defined the nexus requirement as whether a defendant "carried out *the charged conduct* in relation to the asserted official authority." 119 F.4th at 179 (emphasis added).

Defendants thus resort to reimagining the City's complaint, asserting that the City's claims *do* target defendants' lawful production of fossil fuels and greenhouse gas emissions, including their provision of fuels to the federal government. *See* Defs. Br. 43–45 ("Plaintiffs' suit squarely relates to Defendants' federal work."). But a defendant may not unilaterally alter a plaintiff's claims and theory of liability. And here, the City's complaint unambiguously shows that it targets defendants' deception, not anything else. *See, e.g.*, S.A. 30–34, 181–216 (Compl. ¶¶ 1–

---

under federal direction is "of no import" to the deceptive marketing the City alleges was wrongful. App. 19.

11, 264–283, 285–306, 308–322, 324–337, 339–351, 353–355, 358–364, 366–381, 383–392, 395–408, 411–415).

When a defendant proposes a theory of the case that is "untethered to the claims of Plaintiffs," it will not be credited, as doing so would allow defendants to remove cases by asserting federal acts completely detached from the alleged misconduct, which defendants attempt to do here. *City & Cty. of Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021). That is why courts have repeatedly rejected defendants' attempts to redefine climate-deception suits as ones that target lawful fossil fuel production or aim to impose strict liability for greenhouse gas emissions. *See, e.g.*, *Baltimore*, 31 F.4th at 233 (the "source of tort liability" "is the concealment and misrepresentation of the [fossil fuel] products' known dangers," not "fossil-fuel production"); *Minnesota*, 63 F.4th at 716 ("[N]one of Minnesota's claims try to hold the Energy Companies liable for any production activities—only marketing."); *Rhode Island*, 979 F.3d at 59–60; *Anne Arundel*, 94 F.4th at 349; *Boulder*, 25 F.4th at 1264; *Honolulu*, 39 F.4th at 110.

Defendants' reliance on *City of New York v. Chevron Corp.* (*City of New York*), 993 F.3d 81 (2d Cir. 2021), is therefore misplaced. In that

non-deception-based case, the plaintiff sought to hold defendants liable for their "admittedly legal commercial conduct" in producing and selling fossil fuels. *Id.* at 86. In the Second Circuit's view, those claims would "effectively impose strict liability" for all greenhouse gas emissions, such that the defendants could not "avoid [future] liability" unless they "cease[d] global production [of fossil fuels] altogether." *Id.* at 93. That does not resemble the City's deception-focused case here. In fact, when the Second Circuit later confronted a climate-deception suit brought by Connecticut, it properly recognized that the nexus element focused on the defendants' "charged conduct," which was defendants' "alleged 'campaign of deception,'" and affirmed the remand to state court. *Connecticut*, 83 F.4th at 144–45 (citation omitted).

Defendants also cannot rewrite the City's complaint by relying on this court's statement in *Baker* that it would "credit" the removing defendant's "reasonable theories." *See* Defs. Br. 49 (quoting *Baker*, 962 F.3d at 947). As the district court recognized, this court has never endorsed limitless deference to a removing defendant's theory of the plaintiff's case. App. 11–12, 23. And no court has allowed a defendant to premise removal on a theory that is completely untethered to the claims

the plaintiff brings. Doing so would lead to the absurd result of allowing defendants to remove based on "claims that simply do not exist." *Express Scripts*, 119 F.4th at 187 (citation omitted). Under defendants' proposed rule, any defendant that *ever* acted under a federal officer would be able to remove *any* litigation brought against them to federal court by rewriting the plaintiff's complaint as one targeting their federal conduct. That cannot be.

In sum, courts have uniformly rejected defendants' arguments under the nexus element for good reason: the federal government had no connection or association with defendants' deception, which is the charged conduct. Defendants are wrong to argue that the nexus element focuses on something other than their charged conduct, and defendants may not rewrite the City's claims to manufacture a nexus where none exists.[8]

---

[8] Because the nexus requirement focuses on defendants' charged conduct, not the action as a whole, defendants' lengthy asides about the meaning of "action," Defs. Br. 39–40, and the roles that causation and injury play in an "action," *id.* at 41–42, are beside the point.

Defendants' passing reference to the Supreme Court's grant of certiorari in *Chevron U.S.A. Inc. v. Plaquemines Parish*, No. 24-813, 2025 WL 1678985 (U.S. June 16, 2025), also does not matter. *See* Defs. Br. 46 n.4.

## 2. Defendants' purported federal conduct does not qualify as acting under federal authority.

Defendants' failure to establish any nexus is dispositive. After all, defendants concede that they did not act under federal authority when engaging in any of the deceptive marketing conduct at issue in this case. But even if this court closely examines the conduct defendants assert, it does not satisfy the acting-under standard.

Acting-under status exists only where there is a "special relationship between the defendant and the federal government" that "[t]ypically . . . involves subjection, guidance, or control." *Baker*, 962 F.3d at 941–42 (quotations omitted). Federal contractors can meet the requirement only "when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision," and the contractor helps fulfill "basic governmental tasks." *Watson*, 551 U.S. at 153. Although "a business

_____

That appeal pertains to whether the nexus element requires a private actor's charged conduct to have been *contractually directed* by the federal government. *See* Pet. for a Writ of Cert. at i, *Chevron U.S.A. Inc. v. Plaquemines Parish*, No. 24-813, 2025 WL 371424 (U.S. Jan. 29, 2025). Here, defendants' charged conduct has no nexus with federal authority regardless of whether there is a contractual-direction requirement.

*might be* 'acting under' a federal officer if the officer commanded it or contracted with it to produce a particular item in a specified way," that alone is not enough. *Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 814 (7th Cir. 2024) (citation omitted) (emphasis added). For example, in *Baker*, this Court found acting-under status for a government contractor in light of the federal "government's detailed specifications" for the defendant in producing and selling the product at issue, "the compulsion to provide the product to the government's specifications," and "continuous federal supervision," which made the relationship there unlike an ordinary commercial relationship. 962 F.3d at 942.

Likewise, this court has made clear that although "[a]cting under includes situations where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete," *Betzner*, 910 F.3d at 1015 (quotations omitted), that alone is not sufficient either, *see Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016) (warning against "taking this idea too far"). Acting-under "does *not* include simply *complying* with the law," and "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Watson*, 551 U.S. at 152–53; *see also*

*Lu Junhong v. Boeing Co.*, 792 F.3d 805, 809 (7th Cir. 2015) (citation omitted) (regulation that involves "direct[ing], supervis[ing], and monitor[ing] a company's activities in considerable detail" is not enough). Six courts of appeals have rejected defendants' acting-under arguments, and this court should do the same.[9]

**Conduct During World War II and the Korean War.** Defendants' conduct during World War II and the Korean War is obviously irrelevant to federal officer removal because it bears no connection to defendants' deception, which started decades later. "There is simply no relationship between actions taken by the Companies' predecessors in the 1940s and 1950s and the allegedly deceptive statements made by the Companies about climate change since [the 1980s]." *District of Columbia*, 89 F.4th at 156; *accord Anne Arundel*, 94 F.4th at 349; *Connecticut*, 83 F.4th at 144.

Even if this conduct were somehow relevant, defendants do not show that they acted under a federal officer during this period.

---

[9] *See Connecticut*, 83 F.4th at 142–45; *Hoboken*, 45 F.4th at 712–13; *Anne Arundel*, 94 F.4th at 347–50; *Baltimore*, 31 F.4th at 228–37; *San Mateo*, 32 F.4th at 755–60; *Honolulu*, 39 F.4th at 1106–10; *Oakland*, 2023 WL 8179286, at *2; *Boulder*, 25 F.4th at 1250–54.

Defendants claim they were acting under the federal government when they produced "avgas" (aviation fuel) during World War II in conjunction with the Petroleum Administration for War ("PAW"). Defs. Br. 25–26. The PAW's control over fossil fuel production did not extend beyond that of an ordinary commercial relationship. The PAW "relied almost exclusively on contractual agreements to ensure avgas production." *United States v. Shell Oil Co.*, 294 F.3d 1045, 1050 (9th Cir. 2002) ("The [PAW] did not exercise direct control over the production of avgas components."). "Throughout the war, the Oil Companies designed and built their facilities, maintained private ownership of the facilities, and managed their own refinery operations." *Id.* The relationship between defendants and the government was like a typical "arm's-length business arrangement," *San Mateo*, 32 F.4th at 757; *accord Honolulu*, 39 F.4th at 1108, in which "the government entered into long-term contracts to purchase avgas," which defendants "sought" because they were "profitable throughout the war," *Shell Oil*, 294 F.3d at 1050.

In fact, defendants' own exhibits demonstrate that members of the oil industry were broadly independent and free from federal control. The PAW's efforts were "cooperative," and "[d]ay by day" operations were

controlled by the manufacturers; all efforts to expand wartime oil production were "implemented by industry committees and the industry itself." S.A. 389. The PAW was "dedicated to the proposition that cooperation, rather than coercion, was the formula by which the forces of Government and industry could best be joined." S.A. 405. "No Government agency had to compel [oil companies] to do the job" of producing fossil fuels during World War II. S.A. 409.

Defendants' reliance on their operation or management of "government-owned or government-funded petroleum-production facilities," Defs. Br. 27, is misplaced because, as explained, those typical commercial relationships did not rise to the level of "acting-under" status. In fact, defendants' own declarant explains that the operation of these facilities involved a normal "government-owned, contractor-operated" arrangement used throughout World War II. S.A. 340. These constituted "arm's-length business arrangement[s]." *San Mateo*, 32 F.4th at 759. Defendants maintained autonomy in their operations and merely had to "comply with urgent government orders." S.A. 341.

The agreement between the government and Standard Oil of California involving operations at the Elk Hills Reserve also amounted

to an "arm's-length business arrangement." *San Mateo*, 32 F.4th at 759; *see Baltimore*, 31 F.4th at 237 (rejecting acting-under argument based on the Reserve). The Navy and Standard Oil were co-owners of the Reserve, and each "could dispose of the oil they extracted as they saw fit." *San Mateo*, 32 F.4th at 758–59. Under an operating agreement, Standard Oil voluntarily agreed to perform certain "drilling," "[e]xploration and prospecting[,]" and "maintenance" activities in the Reserve. S.A. 1279–80; *see* Defs. Br. 31–32. As the Ninth Circuit held, this operating agreement "gave Standard Oil duties in general terms, and Standard Oil was free to fulfill them as desired. Such an arrangement does not rise to the level of 'acting under.'" *Honolulu*, 39 F.4th at 1110.

**Sale of Specialized Fuel to the Military.** Defendants have not "acted under" a federal officer when selling "specialized" military fuels, Defs. Br. 28, because those sales have not involved "close[] monitor[ing]" or "continuous federal supervision," *see Baker*, 962 F.3d at 943 (citation omitted).

Defendants' documents illustrate the lack of governmental control. They point to the historical OXCART and U-2 programs, but a recently declassified report, also cited by defendants, shows that defendants had

ultimate authority and autonomy in developing and making new spy planes and their associated fuels.[10] Contractors controlled and managed all day-to-day operations, while the government simply asked for new planes that met certain performance criteria. *See* Pedlow & Welzenbach at 267–78, 288. "[T]he lack of detailed and restricting [government] specifications" is a primary reason the "creative designers" in charge of the OXCART and U-2 programs "produced state-of-the-art aircraft in record time." *Id.* at 320.

The same is true for the SR-71 Blackbird program. A report on the development of the Blackbird by a former government engineer, also cited by defendants, states that the government's "management philosophy" gave maximum "free[dom]" to its private contractors; officials did not "substitute[e] their judgment for that of the contractors," and the "[r]equirements for Government approval as a prerequisite to

---

[10] The separate appendix includes Exhibit 18 from defendants' Notice of Removal, which is a two-page excerpt from Gregory W. Pedlow & Donald E. Welzenbach, *The Central Intelligence Agency and Overhead Reconnaissance: The U-2 and OXCART Programs*, 1954–1974 (1992) [hereinafter Pedlow & Welzenbach]. S.A. 497–99. The separate appendix also includes a URL hyperlink to the complete report, S.A. 461, which the City has archived here: https://perma.cc/JEC5-SUBP.

action were minimal." S.A. 526–27. Simply, the government did not provide "detailed specifications" or "continuous federal supervision." *Baker*, 962 F.3d at 943.

Defendants' contracts with the Defense Logistics Agency ("DLA") are similar. Defendants point to provisions specifying the fuel additives that they had to include in fuel sold to the DLA, Defs. Br. 30, but provisions specifying the product to be supplied are "typical of any commercial contract," *Baltimore*, 31 F.4th at 231. The same is true of "quality assurance" provisions providing the government a right to inspect the final products. *Id.* "Arm's length business agreements with the federal government for highly specialized products remain arm's length business agreements." *City of Oakland v. BP P.L.C.*, No. C 17-06011 WHA, 2022 WL 14151421, at *8 (N.D. Cal. Oct. 24, 2022) (remanding action), *aff'd*, No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023).

***Federal Mineral Leases.*** Nor do defendants' activities relating to their mineral leases on the Outer Continental Shelf ("OCS") establish a special relationship with the federal government. Under those leases, private companies are permitted to extract oil and natural gas from

beneath the OCS, which they "produce[] 'to sell on the open market,' not specifically for the government." *Hoboken*, 45 F.4th at 713 (citation omitted). Companies obtain those leases through a public bidding process "for their own commercial purposes," and pay the government royalties throughout the life of the lease. *Baltimore*, 31 F.4th at 232; *see* 43 U.S.C. § 1337(a)(1). Six courts of appeals have therefore agreed that defendants' OCS leases do not impose sufficient control for federal officer removal. *See, e.g.*, *Connecticut*, 83 F.4th at 143 (joining "five of our sister circuits"). "[M]any of [the] lease terms are mere iterations of the [federal] regulatory requirements." *Baltimore*, 31 F.4th at 232; *see also San Mateo*, 32 F.4th at 760 (similar). So, these OCS leases do not "impose close federal control" beyond "run-of-the-mill regulations on oil and gas production." *Hoboken*, 45 F.4th at 713; *accord Baltimore*, 31 F.4th at 232 (similar). And defendants' suggestion that, but for these leases, the federal government would have "assign[ed] that task [*i.e.*, drilling for oil on the OCS] to federal employees," Defs. Br. 34, is absurd. It has never been a governmental function to produce oil and gas for commercial sale, and

Congress has never evinced an "intent to create, directly or indirectly, a 'national oil company.'" *Delaware*, 578 F. Supp. 3d at 639.[11]

In short, "the federal government's willingness to lease federal property or minimal rights to a private entity for that entity's commercial purposes does not, without more, constitute the kind of assistance required to establish that the private entity is 'acting under' a federal officer." *San Mateo*, 32 F.4th at 760; *see Baltimore*, 31 F.4th at 232 (similar).

***Interactions with the Strategic Petroleum Reserve.*** Similarly, every court to consider defendants' interactions with the Strategic Petroleum Reserve ("SPR") has found that their fuel deliveries to the reserve amount to typical commercial transactions that fall well short of the type of special relationship that qualifies as "acting under."

The SPR is a reserve of oil owned by the federal government that was created in 1975 "to reduce the impact of disruptions in supplies of

---

[11] Defendants repeatedly cite an affidavit by Richard Tyler Priest, which they claim shows close federal supervision, direction, or control. *See* Defs. Br. 33–35; S.A. 1357–1438. Defendants have submitted the identical affidavit repeatedly in removal proceedings, and courts have unanimously found it unpersuasive. *See, e.g.*, *Honolulu*, 39 F.4th at 1109.

petroleum products." App. 14. Private parties, such as defendants, have at times "deliver[ed] [oil] to the SPR" as in-kind royalty payments on OCS leases. *Honolulu*, 39 F.4th at 1108. Defendants allege they have acted under federal authority by "supplying and managing" the SPR, Defs. Br. 36, but the Ninth Circuit dismissed that argument succinctly: "First, payment under a commercial contract—in kind or otherwise—does not involve close supervision or control and does not equal 'acting under' a federal officer. Second, operating the SPR involves a typical commercial relationship and defendants are not subject to close direction." *Honolulu*, 39 F.4th at 1108.

Finally, defendants claim to act under federal authority when "the President calls for an emergency drawdown" from the SPR, Defs. Br. 35, but drawdown procedures are statutory requirements that arise when the President makes certain factual findings. *See* 42 U.S.C. § 6241. Even when incorporated into OCS lease terms, those procedures remain "mere iterations of the [federal] regulatory requirements." *Baltimore*, 31 F.4th at 232. Confronting a similar provision in the federal statute governing mineral rights on the OCS, the Ninth Circuit held that a private company's response to such a drawdown amounts to "[m]ere compl[iance]

with the law" and "does not show that the entity is 'acting under' a federal officer." *San Mateo*, 32 F.4th at 760. So too here.

For these reasons, none of the acts presented by defendants satisfies the acting-under element of the federal officer removal standard.

### 3. Defendants lack a colorable federal defense.

Defendants fail to satisfy the colorable federal defense element, too. To determine whether a defendant has a colorable federal defense, the court must first determine "what kind of claims" the plaintiff has alleged. *Ruppel*, 701 F.3d at 1182. Only if the defendant "has a colorable defense" to *those* claims, is the case "removable." *Id.* Importantly, the defense must "aris[e] out of [the defendants'] official duties." *Manypenny*, 451 U.S. at 241; *accord Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977) ("The purpose of the removal statute is to insure a federal forum for cases where federal officials must raise *defenses arising out of their official duties*." (emphasis added)). Defendants do not meet these requirements.

The government-contractor defense "shields federal contractors from third-party state tort liability *for* certain defects in products designed and developed for the federal government." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 474 F. Supp. 3d 1231, 1243 (N.D. Fla.

2020) (emphasis added); *see Baker*, 962 F.3d at 946 (the defense "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design" (emphasis added)). Because the defense aims to prevent "discretionary function[s]" in federal contracting from "be[ing] frustrated," *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) (quotations omitted), it applies only to state-law civil liabilities that actually "arise[] out of performance of [a] contract," *id.* at 505–06. The key question is whether "the state-imposed duty of care that is the asserted basis of the contractor's liability" is "contrary to the duty imposed by the [federal] Government contract." *Id.* at 509. "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'" *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990).

Here, the City does not seek to impose liability for any design defects in products that defendants provided for the federal government. Nor does the City seek to impose state-law liability for defendants' performance of any federal contract. To reiterate, defendants do not

allege or argue that the federal government had any role in their deception, much less directed them to deceive the public.

What's more, defendants conceded in the district court that their government-contractor defense is limited to their sales of "specialty items" to the military. R. 87 at 26 (quotations omitted). The City's disclaimer—along with the remainder of the complaint—makes abundantly clear that defendants' sales of "specialized" fuels have nothing to do with this case.

Defendants falsely assert that the government-contractor defense applies whenever "(1) the suit involves a unique federal interest and (2) holding the defendant liable under state law would present a significant conflict with federal policy." Defs. Br. 50–51. But neither the Supreme Court nor this Court has described the government-contractor defense in this manner. And defendants fail to explain why holding them liable under state law for deception and failures to warn could conflict with any federal policy, especially given states' traditional, well-established interest in regulating deceptive commercial conduct. *E.g.*, *Edenfield v. Fane*, 507 U.S. 761, 769 (1993); *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146 (1963).

Defendants' remaining defenses—preemption based on "our federal constitutional structure," Clean Air Act ("CAA") preemption, and the First Amendment, Defs. Br. 51–54—stumble out of the gate. Defendants raised these three defenses only perfunctorily in the district court, R. 87 at 31, and arguments and theories that are "poorly developed" in the district court are forfeited, *Soo Line R.R. Co. v. Consol. Rail Corp.*, 965 F.3d 596, 601 (7th Cir. 2020). After all, "simply assert[ing] a defense and the word 'colorable' in the same sentence" does not suffice, and "conclusory statements and general propositions of law do not make their defenses colorable." *Honolulu*, 39 F.4th at 1110 (quotations omitted).[12]

Nor can defendants bypass this forfeiture by pointing to their arguments about these three defenses in their notice of removal. A party is expected to make available arguments when opposing a motion. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion

---

[12] In a footnote, defendants contend they have Commerce Clause, Due Process Clause, and foreign affairs doctrine defenses. Defs. Br. 53 n.5. They forfeited these arguments by failing to raise them in the district court, *see Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 422 (7th Cir. 2022), and inadequately briefing them on appeal, *see Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019).

to dismiss . . . ."). Here, the district court and the City were entitled to assume that defendants were not relying on these three defenses when they made no argument in support of them in opposing remand. District "[j]udges are not like pigs, hunting for truffles buried in" lengthy notices of removal. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

In any event, none of these remaining defenses arises out of any official duties. As explained, the federal officer removal statute ensures "a federal forum for cases where federal officials must raise defenses arising out of their official duties," meaning jurisdiction is proper only where a defendant has a federal defense that is "based on his duty under federal law." *Schaffer*, 565 F.2d at 964; *accord Manypenny*, 451 U.S. at 241. Defendants—despite declining to respond to the City's repeated argument below that their federal defenses were insufficient because they "fail to stem from official duties," R. 66-1 at 19 (quotations omitted); *see also* R. 93 at 2, 17, 18; R. 99 at 1, 4—now contend that this is not a requirement, Defs. Br. 54–58. But they cannot overcome well-established precedent to the contrary.

*Schaffer* correctly applied a long line of Supreme Court precedent. Congress included the phrase "under color of office" in the federal officer

removal statute to codify "the pre-existing requirement of a federal defense," as articulated in cases construing precursor statutes that permitted removal only when defenses arose from official duties. *Mesa v. California*, 489 U.S. 121, 134–35 (1989). In *Wood v. Matthews*, for example, a trespass action was removable under a precursor statute only because the defendant asserted a defense that the trespass occurred "in the exercise of his functions and performance of his duty as an officer of the customs under the revenue laws." 23 Vt. 735 (C.C.D. Vt. 1852).

The Supreme Court carried this interpretation forward after Congress passed the modern federal officer removal statute in 1866. In *Tennessee v. Davis*, 100 U.S. 257, 261 (1879), the Court sustained federal-officer jurisdiction because the defendant asserted that he killed an attacker while "attempt[ing] to discharge his official duty." By contrast, in *Gay v. Ruff*, 292 U.S. 25, 27 (1934), a receiver overseeing a railroad was sued because of a death allegedly caused by the negligent operation of a train. Although the receiver was an officer of a federal court who was charged with "[t]he operation of trains through his employees," the Supreme Court rejected federal officer removal because there was no

"reason to assume that [the receiver] will in this case rest his defense on his duty to cause the train to be operated." *Id.* at 39.

More recently, the Supreme Court has repeatedly reaffirmed that Section 1442's "under color of office" language requires a federal defense that arises out of official conduct. In *Willingham v. Morgan*, 393 U.S. 402 (1969), the Supreme Court "recognized that Congress' enactment of federal officer removal statutes since 1815 served 'to provide a federal forum for cases where federal officials *must raise defenses arising from their official duties.*'" *Mesa*, 489 U.S. at 137 (emphasis added) (quoting *Willingham*, 395 U.S. at 405). In *Manypenny*, the Court explained that "[h]istorically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to *raise a defense arising out of his official duties*." 451 U.S. at 241 (emphasis added).

Other courts of appeals have followed suit, relying on cases like *Mesa*, *Willingham*, and *Manypenny* to hold that federal officer removal requires a colorable federal defense to arise out of the removing defendant's official duties. *E.g.*, *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008); *Cty. Bd. of Arlington Cty. v. Express Scripts Pharmacy,*

*Inc.,* 996 F.3d 243, 254 (4th Cir. 2021); *Bell v. Thornburg*, 743 F.3d 84, 90 (5th Cir. 2014); *Honolulu*, 39 F.4th at 1110; *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427–29 (11th Cir. 1996).

Defendants rely on *In re Commonwealth's Motion*, 790 F.3d at 473–74, but that case does not support their position. *See* Defs. Br. 55, 58. There, the plaintiff argued that federal officer removal should be limited to cases where the federal duty *is* the federal defense—*i.e.*, a defense that claims immunity on the ground that the federal government required the defendant to do the harmful act. *See, e.g.*, First Step Brief for Appellant, *In re Commonwealth's Motion*, No. 13-3817, 2014 WL 785410, at 28–29 (3d Cir. Feb. 18, 2014) ("The removing party must clearly plead that his defense was that in doing the acts charged he was doing no more than his duty under federal law." (quotations omitted)). The court rejected that proposed limitation, explaining that a defendant's federal duty need not "coincide with" or "form[]" the federal defense. *In re Commonwealth's Motion*, 790 F.3d at 473. The court did not hold—as defendants urge—that a federal defense with no relationship to the defendant's purported, official duties can support federal officer removal.

Defendants also misunderstand the Supreme Court's decision in *Acker* and the Third Circuit's discussion of it. *See In re Commonwealth's Motion*, 790 F.3d at 473. In *Acker*, two federal judges raised an intergovernmental tax-immunity defense to a local tax that was imposed on federal, state, and local officials. 527 U.S. at 428–29. In rejecting the plaintiff's arguments in *In re Commonwealth's Motion* that an asserted defense "must coincide with an asserted federal duty," the Third Circuit noted only that the intergovernmental tax-immunity defense sufficed in *Acker* even though "the judges' duties did not require them to resist the tax." 790 F.3d at 473. The government had not *instructed* the judges not to pay the tax, but their asserted defense clearly did arise out of performance of their federal duties: if they were not judges, they would never have had a colorable intergovernmental tax-immunity defense to begin with.

Defendants also are wrong to assert that the 2011 amendments to the federal officer removal statute eliminated the requirement for a colorable federal defense to arise out of official duties. *See* Defs. Br. 56. The Removal Clarification Act of 2011 provided that federal officer removal includes actions that are "not just *causally* connected, but

alternatively connected or *associated*, with acts under color of federal office." *Baker*, 962 F.3d at 943 (quotations omitted). These amendments did not alter the colorable-federal-defense requirement; that is, a defense must still arise out of official duties. At bottom, defendants identify nothing supporting their unusual assertion that any colorable federal defense—even one completely unrelated to their conduct under a federal officer—can support removal.

None of defendants' three other federal defenses are colorable anyway. Defendants' federal preemption defenses under purported "constitutional structure" principles and the CAA rest on the false premise that the City seeks to regulate "global emissions." Defs. Br. 51–52; *see supra* Section A. Rather, the City's claims seek to impose liability for commercial deception. The supreme courts of Colorado and Hawai'i—the highest courts to consider defendants' preemption arguments—rejected similar attempts to recast deception-based claims as claims seeking to regulate emissions. *See City & Cty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1195–1208 (Haw. 2023) ("Numerous courts have rejected similar attempts by oil and gas companies to reframe complaints alleging those companies . . . failed to warn the public or misled the public about

those dangers."); *Cty. Comm'rs of Boulder Cty. v. Suncor Energy USA, Inc.*, No. 24SA206, 2025 WL 1363355, at *5–12 (Colo. May 12, 2025). To the extent defendants suggest that "constitutional structure," or "federal common law," preempts the City's claims, Defs. Br. 51–52 (quotations omitted), Congress displaced that body of law by passing the Clean Air Act, *see Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 429 (2011). Defendants again rely on *City of New York*, but as explained above, the claims in that case sought to hold the defendants strictly liable for emissions and thus did not concern deception claims like those at issue here. Defendants' remaining cases are state trial court decisions (several of which are currently on appeal) that did not analyze any constitutional provision, conflated deception-based claims with the strict-liability claims at issue in *City of New York*, and are less persuasive than the decisions of the supreme courts of Colorado and Hawaiʻi.[13]

---

[13] *Bucks Cty. v. BP P.L.C.*, No. 2024-01836, 2025 WL 1484203 (Pa. Ct. Comm. Pleas May 16, 2025) is on appeal to the Superior Court of Pennsylvania. *Mayor & City Council of Baltimore v. BP P.L.C.*, No. 24-C-18-004219, 2024 WL 3678699 (Md. Cir. Ct. July 10, 2024); *City of Annapolis v. BP plc*, No. C-02-CV-21-000250, 2025 WL 588595, (Md. Cir. Ct. Jan. 23, 2025); and *Anne Arundel Cty. v. BP plc*, No. C-02-CV-21-000565, 2025 WL 588595, (Md. Cir. Ct. Jan. 23, 2025) are on appeal to the Supreme Court of Maryland. *New Jersey ex rel. Platkin v. Exxon*

Defendants' CAA preemption arguments likewise fail because the law does not even attempt to regulate deceptive commercial conduct. As the Hawaiʻi Supreme Court held, "the CAA does not concern itself in any way with the acts that trigger liability . . . , namely: the use of deception to promote the consumption of fossil fuel products." *Honolulu*, 537 P.3d at 1205 (quotations omitted). The CAA is instead concerned with protecting the nation's air resources. *See generally* 42 U.S.C. § 7401. Defendants here can easily comply with both state law obligations to refrain from deceiving consumers *and* air emissions regulations under the CAA. *Honolulu*, 537 P.3d at 1207. Nothing about City's deception-based "claims would interfere with [the CAA's] purposes." *See Boulder*, 2025 WL 1363355, at *7 ¶ 43.

Finally, defendants' First Amendment defense is equally without merit. The deceptive messaging that gives rise to defendants' liability consists of false or misleading commercial speech driven by defendants' "economic motivation" to maintain and increase fossil fuel sales, which

*Mobil Corp.*, No. MER-L-001797-22, 2025 WL 604846 (N.J. Super. Ct. Law Div. Feb. 5, 2025) is on appeal to the Superior Court of New Jersey, Appellate Division.

often reference "specific product[s]." *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) (citing, inter alia, *Bolger v. Youngs Drug Prods. Corp.*, 463 US. 60, 66–67 (1983)). "[C]ommercial speech" that "is misleading" "is not protected by the First Amendment." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). Every court to consider this question in analogous climate-deception cases has agreed. *E.g.*, *Minnesota v. Am. Petroleum Inst.*, No. 62-CV-20-3837, 2025 WL 562630, at *16 (Minn. Dist. Ct. Feb. 14, 2025) (materially identical speech "is not protected by the First Amendment"); *Bd. of County Comm'rs of Boulder County v. Suncor Energy (U.S.A.), Inc.*, No, 2018CV30349, 2024 WL 3204275, at *30 (Colo. Dist. Ct. June 21, 2024); *Municipalities of Bayamón v. Exxon Mobil Corp.*, 2025 WL 600430, at *20–21 (D.P.R. Feb. 20, 2025).

The Petition Clause does not alter the analysis, *see* Defs. Br. 54, because the City does not seek to hold defendants liable for any petitioning activity, only for deceptive marketing. The tortious marketing activities alleged in the complaint "are in essence commercial activities" that are not protected by the *Noerr-Pennington* doctrine even if they incidentally "ha[d] a political impact." *Allied Tube & Conduit Corp. v.*

*Indian Head Inc.*, 486 U.S. 492, 507 (1988). Even if petitioning were somehow at issue, "[n]either the *Noerr-Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation." *Minnesota*, 2025 WL 562630, at *16 (quoting *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009)). Accordingly, defendants' First Amendment defense is not "plausible." *Ruppel*, 701 F.3d at 1182.

Defendants have failed to identify any colorable federal defense and cannot satisfy the requirements of the federal officer removal statute.

### 4. Defendants' challenge to the City's disclaimer is unavailing.

As discussed, the City's disclaimer provides redundant support for the remand order. Defendants counter that the disclaimer is invalid because the City seeks to recover under a "theory of liability based on a single, indivisible injury and also to disclaim part of that injury." Defs. Br. 63. This is untrue. The City seeks to recover under a theory of liability based on tortious marketing to consumers. The City disclaims theories based on defendants' purported federal acts, which are "of no import" to

what "the Complaint takes issue with," which is "Defendants' alleged *campaign of deception and misrepresentation*." App. 19.[14]

That is precisely why courts have credited disclaimers materially identical to the City's in many analogous cases. *See Delaware*, 578 F. Supp. 3d at 635 (citation omitted) (materially identical disclaimer was effective because it "expressly disclaim[s] the claims upon which federal officer removal was based" (quotations omitted)); *Hoboken*, 45 F.4th at 713 (disclaimers materially identical to the City's "[we]re no ruse").[15] In *Hoboken*, the defendants made the very same argument defendants assert here: that the plaintiff cannot separate harm caused by military fuel from harm caused by civilian fuel and thus "seeks simultaneously to

---

[14] Defendants' citations to *City of New York* are baseless. Defs. Br. 65 (citing 993 F.3d at 91). As noted above, the plaintiff in *City of New York* sought to impose strict liability on fossil fuel companies for their lawful production and combustion of fossil fuels. 993 F.3d at 93. Under that theory, the defendants would have to "cease global production altogether" in order "to avoid all liability." *Id.* The City seeks no such liability. The liability-inducing conduct here is deception, making *City of New York* inapposite.

[15] *See also City of Annapolis v. BP P.L.C.*, No. SAG-21-00772, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022); *Minnesota*, 2021 WL 1215656, at *11; *cf. Boulder*, 25 F.4th at 1272 (accepting disclaimer of "damages or abatement relief for injuries to or occurring on federal lands" as basis for remand); *Baltimore*, 31 F.4th at 218–19 (similar).

recover on a theory of liability based on a single, indivisible injury and also to disclaim part of that injury." Defs. Br. 63–64. The Third Circuit rejected that argument, explaining that the disclaimer permits plaintiffs to "carve out a small island that would needlessly complicate their cases." *Hoboken*, 45 F.4th at 713 (cleaned up). The same is true here.

Defendants argue that *Baker* forecloses the City from relying on the disclaimer, Defs. Br. 61, but *Baker* only confirms the disclaimer's validity. In *Baker*, the plaintiffs brought claims seeking to hold defendants directly liable for contaminating plaintiffs' land with lead and arsenic. 962 F.3d at 940. One defendant's production of Freon-12 for the federal government "resulted in waste streams that contained lead and arsenic," "the two main toxins the [plaintiffs] claim harmed them." *Id.* at 945 n.3. Thus, plaintiffs could not "disclaim that their lawsuit was about [the defendant's] manufacture of Freon-12 for the government" because such a disclaimer contradicted the plaintiffs' theory of liability. *Id.* Here, however, there is no contradiction between the City's disclaimer and its deception-focused theory of liability.

Defendants' remaining case citations are inapposite. In *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 847–48 (7th Cir. 2024), and *Maryland*

*v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), state plaintiffs sued manufacturer defendants, seeking to hold the defendants liable for contaminating the states' natural resources with so-called "forever chemicals" called PFAS. Like *Baker*, *Raoul* and *Maryland* are inapposite because the plaintiffs sought to hold the defendant liable for polluting conduct, and the claims were "not premised on any misrepresentations" or deception. App. 9; *cf.* Defs. Br. 62–63. The City's claims *are* premised on misrepresentations. It is for this very reason that the City's disclaimer is "redundant" and unlike the disclaimers in defendants' cited cases. App. 11.[16]

In *Express Scripts*, the plaintiff sought to hold defendants liable for unlawful insulin rebate negotiations and disclaimed relief related to any

---

[16] These cases are further distinguishable. In *Raoul*, Illinois expressly disclaimed recovery for "any PFAS that have contaminated Illinois' environment or natural resources from aqueous film-forming foams ('AFFF')." *Raoul*, Doc. 14, at A52. This court simply affirmed based on this disclaimer, "barr[ing]" the same recovery from AFFF contamination that the State had disclaimed. *Raoul*, 111 F.4th at 849. The decision in *Raoul*, which did not rule out that a less extensive disclaimer would have sufficed, supports the affirmance of remand based on express disclaimers like the City's. The holding in *Maryland* does not change that the Fourth Circuit twice held there was no federal officer removal jurisdiction over cases analogous to the City's. *Baltimore*, 31 F.4th at 228–38; *Anne Arundel*, 94 F.4th at 347–51.

federal insurance programs. 119 F.4th at 179. The charged conduct in the complaint—the rebate negotiations—involved simultaneous negotiations for private and government insurance plans. *Id.* at 191. It was therefore "impossible to divide the defendant's negotiations over rebates and prices over insulin between 'federal and non-federal work.'" App. 10 (citing *Express Scripts*, 119 F.4th at 192). Here, in contrast, the charged conduct for which defendants are liable—their "deceptive and misleading campaign" targeted at consumers—has only ever involved *non*-federal conduct. *Id.* at 12. Unlike in *Express Scripts*, the federal and non-federal work here is not "indivisible" because defendants concededly did not perform *any* federal work to deceive consumers. *Compare* Defs. Br. 64 (quoting *Express Scripts*, 119 F.4th at 189). In fact, the City puts no federal work at issue whatsoever. *Express Scripts* stands for the proposition that a disclaimer is valid where it ensures there is no possibility that the plaintiff "will hold a defendant liable for its official acts." 119 F.4th at 188. That is precisely what the City's disclaimer—and the City's entire theory of liability even absent the disclaimer—does.

# CONCLUSION

This court should affirm the district court's order remanding this case to state court.

Dated: September 8, 2025

Respectfully submitted,

Mary B. Richardson-Lowry
**Corporation Counsel of the City of Chicago**

Stephen J. Kane
Rebecca A. Hirsch
Chelsey B. Metcalf
**CITY OF CHICAGO DEPARTMENT OF LAW AFFIRMATIVE LITIGATION DIVISION**
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Tel: (312) 744-6934
stephen.kane@cityofchicago.org
rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org

Myriam Zreczny Kasper
Elizabeth Tisher
Suzanne Loose
**CITY OF CHICAGO DEPARTMENT OF LAW APPEALS DIVISION**
2 North LaSalle Street, Suite 580
Chicago, Illinois 60602
Tel: (312) 744-6934
myriam.kasper@cityofchicago.org
elizabeth.tisher@cityofchicago.org
suzanne.loose@cityofchicago.org

By: */s/ Victor M. Sher*

Victor M. Sher
Matthew K. Edling
Paul Stephan
Yumehiko Hoshijima
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, California 94104
Tel: (628) 231-2500
vic@sheredling.com
matt@sheredling.com
paul@sheredling.com
yumehiko@sheredling.com

Adam J. Levitt
Daniel Rock Flynn
Anna Claire Skinner
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
askinner@dicellolevitt.com

*Attorneys for Plaintiff-Appellee City of Chicago*

60

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2019, in 14-point Century Schoolbook font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that the brief contains 12,032 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

*/s/ Victor M. Sher*
Victor M. Sher

September 8, 2025